ACCEPTED
03-14-00771-CV
4924164
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/16/2015 4:46:10 PM
JEFFREY D. KYLE
CLERK

# NO. 03-14-00771-CV

## In The
## Third Court of Appeals
### AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/16/2015 4:46:10 PM
JEFFREY D. KYLE
Clerk

**Sanadco Inc., Mahmoud A. Isba, Broadway Grocery, Inc., Shariz, Inc., Ruby & Sons Store, Inc., and Rubina Noorani,**

**APPELLANTS**

**VS.**

**The Office of the Comptroller of Public Accounts; Glenn Hegar, in his official capacity as Comptroller of Public Accounts for the State of Texas; and Ken Paxton in his official capacity as Attorney General of the State of Texas,**

**APPELLEES**

_____

**Appeal From Cause No D-1-GN-13-4352
The 200th District Court Of Travis County, Texas
The Honorable Charles Ramsay, Presiding**

_____

# ACCELERATED APPEAL FROM DENIAL OF TEMPORARY INJUNCTION

**SAMUEL T. JACKSON**
**SBN 10495700**
**P.O. BOX 670133**
**ARLINGTON, TX 76003-0133**
**TEL: (512) 692-6260**
**FAX: (866) 722-9685**
**COUNSEL FOR APPELLANTS**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANTS:**
**Sanadco Inc., Mahmoud A. Isba, Broadway Grocery, Inc., Shariz, Inc., Ruby & Sons Store, Inc., and Rubina Noorani**

**COUNSEL FOR APPELLANTS:**
> **LAW OFFICE OF**
> **SAMUEL T. JACKSON**
> P.O. Box 170633
> Arlington, Texas 76003-0633
> TEL:  (512) 692-6260
> FAX:  (866) 722-9685
> Email:  jacksonlaw@hotmail.com


**APPELLEES:**
**The Office of the Comptroller of Public Accounts; Glenn Hager, in his official capacity as Comptroller of Public Accounts of the State of Texas; and Ken Paxton, in his official capacity as Attorney General of the State of Texas**

**COUNSEL FOR APPELLEES:**
> **JACK HOHENGARTEN**
> Assistant Attorney General
> FINANCIAL LITIGATION DIVISION
> P.O. Box 12548
> Austin, TX 78711-2548
> TEL:  (512) 475-3503
> FAX:  (512) 477-2348/480-8327
> Email: jack.hohengarten@oag.state.tx.us

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................... 2

TABLE OF CONTENTS ........................................................................................... 3

TABLE OF AUTHORITIES ..................................................................................... 4

STATEMENT OF THE CASE ................................................................................... 9

STATEMENT OF JURISDICTION ......................................................................... 10

ISSUES PRESENTED .............................................................................................. 10

STATEMENT OF FACTS ........................................................................................ 11

SUMMARY OF ARGUMENTS .............................................................................. 23

ARGUMENT ............................................................................................................. 25

    I.  The trial court abused its discretion by refusing to enjoin the enforcement of the audits because the auditing procedures were not adopted in accordance with the Administrative Procedure Act and were invalid and unenforceable. ................................................................................................. 25

    II. The trial court abused its discretion by refusing to enjoin the enforcement of the administrative judgments because the petitions for judicial review nullified the judgments. .......................................... 33

    III.     The trial court abused its discretion by refusing to enjoin the comptroller's enforcement activity because the petition for declaratory judgment entitled Appellants to a final declaration of a rule's validity *before* the rule is applied. ................................................................................................. 39

PRAYER FOR RELIEF ............................................................................................ 41

CERTIFICATE OF COMPLIANCE ........................................................................ 42

CERTIFICATE OF SERVICE .................................................................................. 42

VERIFICATION ....................................................................................................... 43

APPENDIX ............................................................................................................... 43

# TABLE OF AUTHORITIES

**Cases**

*Armadillo Bail Bonds v. State,*
    772 S.W.2d 193, 195 (Tex.App.-Dallas 1989), aff'd, 802 S.W.2d 237 (Tex.Crim.App. 1991) ...................................................................................................................26

*Beacon Nat'l Ins. Co. v. Montemayor*,
    86 S.W.3d 260, 269 (Tex.App.-Austin 2002, no pet.)....................................................30

*City of Pasadena v. Gennedy*,
    125 S.W.3d 687, 691 (Tex. App.-Houston [1st Dist.] 2003, pet. denied) .......................36

*City of San Antonio v. City of Boerne,*
    111 S.W.3d 22 (Tex. 2003)............................................................................................36

*Combs  v. Entertainment Publ'ns, Inc,*
    292 S.W.3d 712, 721-22 (Tex.App.-Austin 2009, no pet) ....................................... 28, 29

*Crane v. Richardson  Bike  Mart, Inc.,*
    295  S.W.3d  1, 5 (Tex. App.-El Paso 2009, no pet.) ......................................................38

Doan v. Christus Health ArkLa-Tex,
    329 S.W.3d 907, 910 (Tex.App.-Texarkana 2010, no pet.)...........................................36

*El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*,
    247 S.W.3d 709, 713 (Tex. 2008)............................................................................ 33, 39

*Fulton v. Finch,*
    162 Tex. 351, 356, 346 S.W.2d 823, 827 (1961) (orig. proceeding) ...............................38

*Greene v. State*,
    324 S.W.3d 276, 288 (Tex.App.- Austin 2010, no pet.) ................................................36

*Herrera v. State,*

No. 03-01-00101-CV, 2002 WL 185476, at *1 n. 4, 2002 Tex.App..-Austin Feb. 7, 2002, no pet.) ................................................................................................................................37

*In re Garza,,*

126 S.W.3d 268, 271 (Tex. App.-San Antonio 2003, orig. proceeding) ..........................38

*In re Humphreys,*

880 S.W.2d 402, 404 (Tex. 1994)......................................................................................36

*Key Western Life Ins. Co. v. State Bd. of Ins.*,

350 S.W.2d 839, 846 (Tex. 1961)......................................................................................36

*Logal v. United States,*

195 F.3d 229, (5th Cir. 1999).............................................................................................38

<u>*Marble Falls v. Scott,*</u>

275 S.W.3d 558, 566 (Tex.App. [3rd] 2008) .....................................................................34

*Montemayor v. City of San Antonio Fire Dept.*,

985 S.W.2d 549, 551 (Tex.App.-San Antonio 1998, pet. denied)....................................39

*Picker, Inc. v. Reagan*,

632 S.W.2d 674, 677 (Tex.App.-Tyler 1982, writ ref'd n.r.e.) .........................................40

*Rutherford Oil v. Land Office of Texas,*

776 S.W.2d 232, 235 (Tex.App.-Austin 1989 ......................................................... 25, 40

*Southern Canal Co. v. State Bd. of Water Engineers*,

318 S.W.2d 619; 159 Tex. 227 (Tex. 1958)......................................................................37

*State Bd. of Ins. v. Republic Nat'l Ins. Co.*,

384 S.W.2d 369, 372 (Tex.Civ.App. — Austin 1964, writ ref'd n.r.e.)............................37

*State v. Crawford*,

262 S.W.3d 532 (Tex.App.-Austin 2008, no pet.) ............................................................38

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*,

  84 S.W.3d 212, 227-28 (Tex. 2002) (op. on reh'g) ........................................................34

*Tex. Dep't of Protective and Regulatory Servs. v. Mega Child Care, Inc.*,

  145 S.W.3d 170, 191-192 (Tex 2004) ............................................................................39

*Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.*,

  997 S.W.2d 651, 660 (Tex.App.-Austin 1999, pet. dism'd w.o.j.)..................................29

*Texas Dept. of Banking v. Mount Olivet Cemetery Ass'n*,

  27 S.W.3d 276, 282 (Tex.App.-Austin 2000, pet. denied)..............................................39

*Texas Dept. of Public Safety v. Banks Transp. Co.,*

  427 S.W.2d 593, (Tex. Sup. 1968) ........................................................................... 25, 37

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 51.012 .......................................................................9

Tex. Gov't Code Ann. § 2001.003 (6) (B) .........................................................................31

Tex. Gov't Code Ann. § 2001.003(6)......................................................................27, 28, 29

Tex. Gov't Code Ann. §§ 2001.023-.037............................................................................28

Tex. Gov't Code Ann. § 2001.174.......................................................................................36

Tex. Gov't Code Ann. § 2001.73.........................................................................................36

Tex. Gov't Code Ann. § 2001.038................................................................................ passim

Tex. Gov't Code Ann. § 2001.171.......................................................................................34

Tex. Gov't Code Ann. § 22.220(a) ........................................................................................9

Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005.................................... 24, 32

Tex. Gov't Code Ann. § 2001.173(a) ..................................................................................35

Tex. Tax Code Ann. § 111.0081(c)......................................................................................26

Tex. Tax Code Ann. §111.010 ............................................................................................36

**Other Authorities**

Shannon and Ewbank, *The Texas Administrative Procedure and Texas Register Act Since 1976 —*
*Selected Problems,* 33 Baylor L.Rev. 393, 424 (1981)......................................................40

**Regulations**

34 Tex. Admin. Code § 3.328 ................................................................... 11, 31

**Constitutional Provisions**

Tex. Const. art. V, § 6 (a)..................................................................................9

# In The
# Third Court of Appeals
## AT AUSTIN, TEXAS

Sanadco Inc., Mahmoud A. Isba, Broadway Grocery, Inc., Shariz, Inc., Ruby & Sons Store, Inc., and Rubina Noorani,

**APPELLANTS**

**VS.**

The Office of the Comptroller of Public Accounts; Glenn Hegar, in his official capacity as Comptroller of Public Accounts for the State of Texas; and Ken Paxton in his official capacity as Attorney General of the State of Texas,

**APPELLEES**

---

**Appeal From Cause No D-1-GN-13-4352**
**The 200th District Court Of Travis County, Texas**
**The Honorable Charles Ramsay, Presiding**

---

# ACCELERATED APPEAL FROM DENIAL OF TEMPORARY INJUNCTION

**TO THE HONORABLE THIRD COURT OF APPEALS:**

Appellants, Sanadco Inc. and Mahmoud A Isba, Et Al, (collectively, Sanadco), submit this accelerated appeal from an interlocutory order entered in Cause No. D-1-GN-13-4352 on November 13, 2014, denying Appellants' Temporary Injunction. This order, filed with the clerk, appears in the Appendix to this interlocutory appeal.

# STATEMENT OF THE CASE

**(1)** *Nature of Underlying Proceeding:*

This matter arises from petitions for review and declaratory judgments seeking temporary injunctions to enjoin the Comptroller from enforcing administrative judgments pending issuance of final judgments in the petitions for review.

**(2)** *Trial Court:*

The Honorable Charles Ramsay, Visiting Judge in the 200th Judicial District Court of Travis County, Texas.

**(3)** *Course of Proceedings:*

Following exhaustion of their administrative remedies, Appellants filed petitions for judicial review and declaratory judgments pursuant to Tex. Gov't Code Ann. §2001.038, alleging the invalidity of auditing rules; ultra-vires conduct; and unconstitutionality of certain statutes. Appellants sought to enjoin the Comptroller from continuing to engage in attempts to collect the alleged tax assessments pending issuance of final judgments in their petitions for judicial review.

**(4)** *Trial Court's Disposition:*

The Court denied Appellants' motions for temporary injunctive relief without explanation, resulting in this accelerated appeal.

## STATEMENT OF JURISDICTION

The Court of Appeals is authorized to exercise jurisdiction in this cause pursuant to TEX. CONST. ART. V, § 6 (a); TEX. GOV'T CODE ANN. § 22.220 (a), and TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (a) (4).

## ISSUES PRESENTED

**Issue No. 1.** **Does the trial court abuse its discretion by refusing to enjoin the Comptroller from enforcing administrative judgments for sales and use taxes if the audit is void and unenforceable, because the audit procedures were not adopted pursuant to the requirements of the Administrative Procedure Act?**

**Issue No. 2.** **Does the trial court abuse its discretion by refusing to enjoin the Comptroller from enforcing administrative judgments for sales and use taxes before the judgments become final?**

**Issue No. 3.** **Does the trial court abuse its discretion by refusing to enjoin the Comptroller from enforcing administrative judgments for sales and use taxes before the petitions for declaratory judgment pursuant to Tex. Gov't Code Ann. § 2001.038 are determined?**

## STATEMENT OF FACTS

### CONVENIENCE STORE AUDIT POLICY HISTORY

### *Original Auditing Procedures*

Prior to 2004, the Comptroller conducted grocery and convenience store audits pursuant to the requirements of Tax Code § 151.412, Tax Code § 151.413, Tax Code § 151.416 and 34 Tex. Admin. Code § 3.328, which authorized three separate methods for tax reporting and auditing dependent upon the size and preferences of the retailer. The Comptroller's Grocery Store Audit Manual described the procedures as follows:

> Three special reporting methods are available to retail grocers as outlined in the sales tax statute (TEX. TAX CODE ANN. 151.412, 151.413 and 151.416) and State Sales and Use Tax Rule 3.328 (Optional Reporting Methods for Grocers and Other Vendors).
> "The special reporting methods are commonly referred to as the:
>
> **15% Method** (Method C) (Tax Code § 151.413)
> A retail grocer whose gross receipts do not exceed $100,000 per calendar year may report and pay tax based on 15% of gross receipts.
> Under this method, a grocer may report and pay tax based on taxable sales equaling 15% of the gross sales. However, eligibility for the use of this method is restricted to:
> - Retail grocers, as previously defined, and whose gross receipts do not exceed $100,000 per calendar year;
> - A retail grocer with one or more outlets, if all outlets under the same ownership qualify and if the combined gross sales of all the outlets do not exceed $100,000 per calendar year.
>
> If a retail grocer is eligible for filing under this method and actually files using the 15% method, any audits performed will be limited to

verification through this same method. Additional taxes will not be assessed nor any refunds/credits will be allowed because this method differs from the amount that would have been paid under any other reporting method; and

***Commingled Receipts Method*** (Method E) ([Tax Code § 151.416](#))

Tax collected is commingled with the receipts from the sales of both taxable and nontaxable items.

This method is available to grocers who establish an accounting system in which sales tax collected is commingled with the receipts from the sale of taxable items. Method E establishes a method of backing out the tax from the gross sales.

An examination of the records of a taxpayer using this method will include:

- A verification of gross sales;
- Verification that tax is included in gross sales;
- Confirmation that the taxable or nontaxable sales are accurate through use of one of the other special reporting methods; and
- Confirmation of the mathematical accuracy of computations.

NOTE: Under the current definition of a retail grocer, most convenience stores and many grocers do not qualify. However, the Comptroller still allows them to use this method.
([Comptroller Audit Manual, *Grocery Stores Ch. 4,* Rev. Sept. 2004.)](#)[1]

If a taxpayer is reporting under one of these methods and qualifies for the use of the method, the audit procedure was to verify returns and computations based on

---

[1] The 2004 version is no longer available on the Comptroller's website. A copy of the 2004 Manual is attached as Exhibit A. The comptroller revised this manual in February 2013, and again in September 2014, found at [http://www.window.state.tx.us/taxinfo/audit/grocery/grocery.pdf](http://www.window.state.tx.us/taxinfo/audit/grocery/grocery.pdf). A manual specifically for convenience store audits was added in September 2014 found at [http://www.window.state.tx.us/taxinfo/audit/convenience/convenience.pdf](http://www.window.state.tx.us/taxinfo/audit/convenience/convenience.pdf)

the method being used. *See Id.* These statutory references and administrative regulations are currently in effect.

## Amended Auditing Procedures

### *AP92 Amendments*

On August 17, 2004, the Comptroller responded to "concern about the lack of uniformity in estimated convenience store audits" by issuing a memorandum directed to "All Audit Personnel", implementing new comprehensive policies and procedures for convenience store audits entitled Audit Policy 92 (AP92). The subject of the memo was "Alternative Audit Methods, Mark-up Percentages & Product Mix Percentages for Convenience Store Audits." Mark-up and product-mix percentages were developed utilizing data from the Texas Petroleum Marketers and Convenience Store Association (TPCA), Robert Morris & Associates Annual Financial Statements (RMA), and National Association of Convenience Stores (NACS). These mark-up percentages and product mix percentages were used when necessitated by lack of reliable records.

The Comptroller instituted two methods by which to perform an audit in cases where records were determined to be unavailable, inadequate or unreliable:

1. Mark-up method:
Purchase information is obtained from the taxpayer and/or vendors. A mark-up is established by performing a shelf test. The resulting mark-up is

applied to the purchase information received from the taxpayer and/or third party vendors.

2. Average taxable sales method:

      This method was only to be used when purchase invoices for all categories of purchases could not be obtained from the vendor. For example, beer invoices are obtainable; no other purchase invoices are available; taxable sales should be estimated using the appropriate percentage(s) from the attachment. (Note: The auditor should always request and utilize actual taxpayer purchase invoices to determine specific product categories if the taxpayer records are reliable)."

The memo directed all auditors, *inter alia*, to conduct shelf tests during convenience store audits if the taxpayer were still in business, and use the percentages designated in the memo as the mark-up for beer and tobacco products if store records were unavailable, inadequate, or unreliable, and if the actual mark-up percentage could not be ascertained by other means. The auditors were instructed that if they did not use the mark-up method, to document why this method was not used.

Effective September 1, 2007, the Texas Legislature enacted legislation directing each wholesaler or distributor of beer, wine, malt liquor or tobacco products to file a report with the Comptroller detailing the monthly net sales made to the retailer by the wholesaler or distributor, including the quantity and units of beer, wine, malt liquor and tobacco products sold to the retailer. *See* (Tex. Tax Code

§ 151.433 (b) (4) and Tex. Tax Code § 155.105. The data provided is commonly referred to as HB 11 data, but no directives authorizing or implementing its use in tax audits was included in the legislation. The first reports became available on January 1, 2008.

*AP122 Amendments*

The Comptroller then amended AP92 with AP122 effective July 22, 2009, again directed to "All Audit Personnel" entitled "Guidelines for Convenience Store Audits." It revised the audit procedures and determination of mark-up percentages and incorporated HB11 data, directing that this data must be the starting point for all convenience store audits whether used as internal control verification or as data used to estimate the audit.

It instructed the auditors to use HB 11 data, available taxpayer records and third party records to produce the most accurate audit results. All of these records were required to be compared to each other for accuracy and consistency in purchasing patterns. It mandated that the product mix of each convenience store be considered, and industry averages were to be used in the absence of these records. For periods prior to January 1, 2008 when HB 11 data was unavailable, estimated taxable sales were based on the average taxable sales for the periods when records became available.

Auditors were further instructed to consider the product mix and to conduct a shelf-test on each active outlet to calculate the appropriate mark-up to be applied to the purchase information and compared to reported taxable sales. Differences would result in additional taxable sales. Absent sufficient records to compute a store's individual product mix, the industry average product mix percentages were used to estimate additional taxable sales. These were revised percentages utilizing data from the Texas Petroleum Marketers and Convenience Store Association (TPCA), Robert Morris & Associates Annual Financial Statements (RMA), and National Association of Convenience Stores (NACS), and differed somewhat from the AP92 calculations. These mark-up percentages and product mix percentages were used only when necessitated by lack of reliable records or if the store were closed. The industry averages were not to be used when the product mix was available because the product mix of the store may not be consistent with the national product mix percentages.

The AP122 procedures were implemented immediately without notice to the merchants or formal adoption. Auditors were instructed to use them for all convenience store audits completed on or after the issue date of the memo, which did not replace AP92, but only updated procedures to fully utilize data available through HB 11 and the revised industry averages. All previous statutory and

regulatory procedures remained in effect with no instruction regarding reconciliation of these conflicting procedures.

## ADMINISTRATIVE PROCEEDINGS[2]

SANADCO INC. and MAHMOUD A. ISBA timely filed a request for redetermination in SOAH Docket No. 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.26, TCPA Hearing No. 106,815, and SOAH Docket No. 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.26, TCPA Hearing No. 107,006, respectively, and joined for the sake of efficiency. SOAH held a hearing on September 9, 2013, and issued the Proposal for Decision on December 12, 2013. The Comptroller issued his Decision on June 16, 2014 (Exhibit B), and Petitioners timely filed their Motion for Rehearing. The Comptroller denied this motion on July 15, 2014 (Exhibit C), thereby exhausting Plaintiffs' administrative remedies. Plaintiffs had previously filed their request for judicial review simultaneously with a declaratory judgment challenging the validity of the memoranda pursuant to Tex. Gov't Code Ann. §2001.038 on December 27, 2013 in Cause No. D-1-GN-13-004352 (CR, pp. 3-4). This premature request for judicial review is therefore considered timely filed. *Subaru of America v. David McDavid Nissan*, 84 S.W.3d 212, 228 (Tex. 2002).

---

[2] Neither the administrative proceedings nor the enforcement activities are included in the Clerk's Records, but are in the Appendix according to the referenced Exhibits.

Plaintiff, BROADWAY GROCERY INC., is engaged in a contested case proceeding before SOAH regarding an alleged sales and use tax deficiency in Docket Number 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.26, TCPA HRG No. 109,293, and timely filed a Request for Redetermination on July 30, 2012. SOAH held a hearing on August 1, 2014, and the Comptroller rendered her decision on October 31, 2014 (Exhibit D). The timely motion for rehearing was denied on December 2, 2014 (Exhibit E), thus exhausting the administrative remedies. Plaintiff had previously joined in the request for judicial review and declaratory judgment on March 13, 2014 in Cause No. D-1-GN-13-004352 (CR, p. 266), thereby filing its timely request for judicial review. *Id.*

Plaintiff, SHARIZ, INC. is engaged in a contested case proceeding before SOAH regarding an alleged sales and use tax deficiency in TCPA HRG No. 108,636 but, on motion by the Tax Division (Exhibit F), the Comptroller dismissed Plaintiff's cause without a hearing for lack of prosecution on September 5, 2014. (Exhibit G). Plaintiff's timely motion for rehearing was filed on September 25, 2014 and denied by the Comptroller on October 9, 2014 (Exhibit H), thereby exhausting its administrative remedies. Plaintiff had previously joined in the request for judicial review and declaratory judgment on March 13, 2014 in Cause No. D-1-GN-13-004352 (CR, p. 266), thereby filing its timely request for judicial review. *Id.*

Plaintiff, RUBI & SONS STORE, INC. is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store. The Comptroller completed the audit at Plaintiff's convenience store on January 15, 2015, and Plaintiff timely filed a request for redetermination on February 2, 2015. (Exhibit I). Plaintiff previously joined in the request for judicial review and declaratory judgment in Cause No. D-1-GN-13-004352 on August 6, 2014 (CR, p. 284-285), thereby filing its premature request for judicial review pending the exhaustion of its administrative remedies. *Id.*

MAHMOUD A. ISBA, Plaintiff, as owner and operator of Nevine Food Store #2, is engaged in a contested case proceeding before SOAH regarding an alleged sales and use tax deficiency in Case No. 110,485 for audit periods March 1, 2009 thru September 30, 2012. The Comptroller completed the audit at Plaintiff's convenience store on April 12, 2013, and Plaintiff timely filed a request for redetermination on May 13, 2013. (Exhibit J). The Comptroller dismissed Plaintiff's cause without a hearing pursuant to the Tax Division's motion to dismiss for lack of prosecution on August 8, 2014 (Exhibit K), and denied Plaintiff's request for rehearing on September 16, 2014. (Exhibit L).

**ENFORCEMENT ACTIVITIES**

**Mahmoud Isba, Nevine Food Store**

The Comptroller's Decision was not issued until August 8, 2014, and would not become final until September 2, 2014. Payment would therefore become due on September 22, 2014 unless a motion for rehearing was filed, but the Comptroller initiated enforcement proceedings against Mahmoud Isba on June 17, 2014 when they demanded a bond in the amount of $9,000.00 for his failure to post a previously unrequested bond. (Exhibit M).

Isba's timely motion for rehearing, filed on September 1, 2014 was denied on September 16, 2014 (Exhibit L), and payment became due on October 4, 2014. Isba, however, filed a timely petition for judicial review and declaratory judgment by joining Cause No. D-1-GN-13-004352 on October 17, 2014. (Exhibit N).

Having paid the prior tax assessment in full (Exhibit O), and perfected his appeal to district court, Isba refused to post the bond. As a result, his sales tax permit was cancelled on December 3, 2014 after a hearing in which the Comptroller was advised that he had already paid off the prior assessment and that the most recent assessment was currently on appeal in district court. (Exhibit P).

On December 5, 2014, the Comptroller seized $56.00 in cash and Isba's credit card machine and valued it at $0.00. He was also notified that his property and inventory would be seized and that he owed a total of $78,025.36 in delinquent taxes,

(Exhibit Q), although the audit only assessed a total liability of $11,320.18, including taxes and penalty and the Comptroller's Decision failed to assess any liability (Exhibit K).

On February 26, 2015 the Comptroller entered Plaintiff's store and seized $59.11 in cash, as well as the store's inventory and the building. (Exhibit Q). Plaintiff's store remains closed.

***Broadway Grocery, Inc.***

Broadway Grocery, Inc. exhausted its administrative remedies on December 22, 2014 and had previously perfected its petition to district court for judicial review and declaratory judgment on March 13, 2014. (CR, p. 266). Despite the appeal, the Comptroller demanded payment on the tax assessment by letter dated February 18, 2015 due and payable on or before February 20, 2015. (Exhibit R).

On March 2, 2015, the International Bank of Commerce notified Broadway that they had received a notice of freeze from the Comptroller's office to freeze his account for $96,661.32 for sixty days or until the Comptroller levied on the account. (Exhibit S).

On March 4, 2015 Shafeeq Khimani, president of Broadway, Inc. was alerted by the bank that a freeze in the amount of $86,621.14 had been placed on his personal

Bank of America account, and that $10,011.40 was paid to the Comptroller on that date. (Exhibit T). The Comptroller never notified Plaintiff of these transactions.

*Shariz, Inc.*

On or about January 28, 2015, the Comptroller left a "Notice of Official Visit" demanding that Shariz, Inc. contact them no later than January 30, 2015. (Exhibit U).

The Comptroller conducted each of these collection attempts while the plaintiffs' petitions for judicial review and declaratory judgments remained pending and no final judgments had been entered.

On August 6, 2014, Plaintiffs filed their application for temporary injunctions to enjoin the Comptroller from continuing these premature collection efforts, and the trial court denied the application on November 13, 2014, from which this accelerated appeal ensued.

# SUMMARY OF ARGUMENTS

Plaintiffs are convenience store owners engaged in administrative proceedings following sales and use tax audits conducted by the Comptroller of Public Accounts and the timely filing of requests for redetermination hearings before SOAH. They timely filed petitions for judicial review of the Comptroller's adverse decisions, and declaratory judgment actions pursuant to Tex. Gov't Code Ann. § 2001.038 to determine the validity of the audits. Despite the pendency of these petitions, the Comptroller has engaged in enforcement activities to coerce payment of the alleged sales and use tax deficiencies, including suspension of their sales and use tax permits, freezing and levying on financial accounts, confiscation of business assets and inventory, and forced closure of the businesses. Plaintiffs assert that these collection efforts are premature because they are not supported by final judgments.

They first contend that the audits supporting the judgments are invalid and unenforceable because the comptroller failed to adopt the auditing procedures in accordance with the Administrative Procedure Act (APA). A rule is invalid and unenforceable unless it is promulgated and adopted in accordance with the requirements of the APA. Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005. The comptroller failed to comply with the adoption procedures as

mandated by the APA, thus the memoranda implementing the auditing procedures are invalid and unenforceable when applied to convenience store audits.

They further assert that the petitions for de novo judicial review nullified the administrative judgments and terminated authority to conduct any enforcement activity. The sine qua non of a de novo trial is the nullification of the judgment of the first tribunal and a retrial of the issues on which the judgment or order was founded. When jurisdiction of the second tribunal attaches, the judgment of the first tribunal is not merely suspended, but is nullified. *Texas Dept. of Public Safety v. Banks Transp. Co.,* 427 S.W.2d 593, (Tex. Sup. 1968). Accordingly, there is no valid, subsisting judgment upon which to conduct the enforcement activity.

Appellants finally contend that the denial of the temporary injunction was an abuse of discretion because the purpose of the declaratory judgment action pursuant to Tex. Gov't Code Ann. § 2001.038 is to obtain a final declaration of a rule's validity *before* the rule is applied. *Rutherford Oil v. Land Office of Tex.*, 776 S.W.2d 232, 235 (Tex.App.-Austin 1989). The court's refusal to enjoin enforcement of the audit permits the comptroller to collect the assessments before the validity of the audits can be determined, thereby defeating the purpose of the statute.

**ARGUMENT**

A final judgment is the lifeblood of debt collection. "Without a final judgment nothing happens . . . [t]hus, absent entry of [a final] judgment, no execution can be had and, therefore, collection of the judgment debt is postponed or denied." *Armadillo Bail Bonds v. State,* 772 S.W.2d 193, 195 (Tex.App.-Dallas 1989), aff'd, 802 S.W.2d 237 (Tex.Crim.App. 1991).

A debt owed to the State must be collected by the same rules governing other civil actions. *Id.* Tex. Tax Code Ann. § 111.0081(c) provides that "the amount of a determination made under this code is due and payable 10 days after it becomes final". Consequently, the tax amount does not become "due and payable" until after the Comptroller's decision in the redetermination hearing becomes final. The judgment in a redetermination hearing becomes "final" (and thus a party has exhausted administrative remedies): (1) after the time to seek [judicial] review of the agency decision expires, if no affected person seeks such review, or (2) after an affected person who seeks judicial review exhausts the substantial-evidence review avenues. *Subaru of America v. David McDavid Nissan*, 84 S.W.3d 212, 224 (Tex. 2002).

> **I.    The trial court abused its discretion by refusing to enjoin the enforcement of the audits because the auditing procedures were not**

**adopted in accordance with the Administrative Procedure Act and were invalid and unenforceable.**

The Comptroller's memos implementing Audit Policy Memoranda 92 and 122 (AP 92 and AP 122) effective August 17, 2004, and July 22, 2009 respectively, are agency rules as defined by Gov't Code § 2001.003 (6). *See, Sanadco, Inc. v. Office of Comptroller of Public Accounts of Texas*, No. 03-10-00462-CV, 2013 Tex. App. LEXIS 12013 at * 13 (Tex. App.—Austin Sept. 26, 2013)[3].  The use of these rules or their threatened application interfere with or impair, or threaten to interfere with or impair, a legal right or privilege of the Plaintiffs in that they subject them to potential loss of his business, his license, illegal tax assessments and subjecting his property to liens and potentially to forcible sale.

AP 92, AP 122 and HB 11 constitute agency rules as defined by the Administrative Procedures Act (APA). They are statements of general applicability relating to all convenience store audits; that implemented agency policy to add uniformity to the audits; and described the procedure or practice requirements of the

---

[3] In *Sanadco*, this court held that AP92, AP122 and HB11 were rules under the Administrative Procedure Act, and remanded the case to the trial court for further proceedings. On Rehearing, the court withdrew its opinion on other grounds, finding that the trial court was without jurisdiction over Sanadco's claims because it had not exhausted its administrative remedies. The court, however, did not revisit its holding regarding the validity of the rule. The case is now pending filing of a Further Motion for Rehearing by the Appellants, Sanadco, Inc.

agency by implementing the use of HB 11 and the percentages for mark-ups and product mixes incorporated in AP 92 and AP 122.

## A. The Memoranda are Rules as Defined by the APA.

To establish entitlement to a declaratory judgment pursuant to Gov't Code § 2001.038, the challenged procedure or document must be a rule as defined by the Administrative Procedure Act (APA). Gov't Code § 2001.003(6). The jurisdictional inquiry concerns whether the Comptroller's memos constitute rules under the APA and, if so, whether that rule or its threatened application interferes with or impairs Plaintiffs' legal rights or privileges. *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d at 720. It is undisputed that neither AP92 or AP122 were promulgated pursuant to APA requirements, and Appellants assert that AP92, AP122 and HB 11 are each rules meeting the requirements of Gov't Code § 2001.003 (6), but are invalid because they were not promulgated in accordance with the requirements of Gov't Code §§ 2001.023-.037. The dispositive issue is therefore whether these memoranda are rules as defined by the APA.

Section 2001.003 (6) of the APA defines a rule as:

(A) a state agency statement of general applicability that:
    (i) implements, interprets, or prescribes law or policy; or
    (ii) describes the procedure or practice requirements of a state agency;
(B) includes the amendment or repeal of a prior rule; and
        (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Gov't Code § 2001.003(6)

## General Applicability

These mandatory procedures are clearly intended to apply, and are applied to all convenience stores across the state, and therefore unquestionably meet the criteria of "general applicability." *See Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.*, 997 S.W.2d 651, 660 (Tex.App.-Austin 1999, pet. dism'd w.o.j.) (holding that statements contained in agency memoranda were rules because they imposed binding instructions affecting private rights of all similarly situated persons). Although the directives bind agency auditors to apply these procedures, it is not directed only" to "the internal management or organization of a state agency." *Id.; See* APA § 2001.003(6)(c). Rather, it imposes the Comptroller's prospective, blanket application of these procedures, affecting the private rights of convenience store owners throughout the state. *Id; Combs v. Entertainment Publ'ns, Inc,* 292 S.W.3d 712, 721-22 (Tex.App.-Austin 2009, no pet) (construing agency letters as "rules" because they were not directed "only" to "the internal management or organization of a state agency," but expressed an intent to apply this interpretation to all brochure-fundraising firms). *Compare with Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 269 (Tex.App.-Austin 2002, no pet.) (declining to view agency correspondence as stating rule when policy was directed only at plaintiff and did not implicate rights of any party other than plaintiff).

## Implement and Describe Agency Procedures

The memoranda also satisfy the literal requirements of the APA definition. They are clearly an agency statement. They implement and describe the Comptroller's auditing procedures or practice requirements in great detail requiring specific methodology for each phase of the audit. It provides alternative procedures in the event of insufficient record keeping by the taxpayer and supplies a previously non-existent source for calculating mark-up percentages and product mixes, mandating their use. Further, it supplies a new source of information to document the purchase of beer and cigarettes from the wholesalers pursuant to HB 11, insisting that this information be the starting point for each audit. Moreover, they do not constitute statements regarding only the internal management or organization of the Commission because they adversely affect each convenience store owners' private rights to equitable audits.

There are no requirements about which there can be any bona fide disagreement. AP122 specifically clarifies that "it only updates our procedures,"; the language is mandatory--("the following guidelines *must* be used"; "a shelf test *must* be conducted"; "HB 11 data *must* be the starting point for convenience store audits"), and the "AP" designation in the memos refer to "Audit Policy" memos which clearly prescribe procedure requirements for the agency for statewide application. To argue

that these memos are not a statement of the agency's policy, of general applicability, which describe its procedures and practice requirements, and constitute an amendment to a prior rule for the conduct of convenience store audits, is at best fallacious.

**Amended or Repealed Rule 3.328**

Prior to AP92 there were no policies or procedures directed specifically at the conduct of convenience store audits. At best, auditors could refer to the provisions of 34 Tex. Admin. Code § 3.328 entitled "Optional Reporting Methods for Grocers and Other Vendors" which provided several alternatives by which grocery and convenience stores could determine tax liability, but provided little or no guidance in performing audits of these enterprises. Following the implementation of AP92, this administrative rule was completely abandoned although the statutory and regulatory provisions remain unchanged. Thus, AP92 and AP122 are, at minimum, amendments to that rule, and AP122 amends AP92 and therefore meet the requirements as an amendment or repeal of a prior rule as set forth in Gov't Code § 2001.003 (6) (B).

AP92 may either be considered the implementation of new auditing procedures specifically directed at convenience stores, or as an amendment to Rule 3.328. Either way, it concisely fits the parameters of the statute. AP122 is unquestionably an

amendment to AP92 because the Comptroller designates it as such ("This does not

replace AP92; it only updates our procedures to fully utilize data available to us").

## B. The Audits are Invalid and the Court May Render Judgment

A rule is invalid and unenforceable unless it is promulgated and adopted in

accordance with the requirements of the APA. Tex. Gov't. Code Ann. §§ 2001.035,[4]

2001.004[5] and 2001.005[6]. The comptroller never adopted AP 92 nor AP 122 as

mandated by the APA and are therefore invalid and unenforceable when applied to

---

[4]§ 2001.035. Substantial Compliance Requirement; Time Limit on Procedural Challenge
(a) A rule is voidable unless a state agency adopts it in substantial compliance with Sections 2001.0225 through 2001.034.

[5]§ 2001.004 Requirement to Adopt Rules of Practice and Index Rules, Orders, and Decisions
In addition to other requirements under law, a state agency shall:
(1) adopt rules of practice stating the nature and requirements of all available formal and informal procedures;
(2) index, cross-index to statute, and make available for public inspection all rules and other written statements of policy or interpretations that are prepared, adopted, or used by the agency in discharging its functions; and
(3) index, cross-index to statute, and make available for public inspection all final orders, decisions, and opinions.

[6] § 2001.005 Rule, Order, or Decision Not Effective Until Indexed
(a) A state agency rule, order, or decision made or issued on or after January 1, 1976, is not valid or effective against a person or party, and may not be invoked by an agency, until the agency has indexed the rule, order, or decision and made it available for public inspection as required by this chapter.
(b) This section does not apply in favor of a person or party that has actual knowledge of the rule, order, or decision.

convenience store audits. In the absence of enforceable audits, there is nothing upon which to base the enforcement activities.

It is uncontroverted that the procedures mandated by the memoranda were applied in all of the audits performed on the convenience stores or that they were implemented without compliance with the appropriate APA procedures. Accordingly, the Court may enter an order reversing the trial court's order denying the temporary injunction, and render judgment prohibiting the Comptroller from further enforcement activities or use of these procedures in future audits until they have complied with the APA requirements. *See El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008). The court should further render judgment that all audits performed pursuant to the procedures mandated by AP92 and AP122, including the use of HB 11 data, are invalid pursuant to Gov't Code § 2001.035, Gov't Code § 2001.004 and Gov't Code § 2001.005, and prohibit enforcement of the resulting tax liabilities, including all taxes, penalties and interest.

> **II. The trial court abused its discretion by refusing to enjoin the enforcement of the administrative judgments because the petitions for judicial review nullified the judgments.**

The Comptroller sought illegal enforcement of the taxpayers' alleged sales tax liabilities while the administrative redetermination was pending judicial review. Relators assert that the Comptroller's decisions could not become final until those proceedings had run their course, and the Comptroller exceeded his statutory authority by his attempts to enforce the orders before they became final.

## A. The Petitions for Review were Timely Filed

The Administrative Procedure Act (APA) authorizes a person who has exhausted his administrative remedies to request judicial review if he is aggrieved by a final decision in a contested case. Tex. Gov't Code Ann. § 2001.171. The petition seeking judicial review, filed before Relators had exhausted their administrative remedies, became timely after the administrative remedies were finally exhausted. These prematurely filed appeals ripened upon exhaustion of the administrative remedies. *See, e.g., Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 227-28 (Tex. 2002) (op. on reh'g) (where judicial review is requested prematurely for claims over which the trial court could exercise partial jurisdiction, the court may abate proceedings and await exhaustion of the administrative claims.). *Marble Falls v. Scott,* 275 S.W.3d 558, 566 (Tex.App. [3rd] 2008).

Where, as here, the appealing parties bring claims over which a trial court has jurisdiction, in addition to seeking judicial review of an administrative decision, the court may abate the claims to allow an opportunity to cure. See, e.g., *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 227-28 (Tex. 2002) (op.on reh'g). Consequently, upon the filing of the petition for declaratory judgment pursuant to Tex. Gov't Code Ann. § 2001.038, the trial court assumed jurisdiction of the statutory claims alleged in the petition. Moreover, it has the authority to exercise jurisdiction over those claims, and the proceedings must be abated pending exhaustion of remedies. When exhaustion occurred, the prematurely filed petitions for judicial review became ripe.

## B. The Comptroller's Decision Has Been Nullified

The Administrative Procedure Act (APA) provides that when "the manner of review authorized by law for the decision in a contested case … is by trial de novo, the reviewing court shall try each issue of fact and law … as though there had not been an intervening agency action or decision." Tex. Gov't Code Ann. § 2001.173 (a) (West 2000). A de novo hearing has been defined as "a new and independent action in which the whole case is gone into as if no trial whatever had been had in the court below." Trial de novo is not an "appeal", but is a new and independent

action. *Key Western Life Ins. Co. v. State Bd. of Ins*., 350 S.W.2d 839, 846 (Tex. 1961).

Appellants' petition for judicial review pursuant to Tex. Gov't Code Ann. § 2001.173 and Tex. Gov't Code § 2001.174 is for a de novo hearing to determine the validity of the deficiency assessments sought to be collected by the Comptroller in the contested proceeding. More importantly, because the only question before the District Court concerns a matter of statutory construction, the review of the court's construction of the relevant statutes is *de novo. See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). When the only issue under review involves a pure question of law, the standard of review is de novo. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994); City of Pasadena v. Gennedy, 125 S.W.3d 687, 691 (Tex. App.-Houston [1st Dist.] 2003, pet. denied); *Doan v. Christus Health ArkLa-Tex*, 329 S.W.3d 907, 910 (Tex.App.-Texarkana 2010, no pet.).

Further, in suits filed pursuant to Tex. Tax Code Ann. §111.010, officers and directors are entitled to a full and complete hearing on their tax liability in district court. See Tex. Tax Code Ann. § 111.010 (West 2008) (authorizing attorney general to file suit to recover taxes). The case is tried de novo. *Greene v. State*, 324 S.W.3d 276, 288 (Tex.App.- Austin 2010, no pet.) (111.010 allows for a de novo review of the party's tax liability), *Herrera v. State*, No. 03-01-00101-CV, 2002 WL 185476,

at \*1 n. 4, 2002 Tex.App..-Austin Feb. 7, 2002, no pet.) (not designated for publication) (identifying suit under section 111.010 as "de novo action by the State to collect delinquent tax").

The sine qua non of a de novo trial is the nullification of the judgment of the first tribunal and a retrial of the issues on which the judgment or order was founded. When jurisdiction of the second tribunal attaches, the judgment of the first tribunal is not merely suspended, but nullified. *Texas Dept. of Public Safety v. Banks Transp. Co.,* 427 S.W.2d 593, (Tex. Sup. 1968*); Southern Canal Co. v. State Bd. of Water Engineers*, 318 S.W.2d 619; 159 Tex. 227 (Tex. 1958). Accordingly, "res judicata" and "final judgment" are inapplicable in de novo proceedings because the original administrative order that is the subject of appeal is nullified in a de novo proceeding. *State Bd. of Ins. v. Republic Nat'l Ins. Co*., 384 S.W.2d 369, 372 (Tex.Civ.App. — Austin 1964, writ ref'd n.r.e.).

Consequently, the filing of the petition for review nullified the administrative judgment, leaving nothing for the Comptroller to enforce pending entry of a final judgment in the petition for review, and such enforcement activity was illegal and premature. In the absence of a final judgment in the redetermination hearing, no tax has yet been imposed and no tax is "due and payable" upon which a delinquency may be predicated.

A void order has no force or effect and confers no right; it is a nullity. *See In re Garza,*, 126 S.W.3d 268, 271 (Tex. App.-San Antonio 2003, orig. proceeding). Where the trial court (in this case the administrative judge) did not have jurisdiction to render a judgment, the proper practice is for the reviewing court to set the judgment aside and dismiss the cause. *Fulton v. Finch*, 162 Tex. 351, 356, 346 S.W.2d 823, 827 (1961) (orig. proceeding) (If the trial court lacks jurisdiction, the appellate court only has jurisdiction to set the judgment aside and dismiss the cause.); *Crane v. Richardson Bike Mart, Inc.*, 295 S.W.3d 1, 5 (Tex. App.-El Paso 2009, no pet.).

Accordingly, the collection activity is void and the comptroller should dismiss the underlying administrative judgment and reimburse Appellants for the illegally collected funds, and the results of said activity should be nullified. *State v. Crawford*, 262 S.W.3d 532, 546 (Tex.App.-Austin 2008, no pet.).

**III.** **The trial court abused its discretion by refusing to enjoin the comptroller's enforcement activity because the petition for declaratory judgment entitled Appellants to a final declaration of a rule's validity *before* the rule is applied.**

Appellants filed a declaratory judgment action pursuant to Tex. Gov't Code § 2001.038, alleging the invalidity of agency rules. Gov't Code § 2001.038 represents an express legislative grant of subject-matter jurisdiction, so that valid claims raised pursuant to that provision are not barred by sovereign immunity. *See Id; El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 713 (Tex. 2008); *Tex. Dep't of Protective and Regulatory Servs. v. Mega Child Care, Inc*., 145 S.W.3d 170, 191-192 (Tex 2004).

Declaratory-judgment actions are intended to determine the rights of parties when a controversy has arisen, *before* any wrong has actually been committed, and are preventative in nature*. Montemayor v. City of San Antonio Fire Dept*., 985 S.W.2d 549, 551 (Tex.App.-San Antonio 1998, pet. denied). A person seeking a declaratory judgment need not have incurred actual injury. *City of Waco V. Texas Natural Resource Conservation Commission, 83 S.W.3d 169, 175 (Tex.App.-Austin 2002)*; *Texas Dept. of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 282 (Tex.App.-Austin 2000, pet. denied). Courts have also issued declaratory judgments construing a statute before the statute is violated. *See The Pea Picker, Inc. v. Reagan*,

632 S.W.2d 674, 677 (Tex.App.-Tyler 1982, writ ref'd n.r.e.) (trial court had power to construe Open Meetings Act and determine whether notice must be given and when meeting is required to be open).

A rule may be challenged, "If it is alleged that the rule, *or its threatened application,* interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff." This language makes it clear that the purpose of this statute is to obtain a final declaration of a rule's validity *before* the rule is applied. *See* Shannon and Ewbank, *The Texas Administrative Procedure and Texas Register Act Since 1976 — Selected Problems,* 33 Baylor L.Rev. 393, 424 (1981).

Appellants pleaded that the rules in question impair or threaten to impair its legal rights. Having complied with the statute's condition, Appellants were entitled to a declaratory judgment regarding the rules' validity before the rule's application. *Rutherford Oil v. Land Office of Texas*, 776 S.W.2d 232, 235 (Tex.App.-Austin 1989). Accordingly, the trial court abused its discretion by refusing to enjoin the comptroller from engaging in enforcement activities before an adjudication of the validity of the rule.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Appellants pray that this Court will reverse the trial court's order denying the temporary restraining order and render judgment that the audits were invalid, and unenforceable, and order the comptroller to cease its enforcement efforts and reimburse all funds and property collected from the Appellants. In the alternative, Appellants pray the court to reverse the judgment of the trial court and remand it for further proceedings. Appellants pray for such other and further relief in law and in equity to which they may show themselves entitled.

Respectfully submitted,

*Law Office of*
*Samuel T. Jackson*
PO Box 170633
Arlington, TX 76003-0633

Tel: (512) 692-6260

Fax. 866-722-9685
ATTORNEY FOR
APPELLANTS

By: /s/ Samuel T. Jackson

Samuel T. Jackson
Texas Bar No. 10495700

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), because it contains 6,063 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1), as counted by the computer program used to prepare this document.

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing instrument was served on the parties or their attorneys **via facsimile**, certified mail, return receipt requested, and/or hand delivery on April 16, 2015 in accordance with the Texas Rules of Appellate Procedure, to the following:

**JACK HOHENGARTEN**

Assistant Attorney General
FINANCIAL LITIGATION
DIVISION

P.O. Box 12548
Austin, TX 78711-2548

TEL: (512) 475-3503

FAX: (512) 477-2348/480-8327

Email: jack.hohengarten@oag.state.tx.us

ATTORNEY FOR DEFENDANTS

# VERIFICATION

STATE OF TEXAS

§

COUNTY OF TARRANT



BEFORE ME, the undersigned authority, personally appeared Samuel T. Jackson, who, being by me duly sworn, on his oath deposed and stated the following:

I, SAMUEL T. JACKSON, am over 18, of sound mind and otherwise capable of making this affidavit. I am the attorney representing Sanadco Inc. and Mahmaud A. lsba, Et Al, Appellants in this accelerated appeal and Defendants in the court below. I have prepared Appellants' brief and the appendix and hereby certify that all of the documents in the attached appendix are true and correct copies of the documents filed with the Office of the Comptroller of Public Accounts in the underlying administrative proceedings as those documents exist in my files or were transferred to us by opposing counsel. I swear under oath and upon personal knowledge that the factual

allegations in the faregoing brief are true and correct.

_____

SAMUEL T. JACKSON

ATTORNEY FOR APPELLANTS

SUBSCRIBED AND SWORN TO BEFORE ME on the 13th day of April 2015, to certify which witness my hand and official seal.

_____

Notary Public in and for the State of Texas


# APPENDIX

Appendix
Exhibit

1.      Order Denying Plaintiffs' Declaratory Judgment and Application for Temporary Injunction

   A. Grocery Store Manual-2004
   B. Sanadco's Comptroller Decision
   C. Sanadco Order Denying Motion for Rehearing
   D. Broadway Comptroller Decision
   E. Broadway Order Denying Motion for Rehearing
   F. Tax Division's Motion to Dismiss Shariz, Inc.
   G. Comptroller's Decision, Shariz, Inc.
   H. Order Denying Motion for Rehearing, Shariz, Inc.
   I.  Request for Redetermination Hearing, Ruby & Sons
   J.  Request for Redetermination Hearing, Isba
   K. Comptroller's Decision, Isba
   L.  Denial of Motion for Rehearing, Isba
   M. Request for Bond, Isba
   N. Petition for Judicial Review, Isba
   O. Payment, Isba
   P.  Cancellation of Permit, Isba
   Q. Enforcement Activity, Isba
   R. Collection Letter, Broadway
   S.  IBC Notice of Freeze, Broadway
   T.  Bank of America Alert, Broadway
   U. Notice of Visit, Shariz, Inc.

EXHIBIT 1

ORDER DENYING TEMPORARY INJUNCTION

NO. D-1-GN-13-004352

Filed in The District Court
of Travis County, Texas

NOV 13 2014

At ____3:11____ p.m.

Amalia Rodriguez-Mendoza, Clerk

| | |
|---|---|
| SANADCO INC, A TEXAS CORPORATION § | IN THE DISTRICT COURT OF |
| AND MAHMOUD AHMED ISBA § | |
|     Plaintiffs, § | |
| § | |
| V. § | |
| § | |
| SUSAN COMBS, IN HER INDIVIDUAL § | |
| AND OFFICIAL CAPACITY § | |
| AS COMPTROLLER OF PUBLIC, § | TRAVIS COUNTY, TEXAS |
| ACCOUNTS § | |
| § | |
| OFFICE OF COMPTROLLER OF § | |
| PUBLIC ACCOUNTS FOR THE STATE § | |
| OF TEXAS, § | |
| § | |
| AND GREG ABBOTT, IN HIS § | |
| OFFICIAL CAPACITY AS ATTORNEY § | |
| GENERAL OF THE STATE OF TEXAS § | |
|     Defendants § | 200th JUDICIAL DISTRICT |

## ORDER DENYING PLAINTIFF'S DECLARATORY JUDGMENT
## AND APPLICATION FOR TEMPORARY INJUNCTION

ON October 14th, 2014, this Court heard Mahmoud Ahmed Isba's application for temporary injunction. After considering the pleadings on file, the evidence, and the arguments of counsel, the Court finds that the application is without merit and should be DENIED.

ACCORDINGLY, Mahmoud Ahmed Isba's application for temporary injunction is denied.

SIGNED on the _12_ ~~Nov.~~ day of ~~October~~, 2014.

_____
HONORABLE CHARLES RAMSAY

EXHIBIT A

GROCERY STORE MANUAL-2004

| default_collection | default_frontend | default_frontend | xml_no_dtd | | GO |
|---|---|---|---|---|---|



Susan Combs Texas Comptroller of Public Accounts

Skip to content

Grocery Stores Manual

# Grocery Stores

Revised 09/2004

## Chapter IV — Special Reporting Methods

- **Method B - Purchase Ratio Method**
- **Method C - 15% of Gross Sales**
- **Audit Procedure - 15% Method**
- **Method E - Commingled Receipts**

---

Three special reporting methods are available to retail grocers as outlined in the sales tax statute (TEX. TAX CODE ANN. 151.412, 151.413 and 151.416) and State Sales and Use Tax Rule 3.328 (Optional Reporting Methods for Grocers and Other Vendors).

The special reporting methods are commonly referred to as the:

- Purchase Ratio Method (Method B)

  - A percentage ratio of taxable items purchased to total items purchased is applied to gross sales to determine taxable sales

- 15% Method (Method C)

  - A retail grocer whose gross receipts do not exceed $100,000 per calendar year may report and pay tax based on 15% of gross receipts

- Commingled Receipts Method (Method E)

  - Tax collected is commingled with the receipts from the sales of both taxable and

nontaxable items

If a taxpayer is reporting under one of these methods and qualifies for the use of the method, the audit procedure is to verify returns and computations based on the method being used.

Purchase invoices must be maintained for at least four years to verify a grocer's sales tax returns regardless of the method chosen for reporting purposes.

The use of an optional special reporting method does not relieve the seller from the obligation and duty of collecting tax in the specific manner as prescribed in the statute and in accordance with the bracket system (TEX. TAX CODE ANN. 151.415).

# Method B - Purchase Ratio Method

This method may be used by a grocer for reporting purposes only, and eligibility is restricted to:

- Any retail grocer
- Any vendor who maintains a separate grocery department with separate records which may be audited by the Comptroller, as applies to the grocery department only
- Any vendor whose taxable receipts from the sale of taxable items are less than ten percent of his total receipts

**NOTE:** Under the current definition of a retail grocer, most convenience stores and many grocers do not qualify. However, the Comptroller still allows them to use this method.

The following steps are used under this method:

- Determine the total sum of merchandise purchased for resale during the preceding calendar or fiscal year
- Determine the total sum of taxable merchandise purchased during the preceding calendar or fiscal year
- Divide the total amount of taxable merchandise purchased by the total merchandise purchased for resale to obtain a percentage relationship
- Multiply the percentage obtained times the total sales for the reporting period to obtain the taxable sales
- Items which are purchased tax-free and used by the taxpayer (and which are subject to sales/use tax) must be included on the return as taxable purchases

An audit of a taxpayer who uses the purchase ratio method to compute taxable sales will generally be limited to verification of reported amounts based on summary records and computation procedures. The verification procedures should include:

- An examination of the taxpayer's worksheets which were prepared to compute total purchases and segregate taxable and nontaxable item purchases - worksheet amounts for total purchases should be traced to summary records (purchases journal, cost of goods sold section of the Federal Income Tax Return, etc.)
- Tracing purchase invoices for sample periods to verify proper inclusion and segregation - sample periods should include entire purchase cycles (weeks, months, etc.)
- Comparing the purchasing patterns with the purchase invoices for the sample period - vendors may need to be contacted to verify purchases
- Verifying any adjustments to taxable and gross purchases which would include:
  - Operating supplies
  - Wrapping and packaging items
  - Trading stamps
  - Finance, insurance, and other charges
  - Inventory variances
    - Method of inventory - actual physical inventory, gross profit method
    - Valuation of inventory - retail value, cost
    - Segregation by product line or department
  - Base stock inventories for new stores or departments
  - Interstore transfers
  - Personal purchase/use items (employee gifts, etc.)
  - Unusual losses due to theft, spoilage, fire, or other reasons which can be supported by police/fire reports, insurance claims, inventory studies, etc.
  - Significant purchase discounts and allowances which could include cash discounts, volume rebates, quantity discounts, promotional allowances, etc. - since these discounts can apply to taxable/nontaxable grocery items as well as non-grocery items, a segregation test of the discounts may have to be done
    - Cash discount - reduction from invoice price allowed for prompt payment
    - Volume rebate or quantity discount - an allowance or reduction of the price for volume purchases based on the number of units sold or purchased during a promotional period. The allowance is directly related to units sold or purchased although the grocer may incur some additional promotional expense. The retail price of the product may or may not be lowered during the promotional period. This term does not include display or other merchandising plan allowances or payments which are based on agreements not related to volume of purchases, or cooperative advertising allowances, which are based on national line rate advertising and are also not related to volume or purchases and sales. Cooperative advertising allowances are intended to reimburse a grocer for a portion of his advertising costs for a particular product or products.

**NOTE:** Some of the discounts listed above may not be reflected on the purchase invoice but rather may be listed as a separate credit memo.

- Verification of gross receipts which may have to include adjustments for the following;
  - Sales tax included in reported gross sales
    - EXAMPLE: Gross sales including tax = $104,950

- Tax collected is unknown as taxpayer's cash register only accounts for total sales amount which may include any tax collected
- The percentage relationship of taxable purchases to total purchases is determined by the auditor to be 60%

```
• Taxable percentage                                    .60
• Applicable tax rate                                X.0825
•                                                    ------
• Subtotal                                            .0495
•                                                   +1.000
•                                                    ------
• Total                                              1.0495
• Gross Sales including sales tax$                   104,950
• Divided by percentage                              1.0495
• Gross sales excluding sales tax                  $100,000
• Multiplied by taxable percentage                     .60
• Audited taxable sales                            $ 60,000
```

- Audited taxable sales of $60,000 x .0825 - $4,800 sales tax collected

o Delivery charges
o Vending machine sales
o Sales of food for immediate consumption
o Meat processing revenue
o Commission receipts which may result from:
  - Money orders
  - Gasoline sales
  - Leased departments
  - Amusement machines
  - Vending machines
  - Movie rentals on a commission basis
o Any departments where records are separately maintained
o Video rentals
o Rentals of equipment, such as steam-cleaning machines
o Deposits on returnable items
o Coupon handling fees
o Verification of any deductions for bad debts
o Any adjustments for other items noted

**NOTE:** The receipts for the above-listed items must be deducted from Gross Sales/Total Receipts before applying the applicable taxable percentage.

If the preliminary tests indicate that the taxpayer's worksheet amounts (total purchases and nontaxable purchases) are correct, only the proper application and mathematical accuracy of reported amounts needs to be verified.

If the preliminary tests indicate that the taxpayer's worksheet amounts are not correct, then the tests should be expanded to determine if the potential audit adjustment warrants the additional time to perform the fieldwork.

**NOTE:** For audit purposes only, the Comptroller permits a 5% theft and spoilage allowance on gross taxable sales. This should be taken into consideration when determining a potential audit adjustment. The application of the 5% allowance will be discussed later.

Exams and schedules prepared by auditors utilizing the purchase ratio method of auditing grocery stores/convenience stores will be discussed later in this manual.

# Method C - 15% of Gross Sales

Under this method, a grocer may report and pay tax based on taxable sales equaling 15% of the gross sales. However, eligibility for the use of this method is restricted to:

- Retail grocers, as previously defined, and whose gross receipts do not exceed $100,000 per calendar year
- A retail grocer with one or more outlets, if **all** outlets under the same ownership qualify and if the combined gross sales of **all** the outlets do not exceed $100,000 per calendar year

**NOTE:** If more than 5% of the receipts consist of sales of tangible personal property (beer & wine, cigarettes, gasoline, etc.), the grocer is not eligible for Method C.

The grocer's eligibility will be determined on a calendar year-by-calendar year basis.

The State Sales and Use Tax Statute Sec. 151.413 and State Sales and Use Tax Rule 3.328 provide the following procedures and requirements to be followed by a taxpayer who elects to use this method:

- Gross sales per report period are multiplied by 15% to obtain the taxable sales
- A grocer who elects to report under this method must continue to do so for three years unless the gross sales for a calendar year exceeds $100,000
- When the receipts of a grocer who elects to use this method exceeds $100,000 for a calendar year, the grocer is ineligible to continue reporting under this method on the first day of the calendar month after the month in which the limitation is exceeded
  - EXAMPLE: Grocers using this method will be quarterly filers. If a grocer exceeds the $100,000 limit in October, the fourth quarter report is not eligible for the 15% method. In addition, the grocer is liable for assessment of all back tax, penalty, and interest under actual percentage for the other quarterly period of the calendar year.

If a retail grocer is eligible for filing under this method and actually files using the 15% method, any audits performed will be limited to verification through this same method. Additional taxes

will not be assessed nor any refunds/credits will be allowed because this method differs from the amount that would have been paid under any other reporting method. This holds true if comparing taxes collected to taxes reported as in the example below. However, computational, transposition, and carry-forward errors may be adjusted for, such as using an incorrect or incomplete sales figure or multiplying by a wrong percentage.

- EXAMPLE: Taxpayer's gross sales for a report period equals $20,000. Utilizing the 15% method, the taxpayer reported $3,000 as taxable sales and paid tax of $247.50 (@8 1/4%). Taxpayer's sales journal states that $200 sales tax was collected. The taxpayer is not due a refund.

This method cannot be substituted for another method previously elected, and it is prospective.


# Audit Procedure - 15% Method

An audit of a retail grocer electing to report taxable receipts using this method will be limited to determining whether or not the grocer is eligible to use this method and the accuracy of the tax reports.

The following criteria must be considered for audit purposes:

- The taxpayer must meet the definition of a "retail grocer" as covered above in the manual's introduction.
  - Sales of items other than food (not for immediate consumption), household supplies, and nondurable household goods must not exceed five percent of gross sales - such items include:
    - Beer and wine
    - Gasoline (not on commission)
    - Hardware
    - Automotive parts
    - Fishing/hunting supplies
    - Souvenirs/curios
    - Cigarettes, cigars, tobacco products
- Gross sales must not exceed $100,000 per calendar year, even though the taxpayer may not have been in business for the full year
- The method must be continuously used for three years unless the taxpayer becomes ineligible

Audit assessments will be based on the actual percentage of taxable sales for any calendar year(s) in which the taxpayer is **not** eligible. If an audit of a taxpayer who has not elected to use the 15% method discloses that the taxpayer could have used the method for any or all years in the audit period, the taxpayer will not be allowed to amend prior reports nor will the audit be performed using the method for any years in the audit period.

# Method E - Commingled Receipts

A third method is provided by the statute and in Rule 3.328 for grocers who establish an accounting system in which sales tax collected is commingled with the receipts from the sale of taxable items. Method E establishes a method of backing out the tax from the gross sales.

The formula to be used to determine taxable sales using this method is:

Gross sales including tax
<Nontaxable/exempt sales>
----------------------------
Taxable sales including tax

The taxable sales amount including tax is then divided by 1.00 plus the applicable tax rate decimal factor to derive taxable sales excluding tax.

```
Taxable sales   =   Taxable sales
-------------
1 + Tax Rate        excluding tax
```

An examination of the records of a taxpayer using this method will include:

- A verification of gross sales
- Verification that tax is included in gross sales
- Confirmation that the taxable or nontaxable sales are accurate through use of one of the other special reporting methods
- Confirmation of the mathematical accuracy of computations

[ Previous  |  Next  | Table of Contents - Manual  | Table of Contents - Ch. 4 ]

Maintained by the Audit Division

- Texas.gov
- Statewide Search from the Texas State Library
- State Link Policy
- Texas Homeland Security
- Texas Transparency
- Report Fraud

**Susan Combs**, Texas Comptroller  • Window on State Government • Contact Us

- Privacy and Security Policy

- [Accessibility Policy](#)
- [Link Policy](#)
- [Public Information Act](#)
- [Compact with Texans](#)

.

EXHIBIT B

SANADCO COMPTROLLER DECISION



June 16, 2014


Mr. Samuel T. Jackson
Law Office of Samuel T. Jackson
P.O. Box 170633
Arlington, TX 76003-0633

  Re:   Sanadco, Inc.                    Mahmoud Ahmed Isba
        Hearing No. 106,815             Hearing No. 107,006
        Taxpayer No. xxxxxxxxxxx        Taxpayer No. xxxxxxxxxxx


The Comptroller's Decision (Decision) for the above-referenced hearings, which resulted in tax liabilities, is enclosed. The Decision includes the Comptroller's ruling on all timely filed exceptions to the Proposal for Decision issued on December 12, 2013. Except for minor changes to correct typographical or clerical errors, the Decision is identical to the Proposal for Decision.

Unless a motion for rehearing is filed by July 9, 2014, the Decision will become final. Your total liabilities resulting from the hearings are shown in Attachments A to the Decision; please note, however, that additional daily interest will continue to accrue until you have paid the total liabilities and any additional accrued interest. Your total liabilities, plus any additional accrued interest is due twenty days after the Decision becomes final. If you fail to timely file a motion for rehearing or pay the total liabilities, as well as any additional accrued interest, within twenty days after the date the Decision becomes final, an additional 10% penalty will be assessed on the tax due and interest will continue to accrue.

A motion for rehearing can only be filed with the Special Counsel for Tax Hearings at P.O. Box 13528, Austin, Texas 78711-3528 or by facsimile at 512-936-6190. However, a copy must be filed with the Assistant General Counsel in the Administrative Hearings Section. If you have any questions about the procedures for filing a motion for rehearing or a waiver of the right to file a motion for rehearing, you may contact the Assistant General Counsel, Isreal Miller, by calling toll-free 800-531-5441, extension 3-4612. The regular number is 512-463-4612.


Chris Kadas
Special Counsel for Tax Hearings


cc:     Isreal Miller, Representing Tax Division        EXHIBIT B
        Sanadco, Inc.
        Mahmoud Ahmed Isba

| | | |
|---|---|---|
| RE: SANADCO, INC. | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: xxxxxxxxxxx | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Fort Worth 2I40 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: February 1, 2007 | § | Representing Tax Division |
| THROUGH June 30, 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

**SOAH DOCKET NO. 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.26**
**CPA HEARING NO. 107,006**

| | | |
|---|---|---|
| RE: MAHMOUD AHMED ISBA | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: xxxxxxxxxxx | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Advanced Processes 2S52 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: May 1, 2007 | § | Representing Tax Division |
| THROUGH June 30, 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

## COMPTROLLER'S DECISION

Sanadco, Inc. (Petitioner SI) was audited for sales and use tax compliance by the Tax Division of the Texas Comptroller of Public Accounts (Staff) and assessed tax, a 10% penalty, an additional 50% penalty, and accrued interest. Staff also assessed personal liability against Mahmoud Ahmed Isba (Petitioner Isba) under Tax Code § 111.0611 as the president of Petitioner SI. Petitioners contest their audit assessments on the same grounds, including the contentions that the audit assessment is void and unenforceable because the estimate was based on audit procedures that constituted invalid rules, and that the present audit overlaps a previous

final audit assessment. Staff rejects the Petitioners' contentions. In the Proposal for Decision, the Administrative Law Judge (AU) recommends that the corporate assessment against Petitioner SI should be affirmed, except that the markup percentage used in calculating the estimated tobacco sales should be adjusted and that the additional fraud penalty should be applied only to the report periods February 1, 2007, through April 30, 2008. The ALl also recommends that the personal liability assessment against Petitioner Isba should be limited to the report periods May 1, 2007, through April 30, 2008.

## I. PROCEDURAL HISTORY, NOTICE AND JURISDICTION

On May 10, 2013, Staff referred the cases to the State Office of Administrative Hearings (SOAH) for oral hearings. AU Peter Brooks ordered the cases joined because the cases involve related parties, and common facts and issues of law. Staff was represented by Assistant General Counsel Isreal Miller, and Petitioners were represented by Attorney Samuel T. Jackson. The case convened on September 9, 2013. The AU closed the record on November 12, 2013. There are no contested issues of notice or jurisdiction. Therefore, these matters are set out in the Findings of Fact and Conclusions of Law.

## II. REASONS FOR DECISION

### A. Evidence Presented

Staff submitted the following exhibits in SOAH Docket No. 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.26:

1. 60-Day Letter;

2. Texas Notification of Audit Results;

3. Penalty and Interest Waiver Worksheet;

4. Audit Report; and

5. Audit Plan, which includes Audit Referral Report for Additional Penalty.

Staff submitted the following exhibits in SOAH Docket No. 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.26:

1.      Texas Notification of Personal Liability for Fraudulent Tax Evasion;

2.      Audit Exam, including correspondence and e-mail communications from the Revenue Accounting Division; the Calculated Message, Adjustment, and Allocation Reports; Tax Summary, Status, Balance, Audit, and Tax Allocation Basis Inquiries; and Personal Liability Fraudulent Tax Evasion Worksheet;

3.      Sales and use tax returns for report periods April 2007, May 2008, December 2008, February 2008, and January 2009; and

4.      State Filings: Statement of Change of Registered Office/Agent, dated May 5, 2006; and Texas Franchise Tax Public Information Reports signed May 10, 2006, March 13, 2008, and February 26, 2009.

Staff attached to its Response to Petitioner's Post-Hearing Brief the following exhibits:

6.      Copy of Memorandum Opinion issued in *Sanadco, Inc. v. Comptroller of Pub. Accounts,* No. 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App.-Austin September 26, 2013, no pet. h.); and

7.      Appellee's Motion for Rehearing and Reconsideration *en banc* filed in *Sanadco, Inc.*

Petitioner SI produced during the hearing its responses to Staff's Second Set of Interrogatories, Requests for Admissions, and Requests for Production. Petitioner did not offer any other evidence during the hearing, but did attach to its Post-Hearing Brief the following exhibits:

1.      The Examination performed by the Comptroller's Business Activity Research Team (BART) for the exam period January 1, 2008, through March 31, 2009, including, the Accounts Examiner Coversheet; correspondence and e-mail communications from BART; the Texas Notification of Exam Results; the Message, Adjustment, and Allocation Reports; Petitioner's Alcohol and Tobacco Purchases for January 2008 through March 2009; and ITS Work Manager Comments;

2.      Plaintiff's Original Petition, *Sanadco, Inc.,* 2013 Tex. App. LEXIS 12013;

3

3. Defendant's First Amended Answer and Counterclaim, *Sanadco, Inc.,* 2013 Tex. App. LEXIS 12013; and

4. Counter-Defendant's Original Answer and Jurisdictional Plea, *Sanadco, Inc.,* 2013 Tex. App. LEXIS 12013.

There were no evidentiary objections, and each of the listed documents is admitted as part of the contested case record.

The only witness testimony presented during the contested case hearing was that of Dennis Eastman, the audit supervisor who supervised the Comptroller auditor who performed Petitioner Si's audit. Staff presented the testimony of Mr. Eastman.

## B. Adjustments

Staff has not agreed to adjust any of the contested audit assessments.

## C. Facts Established and Issues Presented

Petitioner SI operated a convenience store in Fort Worth, Texas, during the audit period February 1, 2007, through June 30, 2009. Petitioner SI no longer owns the convenience store. Petitioner SI was subjected to a desk audit performed by BART for the exam period of January 1, 2008, through March 31, 2009. It was assessed a tax liability of $23,593.60, consisting of tax, the 10% standard penalty, the additional 50% penalty, and accrued interest. The exam was prompted[1] by a comparison of Petitioner Si's alcohol and tobacco purchases for the exam period reported by Petitioner SI's tobacco and alcohol vendors pursuant HB 11.[2] The HB 11 tobacco and alcohol purchases for the exam period exceeded the reported taxable sales for the same period by $268,056 to $76,976. BART relied on the HB 11 data and the Comptroller's Audit Division Policy Memo 122 (AP 122) in estimating the assessment. Petitioner SI did not

---

[1] Petitioner's Exhibit 1, letter dated July 2, 2009, from BART advising Petitioner SI of assessment.

[2] Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Tex. Tax Code Ann. §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. H.B. 11, 80th Leg., RS. (2007). The vendor records are commonly referred to as HB 11 records.

file a request for redetermination contesting the assessment, consequently, the assessment became final. The sales and use tax delinquency was certified to the Attorney General.[3] The Attorney General filed a lawsuit seeking to collect the delinquency from Petitioners SI and Isba.[4] Petitioners filed various counterclaims against the Comptroller. However, the trial court dismissed Petitioners' counterclaims for lack of jurisdiction. Petitioners appealed the dismissal. The appeals court sustained Petitioners' claim that the Comptroller's directives in AP 92 and AP 122 were in fact rules and also concluded that the trial court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules and that, therefore, the trial court erred in dismissing this counterclaim. *See Sanadco, Inc.,* 2013 Tex. App. LEXIS 12013, at *21-22.

Staff subsequently conducted an audit of Petitioner SI's sales and use tax compliance for the audit period February 1, 2007, through June 30, 2009. Petitioner SI did not respond to the auditor's requests for records.[5] The auditor issued a Notification of Estimation Procedures for State Tax Audit (Notification of Estimation) dated January 27, 2011, advising Petitioner SI that the audit would be estimated using HB 11 data, and that the AP 122 procedures would be followed.[6] When the auditor initiated the audit fieldwork Petitioner SI no longer operated the convenience store. Therefore, the auditor could not perform a shelf test and instead used the industry average markup percentages of 118.44% and 124.07% respectively for tobacco and alcohol purchases set out in AP 122.[7] The auditor totaled the tobacco and alcohol purchases made by Petitioner SI using the HB 11 data for the report periods January 1, 2008, through June 30, 2009. The total alcohol and tobacco purchases were multiplied by their respective markup percentages.[8] No product-mix percentage was calculated, because no purchase invoices were available. Therefore, the standard AP 122 product-mix percentage of 54% for tobacco and alcohol products was applied to arrive at estimated taxable sales. The auditor afforded a 5% allowance for spoilage and theft, and credit was given for reported taxable sales. The adjusted taxable sales were then reduced by the amounts assessed in the BART exam for the report periods January 1, 2008, through March 31, 2009, and the resulting additional taxable sales were

---

[3]   Petitioner's Exhibit 2, Texas Certificate to Attorney General of Sales and Use Tax Delinquency.
[4]   Petitioner's Exhibit 2, Plaintiff's Original Petition.
[5]   Staff's Exhibit 4 (Petitioner SI), Audit Report.
[6]   *Id.*
[7]   *Id.,* and Staff's Exhibit 4 (Petitioner SI), Exam 20B.
[8]   *Id.*

then multiplied by the applicable tax rates to arrive at the tax due for the period January 1, 2008, through June 30, 2009.[9]

As there was no HB 11 data available for the periods preceding January 1, 2008, the auditor estimated the additional taxable sales for the report periods January 1, 2008, through June 30, 2009 by first determining the average monthly net estimated taxable sales. The post-December 31, 2007, total net estimated taxable sales of $728,443.17 were divided by the 18 report periods to arrive at a monthly average of $40,469.06.[10] The additional taxable sales for the pre-January 1, 2008, report periods were calculated by giving credit for the taxable sales reported to the Comptroller and applying the 5% allowance for spoilage and theft. The resulting additional taxable sales were then multiplied by the applicable tax rate to determine the tax due for this part of the audit period.[11]

Since no contact was made during the audit with an officer, owner, or representative of Petitioner SI, the auditor did not record in the Audit Plan or in the Audit Referral Report for Additional Penalty any information regarding the role played by an officer, director, owner, or employee of Petitioner SI in the operation of the store or in the preparation and filing of the sales and use tax returns and the remittance of sales and use tax payments. The only substantive information regarding Petitioner Isba's activities is found in Petitioner Si's responses to Staff s Second Set of Interrogatories, Requests for Admissions and Requests for Production. Petitioner SI admitted that Petitioner Isba signed checks for remitting sales and use tax payments during the audit period.[12] Petitioner Isba is identified as the person responsible for depositing the store's sales proceeds, ordering the store's inventory, and paying for the store's inventory purchases.[13] Petitioner Isba was also identified as the person who received the monthly bank statements.[14] However, according to Petitioner Si's answers to the interrogatories, Petitioner Isba's responsibility for these tasks ended when, on May 1, 2008, he entered into an agreement to sell Sanadco, Inc. to his employees, Yassien Siam and Sandra Salazar. Mr. Siam

---

[9]   Staff s Exhibit 3 (Petitioner SI), Audit Report, Exam 20.
[10]   Staff's Exhibit 4 (Petitioner SI), Audit Report, Exam 20B.
[11]   Staff's Exhibit 3 (Petitioner SI), Audit Report, Exam 20.
[12]   Petitioner Si's Admission No. 2.
[13]   Petitioner Si's Answers to Interrogatories Nos. 4, 5, and 6.
[14]   Petitioner Si's Answer to Interrogatory No. 7.

thereafter assumed responsibility for these tasks from May 1, 2008, until the end of the audit period.

Petitioner SI, in the responses to Staff's Interrogatory No. 1, stated that Petitioner Isba was the sole owner, officer, or manager through May 1, 2008. Petitioner Isba signed Petitioner Si's 2006 Texas Franchise Tax Public Information Report (PIR) as president of Sanadco.[15] The PIR is dated May 10, 2006. Although Petitioner Si's 2008 PIR identified Petitioner Isba as the corporate president, the form is signed by a Mike Isba.[16] The PIR is dated March 13, 2008. The 2009 PIR identifies Petitioner Isba as the president, but it bears the signature Isba, without a given name.[17] The PIR is dated February 26, 2009.

On April 1, 2011, Staff issued to Petitioner SI a Texas Notification of Audit Results assessing tax, the standard 10% penalty, the additional 50% fraud penalty, and accrued interest, totaling $112,381.02, with $64,336.87 attributable to tax. The overall error rate for Petitioner SI was 66.45%, which was calculated by dividing the tax assessed by the sum of the tax reported and assessed.[18] Petitioner SI timely requested redetermination.

Staff also issued a jeopardy determination on March 30, 2011, against Petitioner Isba, pursuant to Tax Code § 111.0611, assessing personal liability for the tax liability of Petitioner SI for the period May 1, 2007, through June 30, 2009.[19] The personal liability assessment consisted of tax, the standard 10% penalty, the additional 50% penalty, and accrued interest through the date of notification. The personal liability assessed against Petitioner Isba totaled $95,620.96, with $55,168.87 attributable to tax. Petitioner Isba timely requested redetermination.

Both Petitioners SI and Isba contested their assessments on the same grounds:

1.  The imposition of additional fraud penalties should be deleted because Petitioner provided substantial records, and the underpayment was not the result of fraud or a knowing or willful intent to evade taxes;

---

[15]  Staff's Exhibit 4 (Petitioner Isba).
[16]  *Id.*
[17]  *Id.*
[18]  Petitioner Si's Penalty and Interest Waiver Worksheet.
[19]  Staff's Exhibit 1 (Petitioner Isba). Texas Notification of Personal Liability.

2. The auditor was not authorized to engage in estimating procedures because Petitioner maintained the required records, and the available records were not inadequate;

3. The auditor's exclusive use of HB 11 information and estimated markups to determine the tax liability for beer and cigarettes, when Petitioner had documentation regarding the actual purchases and markups, was improper;

4. The auditor's calculations regarding markups were well beyond national averages and those contemplated under AP 122;

5. The imposition of additional penalties for the jeopardy determination was flawed, because the statute authorizing such penalties is unconstitutionally vague for its failure to establish guidelines for its imposition;

6. The audit should be revised to exclude previously audited inventory;

7. The audit is void as unenforceable because it was based on audit procedures that constitute invalid rules; and

8. The subject audit overlaps a previous final audit, consisting of a BART exam for the period January 1, 2008, through March 31, 2009.

D. Analysis and Recommendation

1. SOAH Docket No. 304-13-421l2626 (Petitioner SI)

When records are inadequate to reflect the taxpayer's business operations, the Comptroller is authorized to estimate a taxpayer's liability based on the best information available. Tex. Tax Code Ann. § 111.0042(d). An estimated audit was appropriate in this case because Petitioner SI did not have complete records. The Comptroller has held that estimated audits based on HB 11 vendor records and AP 122 procedures meet the best information available requirement when taxpayer records are incomplete or unreliable. *See* Comptroller's Decision No. 103,892 (2011). The evidence that Staff submitted establishes that the audit was based on the best information available and that established audit procedures were followed. Consequently, the audit is entitled to a presumption of correctness. Petitioners, therefore, bear the burden of proof to show by a preponderance of the evidence that the audit results are incorrect. 34 Tex. Admin. Code § 1.40(2)(B).

8

Several of the contentions are based on Petitioners' claim that there were sufficient records available for the auditor to perform an audit without relying on HB 11 data and the AP 122 estimating procedures. The audit work papers do not support Petitioners' assertion that records were provided to the auditor. The auditor issued letters (dated October 22, 2009, and July 28, 2010) requesting the records required to conduct the audit, including purchase invoices and sales records, but there was no response.[20] The failure to produce records is also referenced in the Notification of Estimation and 60-day letter issued by the auditor.[21] Moreover, Petitioner during the SOAH contested case hearing did not offer any of the records it claimed it had available.

Petitioners also asserted that the markup percentages used by the auditor exceeded the national averages and those contemplated by AP 122. The auditor used the markup percentage of 124.07% designated in AP 122 for alcohol purchases.[22] AP 122 expressly provides that the average convenience store markup percentage of 124.07% assigned to 2007 is to be used for subsequent years until new markup percentages are available. The same provision applies for tobacco products. The markup percentage of 118.02% assigned to 2007 is to be used for subsequent years until new markup percentages are available. The auditor, instead, used the markup percentage of 118.44% that is reserved for 2006.[23] No explanation was found in the audit work papers or in Staff s pleadings for deviating from this directive. Consequently, the AU finds that the auditor erred and recommends that the correct markup percentage of 118.02% should be used in marking up the tobacco purchases to calculate estimated tobacco sales. The application of the correct markup percentage will have only a minor effect on the calculation of the estimated tobacco sales. The adjusted estimated tobacco sales total $100,550.67 versus the $100,908.51 resulting from the markup of 118.44%. The AU calculated that the application of the correct markup percentage for tobacco products would reduce the assessment of tax from $64,336.90 to approximately $64,305.00.

---

[20] Staff's Exhibit 4 (Petitioner SI), Audit Report, Exhibits II and III.
[21] Staff's Exhibit 1 (Petitioner SI), Sixty-Day Letter and Staff's Exhibit 4 (Petitioner SI), Audit Report, Exhibit I.
[22] Staff s Exhibit 4 (Petitioner SI), Exam 20B.
[23] *Id.*

Next Petitioners assert that the audit assessment should be disregarded because it is based on invalid estimating procedures. Petitioners rely on the appellate court's recent decision in *Sanadco, Inc.,* 2013 Tex. App. LEXIS 12013. However, any precedential value placed on the decision is premature, as the decision has not become final. Appellee has filed motions for *en bane* reconsideration and for rehearing. The court has yet to rule on the motions. The appellate court's decision becomes final when the court's plenary power expires. *See Oscar Renda Contracting, Inc. v. H&S Supply Co.,* 195 S.W. 3d 772 (Tex. App.-Waco 2006, pet. denied). And the court will lose plenary power 30 days after the court overrules the motion for rehearing and *en bane* reconsideration. Tex. R. App. P. 19.l(b).

Petitioners also contend that the subject audit should be restricted to the report periods that fall outside of the BART exam period of January 1, 2008, through March 31, 2009. Thus, according to Petitioners, the audit assessment should be restricted to the report periods February 1, 2007, through December 31, 2007, and April 1, 2009, through June 30, 2009. Petitioners, in effect, are arguing that Staff is estopped from rearguing the liability due during the period previously examined by BART. However, a party seeking to assert the bar of collateral estoppel must establish that: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 801 (Tex. 1994), *citations omitted;* and *Also see* Comptroller's Decision No. 100,190 (2012).

The BART exam of Petitioner Si's convenience store differs in several significant ways from the subsequent sales and use tax audit of the same convenience store. As the BART exam focused exclusively on Petitioner Si's alcohol and tobacco sales and purchases, no product-mix percentage was applied. However, a product-mix percentage was needed when Petitioner SI was subsequently audited for sales of other products such as candy, soft drinks, food and general merchandise. In addition Petitioner SI was afforded a 5% allowance for spoilage and theft in the sales and use tax audit. The same facts were not essential to the judgment in each contested tax case. Thus, the Comptroller was not estopped by the results of the BART exam from subsequently performing a sales and use tax audit of the same taxpayer, especially since the

taxable sales determined in the BART exam were deleted from the calculation of additional taxable sales in the sales and use tax audit *See* Comptroller's Decision Nos. 107,579 (2013) and 104,445 and 105,726 (2012).

The Comptroller is authorized to assess an additional 50% penalty under Tex. Tax Code Ann. § 111.061(b) if she determines that a taxpayer committed fraud or had the intent to evade tax. Staff has the burden of establishing by clear and convincing evidence that the fraud penalty applies. *See* 34 Tex. Admin. Code § 1.40(1)(B). Clear and convincing evidence is proof that will produce a firm belief or conviction as to the truth of the allegations sought to be established, but which need not be unequivocal or undisputed. *See* Comptroller's Decision No. 37,946 (2000); *State v. Addington,* 588 S.W.2d 569, 570 (Tex. 1979) (per curiam), *on remand,* 441 U.S. 418.

As noted above, the overall error rate for the audit period is 66.45%. The revised overall error rate decreased, almost unperceptively, to 66.44% once the error rate is recalculated using the assessed tax amount of $64,305.[24] In prior Comptroller decisions gross underreporting of taxable sales, defined as an error of 25% or greater, has been found sufficiently indicative of intent to evade the tax to warrant assessment of the fraud penalty, particularly when there were other factors or no plausible explanation. *See, e.g.,* Comptroller's Decision No. 43,248 (2004). Also see Tex. Tax Code Ann. § 111.205(b).

Such gross underreporting, however, is not in and of itself sufficient to justify imposition of the fraud penalty on corporate taxpayers. In the case of corporate taxpayers, the Comptroller recognizes that a corporation is a separate legal entity that is controlled by its officers and directors and that the requisite intent of a corporation is determined from the actions of the officers or directors. When an officer is proven to have been directly involved in the fraudulent activities, the additional penalty against a corporation has been upheld, because a corporate officer's fraudulent actions can be attributed to the corporation. *See* Comptroller's Decision Nos. 105,148 & 104,471 (2011), 44,891 (2005) and 44,528 (2005). The question is to what degree Petitioner Isba, the company's president, was aware or should have been aware of the underreporting of tax. *See* e. g., Comptroller's Decision No. 103,204 and 104,238 (2012).

---

[24] The recalculated formula is assessed tax ($64,305) ..;. sum of the assessed tax and reported tax ($96,790.61).

The only substantive evidence in the record directly establishing the extent of Petitioner lsba's involvement in the operation and management of the convenience store, in the preparation and filing of the sales and use tax returns, and remittance of the tax payments during the audit period is found in the answers propounded to Staff s discovery. There also are the five checks remitting payment signed by Petitioner Isba that were proffered by Staff.[25] The AU, based solely on the statements made in response to Staff s discovery, finds that Petitioner Isba purchased and paid for the taxable inventory, made the daily deposits, and received the bank statements, signed the sales tax returns, and paid the sales and use taxes. The AU, therefore, concludes that Petitioner Isba was involved in, aware of, or should have been aware of the underreporting of sales tax. However, the same information that supports this conclusion expressly limits Petitioner Isba's involvement to the period preceding May 1, 2008, when he entered into an agreement to sell the business and one of the buyers assumed responsibility for performing these tasks. Staff has not addressed or refuted any part of Petitioner SI's responses to its discovery requests, including the statements limiting Petitioner Isba's involvement to the report periods preceding May 1, 2008.

The AU concludes that the record is sufficient to establish, by clear and convincing evidence, fraudulent actions on the part of Petitioner lsba that are attributable to the company, but only for the period February 1, 2007, through April 30, 2008. The AU therefore recommends that the additional 50% fraud penalty should be dismissed for the period May 1, 2008, through the end of the audit period.

Petitioners also argue that the imposition of additional penalties for jeopardy determination are unconstitutional vague. The ALJ lacks the jurisdiction to consider Petitioner's contention regarding the constitutionality of the jeopardy determination statute. The courts have ruled that the Comptroller lacks jurisdiction to rule on the constitutionality of a statute that she administers. *See Tex. State Bd. of Pharmacy v. Walgreen Tex. Co.,* 520 S.W.2d 845 (Tex. Civ. App.--Austin 1975, writ ref d n.r.e.). *Also see* Comptroller's Decision No. 105,821 (2013).

---

[25] Staff s Exhibit 4 (Petitioner lsba).

**2.** **SOAH Docket No. 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.26 (Petitioner Isba)**

Tax Code § 111.0611 imposes personal liability on an officer, manager, or director of a corporation who "as an officer, manager, director, or partner, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes." The personal liability is for taxes, penalties, including an additional 50% penalty, and interest that are due from the corporation. Actions that indicate a fraudulent scheme or fraudulent plan to evade the payment of taxes include filing, or causing to be filed, a fraudulent tax return or report with the Comptroller on behalf of the business entity, or filing, or causing to be filed, a tax return or report with the Comptroller on behalf of the business entity that contains an intentionally false statement that results in the amount of the tax due exceeding the amount of tax reported by 25% or more. Tex. Tax Code Ann. § 111.0611(b)(l), (3).

The same facts that the ALJ relied on in recommending imposition of the additional 50% penalty support upholding the assessment of personal liability. First, there was an overall gross underreporting of the tax, which resulted, even after taking into account the adjustment recommended by the ALJ, in an error rate of 66.45%. Moreover, the record establishes that Petitioner lsba was involved in the operation and management of the store and in the signing of the sales and use tax returns and remittance of the tax payments. He ordered and paid for the taxable inventory, deposited the store's receipts, received the bank statements, and signed both the sales tax returns and the checks remitting payments to the Comptroller. However, the evidence establishes this involvement by clear and convincing evidence only for the period February 1, 2007 through, April 30, 2008. This record is sufficient to affirm the personal liability assessment for the period May 1, 2007, through April 30, 2008, and the ALJ recommends that the personal liability assessment should be dismissed for the period May 1, 2008, through June 30, 2009.

**3.** **Recommendations**

The ALJ recommends that the audit assessment against Petitioner SI should be affirmed, but subject to the recommended adjustments correcting the calculation of estimated tobacco sales

13

and limiting the additional penalty to the period February 1, 2007, through April 30, 2008. In the case of the personal liability assessment against Petitioner Isba, the AU recommends that the assessment should be affirmed subject to the recommended adjustment in the underlying corporate assessment and recommended dismissal of the personal liability assessment for the period May 1, 2008, through June 30, 2009.

## III. FINDINGS OF FACT

1. Sanadco, Inc. (Petitioner SI) operated a convenience store in Fort Worth, Texas, during the audit period February 1, 2007, through June 30, 2009.

2. Petitioner SI was subjected to a desk audit performed by the Business Activity Research Team (BART) of the Texas Comptroller of Public Accounts (Comptroller) for the exam period of January 1, 2008, through March 31, 2009, and assessed a tax liability of $23,593.60, consisting of tax, the 10% standard penalty, the additional 50% penalty, and accrued interest.

3. The BART exam was prompted by a comparison of Petitioner Si's alcohol and tobacco purchases for the exam period reported by Petitioner SI's tobacco and alcohol vendors under HB 11.

4. Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Tex. Tax Code Ann. §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. H.B. 11, 80th Leg., R.S. (2007). The vendor records are commonly referred to as HB 11 records.

5. The HB 11 tobacco and alcohol purchases for the exam period exceeded the reported taxable sales for the same period by $268,056 to $76,976. BART relied on the HB 11 data and the Comptroller's Audit Division Policy Memo (AP) 122 in estimating the assessment.

6. Petitioner SI did not file a request for redetermination contesting the assessment, consequently, the assessment became final and the sales and use tax delinquency was certified to the Attorney General. The Attorney General filed a lawsuit seeking to collect the delinquency from Petitioner SI and Mahmoud Ahmed Isba (Petitioner Isba). *See Sanadco, Inc. v. Comptroller of Pub. Accounts,* No. 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App. – Austin September 26, 2013, no pet. h.).

7. Petitioners filed various counterclaims against the State. However, the trial court dismissed Petitioners' counterclaims for lack of jurisdiction, which decision Petitioners appealed. The appeals court sustained Petitioners' claim that the Comptroller's directives

in AP 92 and AP 122 were in fact rules and also concluded that the trial court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules and that, therefore, the trial court erred in dismissing this counterclaim. *See Sanadco, Inc.,* 2013 Tex. App. LEXIS 12013, at *21-22.

8. Petitioner SI was audited by the Comptroller' Tax Division (Staff) for sales and use tax compliance for the audit period, and the auditor estimated the audit due to incomplete records.

9. Petitioner SI did not respond to the auditor's requests for records. The auditor issued a Notification of Estimation Procedures for State Tax Audit dated January 27, 2011, advising Petitioner SI that the audit would be estimated using HB 11 data, and that the AP 122 procedures would be followed.

10. When the auditor initiated the audit fieldwork, Petitioner SI no longer operated the convenience store. Therefore, the auditor could not perform a shelf test and instead used the industry average markup percentages of 118.44% and 124.07% respectively for tobacco and alcohol purchases set out in AP 122.

11. The auditor totaled the tobacco and alcohol purchases made by Petitioner SI using the HB 11 data for the report periods January 1, 2008, through June 30, 2009. The total alcohol and tobacco purchases were marked up by their respective markup percentages.

12. The standard AP 122 product-mix percentage of 54% for tobacco and alcohol products was applied to arrive at estimated taxable sales, because no purchase records were available.

13. The auditor afforded a 5% allowance for spoilage and theft to determine net estimated taxable sales. Credit was given for reported taxable sales.

14. The resulting adjusted taxable sales were then reduced by the amounts assessed in the BART exam for the report periods January 1, 2008, through March 31, 2009 to arrive at the additional taxable sales.

15. The additional taxable sales were multiplied by the applicable tax rates to determine the tax due for the report periods from January 1, 2008, through June 30 2009.

16. As there was no HB 11 data available for the periods preceding January 1, 2008, the auditor estimated the additional taxable sales for this period by first determining the average monthly net estimated taxable sales for the report periods January 1, 2008, through June 30, 2009. The post-December 31, 2007, total net estimated taxable sales of $728,443.17 were divided by the 18 report periods to arrive at a monthly average of $40,469.06.

17. The additional taxable sales for the pre-January 1, 2008, report periods were calculated by reducing the average monthly net estimated taxable sales by the taxable sales reported to the Comptroller.

18. A 5% allowance for spoilage and theft was applied to determine the additional taxable sales.

19. The resulting additional taxable sales were then multiplied by the applicable tax rate to determine the tax due for pre-January 1, 2008, part of the audit period.

20. Petitioner Isba was the president of Petitioner SL

21. Petitioner Isba signed checks for remitting sales and use tax payments during the audit period.

22. Petitioner Isba was responsible for depositing the store's sales proceeds from February 27, 2007, through April 30, 2008.

23. Petitioner Isba was responsible for depositing the store's sales proceeds from February 27, 2007, through April 30, 2008.

24. Petitioner Isba was responsible for ordering the store's inventory from February 27, 2007, through April 30, 2008.

25. Petitioner Isba was responsible for payment of the store's inventory purchases from February 27, 2007, through April 30, 2008.

26. Petitioner Isba was the person who received the monthly bank statements from February 27, 2007, through April 30, 2008.

27. Petitioner lsba's responsibility for these tasks ended on May 1, 2008, when he entered into an agreement to sell the company to his employees Yassien Siam and Sandra Salazar.

28. Mr. Siam assumed responsibility for these tasks from May 1, 2008, until the end of the audit period.

29. On April 1, 2011, the Staff issued to Petitioner SI a Texas Notification of Audit Results assessing tax, the standard 10% penalty, the additional 50% fraud penalty, and accrued interest, totaling $112,381.02, with $64,336.87 attributable to tax.

30. Petitioner SI timely requested redetermination.

31. Staff also issued a jeopardy determination on March 30, 2011, against Petitioner Isba, pursuant to Tax Code § 111.0611, assessing personal liability for the tax liability of Petitioner SI for the period May 1, 2007, through June 30, 2009.

32. The personal liability assessment consisted of tax, the standard 10% penalty, the additional 50% penalty, and accrued interest through the date of notification. The personal liability assessed against Petitioner Isba totaled $95,620.96, with $55,168.87 attributable to tax.

33. Staff referred the cases to the State Office of Administrative Hearings for oral hearings. Staff issued Notices of Hearing that contained a statement of the date, time, and place of the hearings, a statement of the nature of the hearings; a statement of the legal authority and jurisdiction under which the hearings were to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the matters asserted.

34. The Administrative Law Judge (AU) ordered the cases joined.

35. The AU convened the hearing on August 12, 2013

36. The AU ordered the record closed on November 12, 2013.

37. The correct markup percentage that the auditor should have applied to the tobacco purchases was 118.02%, which AP 122 directs should be used for years following 2007.

38. Applying the corrected markup percentage to the tobacco purchases produced estimated tobacco sales of $100,550.67 (versus the $100,908.51 resulting from a markup of 118.44%).

39. The application of the corrected markup percentage to tobacco purchases reduced the assessment of tax from $64,336.90 to approximately $64,305.

40. The original overall error rate for Petitioner Si's audit was 66.45%.

41. The AU has recalculated the error rate using the reduced principal amount of tax due. The recalculated audit error rate is 66.44%, which was calculated by dividing the tax assessed ($64,305) by the sum of the assessed tax and reported tax ($96,790.61).

## IV. CONCLUSIONS OF LAW

1. The Comptroller has jurisdiction over this matter pursuant to Texas Tax Code ch. 111.

2. The State Office of Administrative Hearings has jurisdiction over matters related to the hearing in this matter, including the authority to issue a proposal for decision with findings of fact and conclusions of law pursuant to Texas Government Code ch. 2003.

3. Staff provided proper and timely notice of the hearing pursuant to Texas Government Code ch. 2001.

4. The Comptroller is authorized to use the best information available to estimate a taxpayer's liability when records are incomplete or unreliable. Tex. Tax Code Ann. § 111.0042(d) and 34 Tex. Admin Code § 3.281(c).

5. Petitioner SI must show by a preponderance of the evidence that the audit was in error. 34 Tex. Admin. Code § 1.40(2)(B).

6. The audit of Petitioner SI was performed based on the best information available.

7. The auditor erred in not using the correct percentage of 118.02% in marking up the tobacco purchases in order to estimate tobacco sales. *See* AP 122.

8. The calculation of additional taxable sales should be adjusted by using the correct markup percentage of 118.02% in marking up tobacco purchases.

9. The Comptroller is authorized to impose an additional 50% penalty if the failure to pay tax or file a report when due was a result of fraud or an intent to evade the tax. Tex. Tax Code Ann. § 111.061(b).

10. Staff bears the burden of proof to show by clear and convincing evidence that Petitioner SI acted with intent to evade tax. 34 Tex. Admin. Code § 1.40(1)(B).

11. Petitioner SI had the intent to evade tax required by Tex. Tax Code Ann. § 111.061(b)(1), but only for the report periods February 1, 2007, through April 30, 2008.

12. The record establishes by clear and convincing evidence that the gross underreporting of tax was due to the intent to evade tax and that the imposition of the additional 50% penalty was warranted, but only for the report periods February 1, 2007, through April 30, 2008. Tex. Tax Code Ann. § 111.061(b)(1).

13. The additional 50% penalty should be deleted for the report periods May 1, 2008, through June 30, 2009.

14. The assessment against Petitioner SI should be affirmed except for the adjustments recommended in Conclusions of Law Nos. 8 and 13.

15. Texas Tax Code § 111.0611 imposes personal liability on an officer, manager, or director of a corporation who "as an officer, manager, director, or partner, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes." The personal liability is for taxes, penalties, including an additional 50% penalty and interest that are due from the corporation. Tex. Tax Code Ann. §111.0611(a).

16. Actions that indicate a fraudulent scheme or fraudulent plan to evade the payment of taxes include filing, or causing to be filed, a fraudulent tax return or report with the Comptroller on behalf of the business entity, or filing, or causing to be filed, a tax return

or report with the Comptroller on behalf of the business entity that contains an intentionally false statement that results in the amount of the tax due exceeding the amount of tax reported by 25% or more. Tex. Tax Code Ann. § 111.06ll(b)(l), (3).

17. Staff established that Petitioner lsba was personally liable under Texas Tax Code § 111.0611 for the assessment made against Petitioner SI, but only for the report periods May 1, 2007, through April 30, 2008.

18. The personal liability assessment against Petitioner Isba for report periods May 1, 2008, through June 30, 2009, should be deleted.

19. The assessment against Petitioner Isba should be upheld, subject to the deletion recommended in Conclusion of Law No. 18 and to the adjustment to the underling corporate tax assessment against Petitioner SI recommended in Conclusion of Law No. 8.

**Hearing Nos. 106,815 and 107,006**

## ORDER OF THE COMPTROLLER

On December 12, 2013, the State Office of Administrative Hearings' Administrative Law Judge (AU), Peter Brooks, issued a Proposal for Decision in the above-referenced matters to which Tax Division filed Exceptions on December 17, 2013. The Comptroller has considered the Exceptions and the AU's recommendation letter. The Comptroller has determined that the AU's Proposal for Decision, except for minor changes to correct typographical or clerical errors, should be adopted without change and this Decision represents the ruling thereon.

The above Decision resulting in Petitioners' liabilities as set out in Attachments A, which are incorporated by reference, is approved and adopted in all respects. The Decision becomes final twenty days after the date Petitioners receive notice of this Decision, and the total sum of the tax, penalty, and interest amounts is due and payable within twenty days thereafter. If such sum is not paid within such time, an additional penalty of ten percent of the taxes due will accrue, and interest will continue to accrue. If either party desires a rehearing, that party must file a motion for rehearing, which must state the grounds for rehearing, no later than twenty days after the date Petitioners receive notice of this Decision. Notice of this Decision is presumed to occur on the third day after the date of this Decision.

Signed on this **id'da y** of June 2014.

SUSAN COMBS
Texas Comptroller of Public Accounts

by: _____
Martin A. Hubert
Deputy Comptroller

20

00-739

(Rev 9 -96/9)

TEXAS NOTIFICATION OF HEARINGS RESULTS - Attachment A     STATEMENT DATE
                                                           June 17, 2014

Taxpayer Number              Audit Period                 Hearing Number
 xxxxxxxxxxx                 2/1/07 THRU 6/30/09           106815

Type of Tax
Limited Sales, Excise, and Use

FIGURES WERE   AMENDED

|                               | STATE      | LOCAL      | TOTAL       |
|-------------------------------|------------|------------|-------------|
| TAX                           | $48,676.69 | $15,576.62 | $64,253.31  |
| PENALTY                       | 18,768.89  | 6,006.07   | 24,774.96   |
| INTEREST THRU STATEMENT DATE  | 13.787.27  | 4 411.94   | 18,199.21   |
| TOTAL DUE AS OF STATEMENT DATE| $81,232.85 | $25,994.63 | $107,227.48 |

Additional 50% Penalty is waived per the Proposal for Decision.   Interest will continue to accrue at $ 7.48 per day after 6/17/14 through the date of payment.

A 10% penalty will be assessed on tax still due 43 days after the Order of the Comptroller (TEX. TAX  CODE ANN. SEC. 111.0081 (c).

For payment information call 1-800-531-5441, ext. 3-3900 toll free nationwide, or call 512/463-3900.

Make your check payable to STATE COMPTROLLER and mail to Comptroller of Public Accounts, 111 E. 1ylh Street, Austin, Texas 78774-0100.

**\* Per annum interest rates are subject to change on January 1[51] of each year.  For more interest rate information, refer to Publication 98-304, call 1-877-447-2834, or refer to http://www.window.state.tx.us/taxinfo/int_rate.html**

(Cut And Return Bottom Portion With Payment)

00-240

TEXAS NOTIFICATION OF HEARING RESULTS                     Hearing Number
- Attachment A                                            106815

                         STATEMENT DATE
                          June 17, 2014

                         Type of Tax
                          Limited Sales, Excise, and Use

Taxpayer Name & Mailing Address
SANADCO, INC.
xxxxxxxxxxxxxxxxxx
xxxxxxxxxx  TX  xxxxxxxxxx                                Amount of Your Payment

                                                         _____

                                                         *PMD_____

| *Tcode | *Taxpayer Number | *Period | *Audit | *Type | *State Amount | *Type | *Local Amount |
|--------|------------------|---------|--------|-------|---------------|-------|---------------|
| 26040  | xxxxxxxxxxx      | 0906    | 001    | 02    | 81232.85      | 04    | 25994.63      |

Sanadco, Inc.
Arlington, TX
Taxpayer Number xxxxxxxxxxx

**AMENDED AUDIT REPORT**

The audit was amended in accordance with Hearing No. 106,815 and Proposal for Decision dated December 12, 2013.

Tatiana Romanova
Auditor

Sanadco, Inc.
Arlington, TX
Taxpayer Number xxxxxxxxxx

**AMENDED INDEX TO WORKING PAPERS**

| DESCRIPTION | PAGES |
|---|---|
| Adjustment Report | 1 |
| Tax Adjustment Summary | 1 |
| **EXAM 20**     ADDITIONAL TAXABLE SALES (0702 THRU 0804)- AMENDED | |
|     Exam Summary - Detail | 1 |
|     Detail Report | 1 |
|     Exam 20A -Additional Taxable Sales Calculation - Amended | 1 |
|     Exam 20B -Estimated Taxable Sales Calculation - Amended | 1 |
| **EXAM 21**     ADDITIONAL TAXABLE SALES (0805 THRU 0906)- AMENDED | |
|     Exam Summary - Detail | 1 |
|     Detail Report | 1 |
|     Exam 21A -Additional Taxable Sales Calculation - Amended | 1 |

TAX TYPE:  SALES AND USE TAX

TAXPAYER NAME:  SANADCO, INC.                                        TAXPAYER NUMBER: 3-20141-4515-8
ADDRESS:  xxxxxxxxxxxxxxxxx                                CALCULATION DATE: 05-15-2014
          xxxxxxxxxx, TX                                            PERIODS: 0702 THRU 0906
          xxxxxxxxxx

| FILING PERIOD | TAX | PENALTY | INT/CR.INT | CR. ADJUST: APPLIED/ TRANSFERRED | ADJUSTED TAX | ADJUSTED PENALTY | ADJUSTED INT/CR.INT | BALANCE DUE |
|---|---|---|---|---|---|---|---|---|
| 0702 | 3'091.04 | 309.10 | 1,135.92 | .00 | 3,091.04 | 309.10 | 1,135.92 | 4,536.06 |
| 0703 | 3,048.64 | 304.86 | 1,097.93 | .00 | 3,048.64 | 304.86 | 1,097.93 | 4,451.43 |
| 0704 | 3,019.67 | 301.97 | 1,063.77 | .00 | 3,019.67 | 301.97 | 1,063.77 | 4,385.41 |
| 0705 | 3,001.45 | 300.14 | 1,033.78 | .00 | 3,001.45 | 300.14 | 1,033.78 | 4,335.37 |
| 0706 | 3,014.72 | 301.47 | 1,016.19 | .00 | 3,014.72 | 301.47 | 1,016.19 | 4,332.38 |
| 0707 | 3,009.04 | 300.90 | 990.64 | .00 | 3,009.04 | 300.90 | 990.64 | 4,300.58 |
| 0708 | 3,025.21 | 302.52 | 972.20 | .00 | 3,025.21 | 302.52 | 972.20 | 4,299.93 |
| 0709 | 3,036.76 | 303.68 | 951.28 | .00 | 3,036.76 | 303.68 | 951.28 | 4,291.72 |
| 0710 | 3,053.75 | 305.37 | 933.72 | .00 | 3,053.75 | 305.37 | 933.72 | 4,292.84 |
| 0711 | 3,073.06 | 307.31 | 920.23 | .00 | 3,073.06 | 307.31 | 920.23 | 4,300.60 |
| 0712 | 3,103.42 | 310.34 | 905.54 | .00 | 3,103.42 | 310.34 | 905.54 | 4,319.30 |
| 0801 | 489.51 | 48.95 | 139.74 | .00 | 489.51 | 48.95 | 139.74 | 678.20 |
| 0802 | 671.04 | 67.10 | 187.33 | .00 | 671.04 | 67.10 | 187.33 | 925.47 |
| 0803 | 1,001.98 | 100.20 | 272.49 | .00 | 1,001.98 | 100.20 | 272.49 | 1,374.67 |
| 0804 | 1,060.02 | 106.00 | 280.86 | .00 | 1,060.02 | 106.00 | 280.86 | 1,446.88 |
| 0805 | 1,687.79 | 168.78 | 436.17 | .00 | 1,687.79 | 168.78 | 436.17 | 2,292.74 |
| 0806 | 1,571.03 | 157.10 | 395.01 | .00 | 1,571.03 | 157.10 | 395.01 | 2,123.14 |
| 0807 | 1,904.37 | 190.44 | 465.52 | .00 | 1,904.37 | 190.44 | 465.52 | 2,560.33 |
| 0808 | 1,684.29 | 168.43 | 399.58 | .00 | 1,684.29 | 168.43 | 399.58 | 2,252.30 |
| 0809 | 1,658.84 | 165.88 | 383.07 | .00 | 1,658.84 | 165.88 | 383.07 | 2,207.79 |
| 0810 | 1,359.23 | 135.92 | 307.04 | .00 | 1,359.23 | 135.92 | 307.04 | 1,802.19 |
| 0811 | 1,289.17 | 128.92 | 286.56 | .00 | 1,289.17 | 128.92 | 286.56 | 1,704.65 |
| 0812 | 1,794.21 | 179.42 | 392.34 | .00 | 1,794.21 | 179.42 | 392.34 | 2,365.97 |
| 0901 | 1,108.03 | 110.80 | 238.55 | .00 | 1,108.03 | 110.80 | 238.55 | 1,457.38 |
| 0902 | 1,419.06 | 141.91 | 300.89 | .00 | 1,419.06 | 141.91 | 300.89 | 1,861.86 |
| 0903 | 1,776.94 | 177.69 | 370.36 | .00 | 1,776.94 | 177.69 | 370.36 | 2,324.99 |
| 0904 | 3,803.69 | 380.37 | 779.06 | .00 | 3,803.69 | 380.37 | 779.06 | 4,963.12 |
| 0905 | 3,426.40 | 342.64 | 689.02 | .00 | 3,426.40 | 342.64 | 689.02 | 4,458.06 |
| 0906 | 3,070.95 | 307.09 | 607.53 | .00 | 3,070.95 | 301.09 | 607.53 | 3,985.57 |
| TOTAL | 64,253.31 | 6,425.30 | 17,952.32 | .00 | 64,253.31 | 6,425.30 | 17,952.32 | 88,630.93 |

ADDITIONAL PENALTY WAS ASSESSED ON 05-15-2014                              18,349.66                      18,349.66

        YOUR NEW BALANCE:                       $      64,253.31      24,774.96      17,952.32     106,980.59


ADDITIONAL INTEREST OF        7.481655    PER DAY ACCRUES ON A TAX BALANCE OF $     64,253.31   FROM  05-16-2014 THRU PAYMENT DATE


AMOUNT ACCRUING INTEREST AT VARIABLE RATE IS      64,253.31.*

* PER ANNUM INTEREST RATES ARE SUBJECT TO CHANGE ON JANUARY 1ST OF EACH YEAR.  FOR INTEREST INFORMATION, REFER TO
  PUBLICATION 98-304, OR CALL 1-877-447-2834, OR GO TO HTTP://WWW.WINDOW.STATE.TX.US/TAXINFO/INT_RATE.HTML

SANADCO, NC.
FORT WORTH, TX
TAX ADJUSTMENT SUMMARY

| Exam | Exam Name | Exam Category | State | City | Transit | County | SPD | Combined | Total |
|------|-----------|---------------|-------|------|---------|--------|-----|----------|-------|
| 20 | ADDITIONAL TAXABLE SALES (0702 THAU 0804) - AMENDED | Sales | 27,802.45 | 4,448.38 | 2,224.24 | 0.00 | 2,224.24 | 0.00 | 36,699.31 |
| 21 | ADDITIONAL TAXABLE SALES (0805 THAU 0906) - AMENDED | Sales | 20,874.24 | 3,339.88 | 1,669.94 | 0.00 | 1,669.94 | 0.00 | 27,554.00 |
| | Total Tax Adjustment: | | $ 48,676.69 | $ 7,788.26 | $ 3,894.18 | $ 0.00 | $ 3,894.18 | $ 0.00 | $ 64,253.31 |

Tax on Sales:    64,253.31

Total Tax Adjustment:    $ 64,253.31

SANADCO, INC.
FORT WORTH, TX
EXAM SUMMARY - DETAIL

Tatiana Romanova - 04/08/2014
TP#: xxxxxxxxxx
Page 1 of 1

EXAM:   20        ADDITIONAL TAXABLE SALES (0702 THAU 0804) - AMENDED

| | Taxable Amount (1 | Tax Rate | Tax Adjustment (2) |
|---|---|---|---|
| STATE 0.0625000 | 444,839.14 | 0.06250 | 27,802.45 $ 27,802.45 |
| TOTAL AUTHORITY: STATE | | | |
| CITY 0.0100000 | 444,839.14 | 0.01000 | 4,448.38 $ 4,448.38 |
| TOTAL AUTHORITY: CITY | | | |
| TRANSIT 0.0050000 | 444,839.14 | 0.00500 | 2,224.24 $ 2,224.24 |
| TOTAL AUTHORITY: TRANSIT | | | |
| SPD 0.0050000 | 444,839.14 | 0.00500 | 2,224.24 $ 2,224.24 |
| TOTAL AUTHORITY: SPD | | | |

TOTAL TAX ON EXAM 20      $  36,699.31

Total Tax Adjustment for each Authority forwarded to
Tax Adjustment Summary.

(1) Taxable Amounts for each tax rate are totaled and forwarded from the Detail Report.

(2) Tax Adjustment equals Taxable Amount times Tax Rate. Tax Adjustment amounts are reflected on a summary level and may vary due to rounding. Actual Tax Adjustments are calculated and applied on a report period basis.

**SANADCO, INC.**
**FORT WORTH, TX**
**DETAIL REPORT - EXAM 20**     **ADDITIONAL TAXABLE SALES (0702 THRU 0804) - AMENDED**

**Tatiana Romanova - 04/08/2014**
**TP#: xxxxxxxxxx**
**Page 1 of 1**

| ID | Name | Location | Reference | Description | Comment | Taxable Amt | Tax | Date | S | City | County | Transit | SPD | Comb | FN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4059T- 1 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 37.467.09 | 3,091.03 | 02101/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 2 | UNKNOWN | FORT WORTH | E*M 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 36,953.09 | 3,048.63 | 03101/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOA | NONE | |
| 4059T- 3 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 36,602.09 | 3,019.67 | 04/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 4 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 36,381.09 | 3,001.44 | 05/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 5 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 1221HB11 ESTIMATE | 36,542.09 | 3,014.72 | 06/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 6 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 36,473.09 | 3,009.03 | 07/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 7 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 36,669.09 | 3,025.20 | 08/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 8 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 1221HB11 ESTIMATE | 36,809.09 | 3,036.75 | 09/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 9 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 37,015.09 | 3,053.74 | 10/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 10 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 37,249.09 | 3,073.05 | 11/01/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 11 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 1221HB11 ESTIMATE | 37,617.09 | 3,103.41 | 12101/2007 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 12 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 1221HB11 ESTIMATE | 5,933.49 | 489.51 | 01/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 13 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 8,133.68 | 671.03 | 02101/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 14 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 12,145.15 | 1,001.97 | 03101/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 15 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 12,848.83 | 1,060.03 | 04/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |

Estimate Exam Summary Total     $444,839.14     $36,699.21     Taxable Amount Forwarded to Exam Summary - Detail

**Exam Comment:**
**THIS EXAM CONTAINS ADDITIONAL TAXABLE SALES FOR THE PERIODS FOR WHICH ASSESSMENT OF ADDITIONAL PENALTY WAS UPHELD IN ALJ'S DECISION. IT IS
SEPARATED FROM THE PERIODS FOR WHICH THE ADDITIONAL PENALTY WAS WAIVED.**

Sanadco, Inc.
Fort Worth, TX
Additional Taxable Sales Calculation - AMENDED

Exam 20A
TP # xxxxxxxxxxx
Page 1of 1

TNR

| | A | B | C | D | E | F | |
|---|---|---|---|---|---|---|---|
| Period | Average Estimated Taxable Sales | Estimated Taxable Sales after Allowance | Total Estimated Taxable Sales | Reported Taxable Sales | Estimated Taxable After Reported | BART Assessment | Additional Taxable Sales |
| From | Exam 20B | Exam 20B | A + B | History | C - D | BART | E - F |
| 0702 | 40,434.09 | | 40,434.09 | 2,967.00 | 37,467.09 | | 37,467.09 |
| 0703 | 40,434.09 | | 40,434.09 | 3,481.00 | 36,953.09 | | 36,953.09 |
| 0704 | 40,434.09 | | 40,434.09 | 3,832.00 | 36,602.09 | | 36,602.09 |
| 0705 | 40,434.09 | | 40,434.09 | 4,053.00 | 36,381.09 | | 36,381.09 |
| 0706 | 40,434.09 | | 40,434.09 | 3,892.00 | 36,542.09 | | 36,542.09 |
| 0707 | 40,434.09 | | 40,434.09 | 3,961.00 | 36,473.09 | | 36,473.09 |
| 0708 | 40,434.09 | | 40,434.09 | 3,765.00 | 36,669.09 | | 36,669.09 |
| 0709 | 40,434.09 | | 40,434.09 | 3,625.00 | 36,809.09 | | 36,809.09 |
| 0710 | 40,434.09 | | 40,434.09 | 3,419.00 | 37,015.09 | | 37,015.09 |
| 0711 | 40,434.09 | | 40,434.09 | 3,185.00 | 37,249.09 | | 37,249.09 |
| 0712 | 40,434.09 | | 40,434.09 | 2,817.00 | 37,617.09 | | 37,617.09 |
| 0801 | | 13,846.76 | 13,846.76 | 2,571.00 | 11,275.76 | 5,342.27 | 5,933.49 |
| 0802 | | 18,958.98 | 18,958.98 | 2,431.00 | 16,527.98 | 8,394.30 | 8,133.68 |
| 0803 | | 28,258.26 | 28,258.26 | 2,561.00 | 25,697.26 | 13,552.11 | 12,145.15 |
| 0804 | | 29,942.78 | 29,942.78 | 3,589.00 | 26,353.78 | 13,504.95 | 12,848.83 |
| Totals | 444,774.99 | 91,006.78 | 535,781.77 | 50,149.00 | 485,632.77 | 40,793.63 | 444,839.14 |

Note: periods 0702 though 0804 are subject to the additional penalty per AU's decision and thus are separated from the periods
on which additional penalty will be waived.

Sanadco, Inc.
Fort Worth, TX
Estimated Taxable Sales Calculation - AMENDED

| | A | B | C | D | E | F | G Estimated | H | I | J Estimated |
|---|---|---|---|---|---|---|---|---|---|---|
| Period | Alcohol Purchases | Alcohol Markup | Estimated Alcohol Sales | Tobacco Purchases | Tobacco Markup | Estimated Tobacco Sales | Alcohol and Tobacco Sales | Product Mix | Estimated Taxable Sales | Taxable Sales after Allowance |
| | | AP 122 | | A8ii | AP 122 | | | AP 122 | | |
| From | HB 11 Reports | Markup | A x B | Reports | Markup | D x E | C+F | Product Mix | G / H | I x .95 |
| 0801 | 5,092.00 | 124.07% | 6,317.64 | 1,316.00 | 118.02% | 1,553.14 | 7,870.79 | 54.00% | 14,575.53 | 13,846.76 |
| 0802 | 6,247.00 | 124.07% | 7,750.65 | 2,564.00 | 118.02% | 3,026.03 | 10,776.69 | 54.00% | 19,956.83 | 18,958.98 |
| 0803 | 7,648.00 | 124.07% | 9,488.87 | 5,570.00 | 118.02% | 6,573.71 | 16,062.59 | 54.00% | 29,745.53 | 28,258.26 |
| 0804 | 9,644.00 | 124.07% | 11,965.31 | 4,283.00 | 118.02% | 5,054.80 | 17,020.11 | 54.00% | 31,518.72 | 29,942.78 |
| 0805 | 17,590.00 | 124.07% | 21,823.91 | 4,503.00 | 118.02% | 5,314.44 | 27,138.35 | 54.00% | 50,256.21 | 47,743.40 |
| 0806 | 18,495.00 | 124.07% | 22,946.75 | 1,992.00 | 118.02% | 2,350.96 | 25,297.70 | 54.00% | 46,847.60 | 44,505.22 |
| 0807 | 20,908.00 | 124.07% | 25,940.56 | 3,981.00 | 118.02% | 4,698.38 | 30,638.93 | 54.00% | 56,738.76 | 53,901.82 |
| 0808 | 16,052.00 | 124.07% | 19,915.72 | 6,050.00 | 118.02% | 7,140.21 | 27,055.93 | 54.00% | 50,103.57 | 47,598.39 |
| 0809 | 16,247.00 | 124.07% | 20,157.65 | 5,505.00 | 118.02% | 6,497.00 | 26,654.65 | 54.00% | 49,360.47 | 46,892.45 |
| 0810 | 12,920.00 | 124.07% | 16,029.84 | 4,817.00 | 118.02% | 5,685.02 | 21,714.87 | 54.00% | 40,212.72 | 38,202.08 |
| 0811 | 12,145.00 | 124.07% | 15,068.30 | 4,576.00 | 118.02% | 5,400.60 | 20,468.90 | 54.00% | 37,905.36 | 36,010.10 |
| 0812 | 17,194.00 | 124.07% | 21,332.60 | 6,346.00 | 118.02% | 7,489.55 | 28,822.15 | 54.00% | 53,374.34 | 50,705.63 |
| 0901 | 9,989.00 | 124.07% | 12,393.35 | 4,572.00 | 118.02% | 5,395.87 | 17,789.23 | 54.00% | 32,943.01 | 31,295.86 |
| 0902 | 13,322.00 | 124.07% | 16,528.61 | 5,307.00 | 118.02% | 6,263.32 | 22,791.93 | 54.00% | 42,207.27 | 40,096.91 |
| 0903 | 14,367.00 | 124.07% | 17,825.14 | 9,045.00 | 118.02% | 10,674.91 | 28,500.05 | 54.00% | 52,777.86 | 50,138.97 |
| 0904 | 20,247.00 | 124.07% | 25,120.45 | 4,495.00 | 118.02% | 5,305.00 | 30,425.45 | 54.00% | 56,343.43 | 53,526.26 |
| 0905 | 17,558.00 | 124.07% | 21,784.21 | 5,862.00 | 118.02% | 6,918.33 | 28,702.54 | 54.00% | 53,152.86 | 50,495.21 |
| 0906 | 16,736.00 | 124.07% | 20,764.36 | 4,414.00 | 118.02% | 5,209.40 | 25,973.76 | 54.00% | 48,099.55 | 45,694.57 |
| Totals | 252,401.00 | | 313,153.92 | 85,198.00 | | 100,550.68 | 413,704.60 | | 766,119.63 | 727,813.65 |

Average Monthly Estimated Taxable Sales = Estimated Taxable Sales after allowance / Months With Available Information

Average Monthly Estimated Taxable Sales = 40,434.09

Additional Taxable Sales for the period of 0702 through 0804 will be forwarded to Exam 20A.

Additional Taxable Sales for the period of 0805 through 0804 will be forwarded to Exam 21A.

*Average Monthly Estimated Taxable Sales will be forwarded to Exam 20A

SANADCO, INC.
FORT WORTH, TX
EXAM SUMMARY - DETAIL

Tatiana Romanova - 04/0812014
TP#:   xxxxxxxxxx

Page 1 of 1

**EXAM:   21          ADDITIONAL TAXABLE SALES (0805 THAU 0906) - AMENDED**

| | Taxable Amount (1 | Tax Rate | Tax Adjustment (2) |
|---|---|---|---|
| STATE 0.0625000 | 333,987.89 | 0.06250 | 20,874.24 $ 20,874.24 |
| TOTAL AUTHORITY:  STATE | | | |
| CITY 0.0100000 | 333,987.89 | 0.01000 | 3,339.88 $ 3,339.88 |
| TOTAL AUTHORITY:  CITY | | | |
| TRANSIT 0.0050000 | 333,987.89 | 0.00500 | 1,669.94 $ 1,669.94 |
| TOTAL AUTHORITY:  TRANSIT | | | |
| SPD 0.0050000 | 333,987.89 | 0.00500 | 1,669.94 $ 1,669.94 |
| TOTAL AUTHORITY:  SPD | | | |

TOTAL TAX ON EXAM  21          $ 27,554.00

Total Tax Adjustment for each Authority forwarded to
Tax Adjustment Summary.

(1) Taxable Amounts for each tax rate are totaled and forwarded from the Detail Report.

(2) Tax Adjustment equals Taxable Amount times Tax Rate. Tax Adjustment amounts are reflected on a summary
level and may vary due to rounding. Actual Tax Adjustments are calculated and applied on a report period basis.

**SANADCO, INC.**
**FORT WORTH, TX**

**DETAIL REPORT - EXAM 21**     **ADDITIONAL TAXABLE SALES (0805 THAU 0906) · AMENDED**

| ID | Name | Location | Reference | Description | Comment | Taxable Amt | Tax | Date | S | City | County | Transit | SPD | Comb | FN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4059T- 16 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 20,458.12 | 1,687.79 | 05/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 17 | UNKNOWN | FORT WORTH | Elql.M 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 19,042.88 | 1,571.04 | 06/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 18 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 23,083.17 | 1,904.36 | 07/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 19 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 20,415.56 | 1,684.28 | 08/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOA | NONE | |
| 4059T- 20 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 20,107.07 | 1,658.83 | 09/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 21 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 16,475.47 | 1,359.23 | 10/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 22 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 15,626.37 | 1,289.18 | 11/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 23 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 21,748.06 | 1,794.21 | 12/01/2008 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 24 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 13,430.65 | 1,108.03 | 01/01/2009 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 25 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 17,200.72 | 1,419.06 | 02/01/2009 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 26 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 21,538.78 | 1,776.95 | 0310112009 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 27 | UNKNOWN | FORT WORTH | EXAM20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 46,105.26 | 3,803.68 | 04/01/2009 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 28 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 41,532.21 | 3,426.41 | 05101/2009 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |
| 4059T- 29 | UNKNOWN | FORT WORTH | EXAM 20A | ADDITIONAL TAXABLE SALES | AP 122/HB11 ESTIMATE | 37,223.57 | 3,070.94 | 06/01/2009 | Y | FORTWO | NONE | SCCFOR | MTAFOR | NONE | |

Detail Exam Summary Total     $333,987.89     $27,553.99     Taxable Amount Forwarded to Exam Summary - Detail

**Exam Comment:**
**THIS EXAM CONTAINS ADDITIONAL TAXABLE SALES FOR THE PERIODS FOR WHICH ADDITIONAL PENALTY WILL BE WAIVED PER ALJ'S DECISION.**

oo-739

Re"9 -9619)                    p.E.S\.ll\S • p.ttacnmen\ A

TEXAS NOT\f\CATION OF HE.AP.\NGS

Audit Period
0804
5/1/2007 THRU 4/30/2008

Type of Tax

SALES. exc\SE ANO use.

FIGURES WERE  UPHELD

| | STATE | LOCAL | TOTAL |
|---|---|---|---|
| | $20,863.58 | $6,676.38 | $27,539.96 |
| | $12,518.14 | $4,005.82 | $16,523.96 |
| | $6,617.77 | $2,117.70 | $8,735.47 |
| TAX | | | |
| PENALTY | | | |
| INTEREST THRU STATEMENT DATE | | | |
| | $39,999.49 | $12,799.90 | $52,799.39 |

11b    edited  when theY  become  available. You

TOTAL DUE AS OF STATEMENT DATE ● ● ● ● I:;:;●: :..;'"'   llY ₐₗ (S12) .........""'-onon

updated statements.                              llMIBll•through the date of payment. * )

191 8 per day after

(Interest will continue to accrue at

A 10% penalty will be assessed on taX •till due 43 days atter th• Order ot lhe comptroller (TEX. TAX CODE

ANN. SEC. 111.0081(c)  1-800-531-5441. ext. 3-3900 toll free nationwide. or call 5121463-3900-
For payment hformation catl

Make your check payable to STATE COMPTROLLER and mail to Comptroller ol Public AccounlS, 111 E. 1 l'

Stree\, Austn, Texas  78774-0100.

; er anum interest rates are subiect to cha 197   - any 1st of each year. For more interest ra\e
        rt Publication 98-304, call                                  'or refer to
        w.s ate.tx.us/taxinfo/int_rate.html

(Cut And Return Bottom Portion With Payment)

------------------------------------------------------

00-240
TEXAS NOTIFICATION OF HEARING RESULTS
- Attachment A

STATEMENT DATE
June 25, 2014
Type of Tax
SALES, EXCISE AND USE

Hearing Number
107,006

EXHIBIT C

SANADCO ORDER DENYING MTN FOR REHEARING

## HEARING NO. 106,815

| | | |
|---|---|---|
| RE: SANADCO, INC. | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: xxxxxxxxxx | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Fort Worth 2I40 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: February 1, 2007 | § | Representing Tax Division |
| THROUGH June 30, 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/ROT | § | Representing Petitioner |

## HEARING NO. 107,006

| | | |
|---|---|---|
| RE: MAHMOUD AHMED ISBA | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: xxxxxxxxxx | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Advanced Processes 2S52 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: May 1, 2007 | § | Representing Tax Division |
| THROUGH June 30. 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

## ORDER DENYING MOTION FOR REHEARING

On July 8, 2014, Petitioners timely filed a Motion for Rehearing concerning the June 16, 2014 Comptroller's Decision issued in the above-referenced matter. On July 8, 2014, the Tax Division filed its Reply opposing Petitioners' Motion.

Having considered Petitioners' Motion and the Tax Division's Reply, it is concluded that the Motion for Rehearing does not raise any legal or factual grounds that would affect the decision of the Comptroller. It is accordingly ORDERED that the Motion for Rehearing be, and is hereby, DENIED.

The Comptroller's Decision becomes final on the date of this Order Denying Motion for Rehearing, and the total sum of the tax, penalty, and interest is due and payable within twenty (20) days thereafter. If such sum is not paid timely, an additional penalty of ten percent of the taxes due will accrue and interest will continue to accrue until the taxes owed are paid.

EXHIBIT C

Sanadco, Inc. and Mahmoud Ahmed Isba
Hrg. Nos. 106,815 and 107,006
Page 2

All parties of record are being notified by copy of this Order.

Signed on this \\_.:s-tlaay of July 2014.

SUSAN COMBS
Comptroller of Public Accounts

by: _____
Martin A. Hubert
Deputy Comptroller

EXHIBIT D

BROADWAY COMPTROLLER DECISION



October 31, 2014


Mr. Samuel T. Jackson
Law Office of Samuel T. Jackson
P.O. Box l70633
Arlington, Texas 76003-0633

Re:      Broadway Grocery, Inc.
            Hearing No. 109,293
            Taxpayer No. xxxxxxxxxx

The Comptroller's Decision (Decision) for the above-referenced hearing, which resulted in a tax liability, is enclosed. Except for minor changes to correct typographical or clerical errors, the Decision is identical to the Proposal for Decision issued on August 8, 2014.

Unless a motion for rehearing is filed by November 24, 2014, the Decision will become final. Your total liability resulting from the hearing is shown in Attachment A to the Decision; please note, however, that additional daily interest will continue to accrue until you have paid the total liability and any additional accrued interest. Your total liability, plus any additional accrued interest is due twenty days after the Decision becomes final. If you fail to timely file a motion for rehearing or pay the total liability, as well as any additional accrued interest, within twenty days after the date the Decision becomes final, an additional 10% penalty will be assessed on the tax due and interest will continue to accrue.

A motion for rehearing can only be filed with the Special Counsel for Tax Hearings at P.O. Box 13528, Austin, Texas 78711-3528 or by facsimile at 512-936-6190. However, a copy must be filed with the Assistant General Counsel in the Administrative Hearings Section. If you have any questions about the procedures for filing a motion for rehearing or a waiver of the right to file a motion for rehearing, you may contact the Assistant General Counsel, Isreal Miller, by calling toll-free 800-531-5441, extension 3-4612. The direct number is 512-463-4612.

Chris Kadas
Special Counsel for Tax Hearings

EXHIBIT D

cc:      Isreal Miller, Representing Tax Division
         Broadway Grocery, Inc.

| | | |
|---|---|---|
| RE: BROADWAY GROCERY, INC. | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| TAXPAYER NO: xxxxxxxxxxx | § | |
| | § | SUSAN COMBS |
| AUDIT OFFICE: San Antonio 2I60 | § | Texas Comptroller of Public Accounts |
| | § | |
| AUDIT PERIOD: May 1, 2008 | § | ISREAL MILLER |
| THROUGH December 31, 2011 | § | Representing Tax Division |
| | § | |
| Sales And Use Tax/RDT | § | SAMUEL T. JACKSON |
| | § | Representing Petitioner |

## COMPTROLLER'S DECISION

The Tax Division (Staff) of the Texas Comptroller of Public Accounts (Comptroller) audited Broadway Grocery, Inc.'s (Petitioner) convenience store business for compliance with sales and use tax laws and made an assessment that includes a 50% additional penalty. Petitioner requested a redetermination of the audit assessment, raising contentions with regard to the average mark-up percentages applied in the audit and arguing that the audit should be cancelled or abated because it is based on improperly promulgated administrative rules. Petitioner also contends that the 50% additional penalty, the 10% late-filed penalty, and the accrued interest should be deleted. In the Proposal for Decision (PFD), the Administrative Law Judge (AU) recommends that the assessment, including the 50% penalty, be affirmed.

## I. PROCEDURAL IDSTORY, NOTICE, AND JURISDICTION

Staff referred the contested case to the State Office of Administrative Hearings and, on January 27, 2014, issued a Notice of Hearing to Petitioner. Petitioner was represented by Samuel T. Jackson, Law Office of Samuel T. Jackson. Staff was represented by Assistant General Counsel Isreal Miller. AU Trevor Moore closed the contested case record at the conclusion of the hearing on August 1, 2014. There are no issues of notice or jurisdiction; therefore, those matters are set out in the Findings of Fact and Conclusions of Law without further discussion.

## II. REASONS FOR DECISION

### A.    Evidence

In addition to the pleadings filed by the parties while the case was pending before the Comptroller, Staff presented the following exhibits:

1. 60-Day Notification Letter;
2. Texas Notification of Audit Results;
3. Penalty and interest waiver worksheet;
4. Audit Report; and
5. Audit Plan (including the Referral for Additional Penalty).

Petitioner submitted the following exhibits:

1. Order for Continuance and Abating Case, D-1-GV-13-000433 (126th District Court, Travis County);
2. Order addressing Plea to the Jurisdiction, D-1-GV-13-000754 (200th District Court, Travis County); and
3. State Officials' Motion for Protection and to Stay All Discovery, D-1-GN-13-004352 (200th District Court, Travis County).

The exhibits were admitted into the record without objection.

### B.    Staff Agreed Adjustments

Staff did not agree to make any adjustments to the audit.

### C.    Facts Established by the Evidence

Petitioner owns and operates a convenience store in San Antonio, Texas. The store sells beer, tobacco products, and other items commonly found in convenience stores. Mr. Shafeeq Khimani is Petitioner's president. Staff conducted an audit to verify Petitioner's compliance with Texas sales and use tax laws in the audit period May 1, 2008 through December 31, 2011.

On February 7, 2012, the auditor issued a letter addressed to Petitioner detailing the records that would be necessary for completing the audit. When no response was received, the auditor drafted a second letter to Petitioner detailing the records that would be necessary for completing the audit on March 8, 2012. Petitioner subsequently provided the auditor with purchase records for nine months of the audit period. Petitioner did not provide cash register z-tapes or other sales records, stating that he did not have confidence in the accuracy of the sales records and therefore did not keep them. The auditor notified Petitioner that, because the records were incomplete, the audit would be estimated using the procedures outlined in Audit Policy Memorandum 122 (AP 122).

On April 16, 2012, the auditor visited Petitioner's store and scheduled the retail price data he collected. He compared those values to product costs shown on purchase invoices for March and April 2012 and calculated the following average mark-ups: 42.47% for beer; 18.18% for tobacco; 63.02% for soda; 59.03% for candy; and 58.67% for general merchandise. Using vendor-reported data, the auditor scheduled Petitioner's beer and tobacco purchases. The auditor also contacted Petitioner's soda vendors and received purchase records for the audit period. The auditor then selected the most complete four months of purchase records from the nine that had been provided by Petitioner, based on the auditor's judgment. Using the vendor data for purchases of beer, tobacco, and soda, and Petitioner's invoices for purchases of candy and general merchandise, the auditor calculated a product-mix ratio for beer and tobacco sales to all taxable sales (74.4490%). Taxable sales were estimated by dividing estimated beer and tobacco sales by the calculated product mix. Petitioner was allowed 5% for spillage and undocumented losses. Allowances were also applied for food stamp sales in the months where records were available (August 2010 through the end of the audit period). Credit for reported taxable sales was then applied in computing the additional taxable sales for the audit period. On July 17, 2012, Staff issued Petitioner a Texas Notification of Audit Results assessing tax, a 10% late penalty, an additional 50% penalty, and interest accrued to the account. The overall audit error rate was 34.99%.[1] Petitioner requested redetermination.

---

[1] The audit error calculation is based on the formula: assessed tax + (assessed tax + reported tax) = overall audit error percentage.

D.     ALJ's Analysis & Recommendation

The law requires retailers to keep records that reflect the total gross receipts from sales and the total purchases of taxable items. *See* 34 Tex. Admin. Code § 3.281(b). When records are inadequate to reflect the taxpayer's business operations, Staff is authorized to estimate a taxpayer's liability based on the best information available. *See* Tex. Tax Code Ann. § lI1.0042(d).

In its Reply to the Position Letter, Petitioner asserts that the estimation of the audit was not authorized because the records provided were sufficient to allow for an alternate methodology. Petitioner argues that the auditor misrepresented the facts regarding the available records in order to justify completing the audit utilizing estimation methodologies. However, Petitioner failed to submit any testimony or evidence to substantiate its arguments. Assertions that are made in pleadings are not evidence. *See, e.g.,* Comptroller's Decision No. 104,430 (2011). Based on the evidence in the record, the AU finds that Staff demonstrated, *prima facie,* that the use of estimation methodologies was authorized by statute.

The tax liability was estimated based on purchase records the auditor obtained from Petitioner and on purchase data reported to the Comptroller by Petitioner's beer, tobacco, and soft drink vendors per the estimation procedures outlined in AP 122. Petitioner contends that AP 122 is an administrative rule that was not promulgated in compliance with the requirements of the Administrative Procedures Act (APA), and therefore it argues that the audit assessment should be dismissed.

Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Texas Tax Code §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. House Bill 11 (HB 11), 80th Leg., R. S., 2007. The vendor-reported data is sometimes referred to as "HB 11 data." Prior to the passage of HB 11, the Audit Division issued a memorandum titled Audit Policy 92 (AP 92). The memo provides guidance to auditors in performing convenience store audits. After HB 11 was enacted, the Audit Division updated

4

the convenience store auditing procedures with the issuance of AP 122. The new memo requires auditors to use HB 11 data information. AP 92 and AP 122 were recently reviewed by the Austin Third Court of Appeals. *See Sanadco, Inc. v. Office of the Comptroller of Public Accounts,* 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App.-Austin Sept. 26, 2013, no pet. h.).

In *Sanadco,* the taxpayer asserted that AP 92 and AP 122 were administrative rules that were not promulgated in compliance with the requirements of the APA. Under the APA, a rule is defined as "a state agency statement of general applicability that (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency." Tex. Gov't Code Ann. § 2001.003(6)(A). The statutory definition excludes "a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." Tex. Gov't Code Ann. § 2001.003(6)(C). The Comptroller argued that AP 92 and AP 122 are simply statements regarding the internal management of the agency and that they do not impose any duties or requirements on convenience-store owners. The court disagreed and held that "the directives in AP 92 and AP 122 are in fact rules," and for that reason "we must also conclude that the district court had jurisdiction" over the claim. Based on the *Sanadco* ruling, Petitioner contends the instant audit should be cancelled or abated. The ALJ disagrees.

On October 3, 2013, the Comptroller filed a Motion for Rehearing and Reconsideration in *Sanadco.* As of the writing of the PFD, the Court has not ruled on the motion. Therefore, the *Sanadco* decision is not final. *See Oscar Renda Contracting, Inc. v. Hands Supply Co., Inc.,* 195 S.W.3d 772 (Tex. App.-Waco 2006, pet. denied) (Suit became final when the appellate court's judgment of dismissal had "disposed of all issues and parties in the case and the court's power to alter the judgment ha[d] ended."). The court will lose plenary power "30 days after the court overrules all timely filed motions for rehearing or *en banc* reconsideration, and all timely filed motions to extend time to file such a motion." Tex. Rule App. P. 19.1(b). Because the *Sanadco* decision is not final, it has no precedential value. Therefore,. the ALJ gives it no weight and Petitioner's request for abatement of the hearing is denied.

5

The AU finds that the auditor used the best information available to complete an estimated audit that was authorized by statute. Given that Petitioner failed to submit any evidence addressing the calculation of the audit assessment, it clearly failed to demonstrate audit error. *See* 34 Tex. Admin. Code § 1.40(2)(B).

With respect to whether the 50% additional penalty assessment is warranted in this instance, Staff is required to provide clear and convincing evidence of fraud or intent to evade tax. *See* Tex. Tax Code Ann. § lll.061(b) and 34 Tex. Admin. Code § 1.40(l)(B). The Comptroller has held on many occasions that gross underreporting of taxable sales, along with other factors or no plausible explanation, is sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty. *See, e.g.,* Comptroller's Decision No. 105,232 (2012). Petitioner failed to provide complete records, and the underreporting documented within the audit constitutes gross error. *See* Tex. Tax Code Ann. § 111.205(b). Therefore, the AU finds that Staff's evidence clearly and convincingly demonstrates that the underreporting identified by the audit was the result of fraud or an intent to evade tax.

Because Petitioner is a corporate taxpayer, Staff must present facts that support attributing the fraudulent actions to the corporation. For example, the Comptroller has held that a corporate officer who was involved in day-to-day corporate business affairs and routinely prepared or signed sales tax returns had knowledge of gross underreporting of tax and that knowledge could be legally imputed to the corporation in establishing the requisite intent to evade tax. *See, e.g.,* Comptroller's Decision No. 45,735 (2006). Conversely, the Comptroller has dismissed the 50% additional penalty assessment where the evidence failed to demonstrate that there was any fraud on the part of corporate officers or that they acquiesced in fraudulent activities conducted by corporate employees. *See, e.g.,* Comptroller's Decision Nos. 31,500 (1994); 34,669 (1997) and 37,555 (1999).

The evidence addressing this issue consists of the Audit Documentation Report and the Audit Referral Report for Additional Penalty. Neither Petitioner nor Staff addressed the participation of Mr. Khimani in Petitioner's day-to-day operations or tax reporting. According to Audit Referral Report for Additional Penalty, Petitioner's president is Shafeeq Khimani. In the

7

Audit Documentation Report and in the Referral, the auditor determined that Mr. Khimani was solely responsible for the calculation, preparation, and filing of the sales tax returns for Petitioner. As recorded in the audit plan and in the testimony of the auditor, Mr. Khimani estimated the sales tax due every month during the audit period, signed and submitted the returns, and disposed of the sales records. The ALJ finds that Staff has demonstrated, by clear and convincing evidence, that the fraud identified in the audit should be attributed to the corporation. Therefore, the 50% penalty should be upheld.

A 10% late penalty is automatically imposed on delinquent sales taxes. Tex. Tax Code Ann. § 111.061. Staff has the discretionary authority to waive penalties if a taxpayer has exercised reasonable diligence to comply with tax laws. Tex. Tax Code Ann. § 111.103. Petitioner has the burden to establish reasonable diligence by a preponderance of the evidence. *See, e.g.,* Comptroller's Decision No. 102,695 (2010). In determining reasonable diligence, Staff reviews the audit error rate, the taxpayer's audit history, the tax issues involved, changes in Comptroller policy during the exam period, the size and sophistication of the taxpayer, whether tax was collected and not remitted, whether returns were timely filed, the completeness of the records, delinquencies in other taxes, and whether there was reliance on advice provided by the Comptroller's office that caused imposition of penalty. 34 Tex. Admin. Code § 3.5(c); *see also* Comptroller's Decision No. 101,976 (2010).

In this case, Petitioner failed to provide complete records, and the overall audit error rate of 34.99% constitutes gross error. The ALJ finds that Petitioner has not demonstrated that it was reasonably diligent in complying with the mixed beverage gross receipts tax laws and recommends that penalty not be waived.

Petitioner also contends that interest waiver is warranted. Staff has discretionary authority to waive an interest assessment any time a taxpayer exercised reasonable diligence in complying with Tax Code requirements. Tex. Tax Code Ann. § 111.103. Staff may waive an interest assessment when it was imposed as a result of undue delay caused by Comptroller personnel, reliance on advice provided by the Comptroller's office, or natural disaster. 34 Tex. Admin. Code § 3.5(d). To prevail, Petitioner must demonstrate, by a preponderance of the

6

evidence, that interest waiver is warranted. 34 Tex. Admin. Code § 1.40(2)(B). Petitioner has not offered any evidence supporting its request for interest waiver. Therefore, the ALJ finds that interest waiver is not warranted.

## III. FINDINGS OF FACT

1.  Broadway Grocery, Inc. (Petitioner) owns and operates a convenience store in San Antonio, Texas.

2.  The store sells beer, tobacco products, soda, candy, and other items commonly found in convenience stores.

3.  The Tax Division (Staff) of the Texas Comptroller of Public Accounts (Comptroller) conducted an audit to verify Petitioner's compliance with Texas sales and use tax laws in the audit period May 1, 2008 through December 31, 2011.

4.  On February 7, 2012, the auditor drafted correspondence to Petitioner detailing the records that would be necessary for completing the audit.

5.  Due to a lack of response to the letter, on March 8, 2012, the auditor drafted a second letter to Petitioner detailing the records that would be necessary for completing the audit.

6.  Petitioner provided the auditor with nine months of purchase records. Petitioner did not provide cash register z-tapes and refused to provide federal income tax returns.

7.  The auditor notified Petitioner that, because the records were incomplete, the audit would be estimated using the procedures of Audit Policy Memo 122 (AP 122).

8.  On April 16, 2012, the auditor visited Petitioner's store and scheduled the retail price data he collected. He compared those values to product costs shown on purchase invoices for March and April 2012 and calculated the following average mark-ups: 42.47% for beer; 18.18% for tobacco; 63.02% for soda; 59.03% for candy; and 58.67% for general merchandise.

9.  Using vendor-reported data, the auditor scheduled Petitioner's beer and tobacco purchases. The auditor also contacted Petitioner's soda vendors and received purchase records for the audit period.

10.  The auditor selected the most complete four months of purchase records from the nine that had been provided.

9

11. Using the vendor data for purchases of beer, tobacco, and soda, and Petitioner's invoices for purchases of candy and general merchandise, the auditor calculated a product-mix ratio for beer and tobacco sales to all taxable sales (74.4490%).

12. Taxable sales were estimated by dividing estimated beer and tobacco sales by the calculated product mix.

13. Petitioner was allowed 5% for spillage and undocumented losses, and allowances were also applied for food stamp sales in the months where records were available (August 2010 through the end of the audit period). Credit for reported taxable sales was then applied in computing the additional taxable sales for the audit period.

14. On July 17, 2012, Staff issued Petitioner a Texas Notification of Audit Results assessing tax, a 10% late penalty, an additional 50% penalty, and interest accrued to the account.

15. The overall audit error rate was 34.99%.

16. Petitioner requested redetermination.

17. The vendor reported data utilized within the audit is frequently referred to as "HB 11 data." The reference relates to the fact that statutes that require vendors to report the data to the Comptroller were enacted as part of Tex. House Bill 11, 80th Leg., R. S., 2007.

18. Prior to the passage of HB 11, Staff issued a memorandum titled Audit Policy 92 (AP 92), which provided guidance to auditors in performing convenience store audits.

19. After HB 11 was enacted Staff issued another memo to update the procedures. It was entitled Audit Policy 122 (AP 122). The new memo requires auditors to use HB 11 data information.

20. AP 92 and AP 122 were recently reviewed by the Austin Third Court of Appeals. *See Sanadco, Inc. v. Office of the Comptroller of Public Accounts,* 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App.-Austin Sept. 26, 2013, no pet. h.).

21. In *Sanadco,* the taxpayer asserted (among other things) that AP 92 and AP 122 were administrative rules that were not promulgated in compliance with the requirements of the Administrative Procedures Act. The Comptroller argued that the memos are simply statements regarding the internal management of the agency and that they do not impose any duties or requirements on convenience-store owners. The court held that "the directives in AP 92 and AP 122 are in fact rules," and for that reason "we must also conclude that the district court had jurisdiction" over the claim.

22. On October 3, 2013, the Comptroller filed a Motion for Rehearing and Reconsideration in *Sanadco.*

23. As of the writing of the PFD, the *Sanadco* court has not ruled on the Comptroller's Motion for Rehearing and Reconsideration.

24. Staff referred the case to the State Office of Administrative Hearings (SOAR).

25. On January 27, 2014, Staff issued Notice of Hearing to Petitioner. The notice contained a statement of the nature of the hearing; the date, time, and place of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the matters asserted.

26. A hearing on the merits convened on August 1, 2014.

27. The Administrative Law Judge (ALJ) closed the contested case record at the conclusion of the hearing.

## IV. CONCLUSIONS OF LAW

1. The Comptroller has jurisdiction over this matter pursuant to Texas Tax Code ch. 111.

2. SOAR has jurisdiction over matters related to the hearing in this matter, including the authority to issue a proposal for decision with findings of fact and conclusions of law pursuant to Texas Government Code ch. 2003.

3. Staff provided proper and timely notice of the hearing pursuant to Texas Government Code ch. 2001.

4. The law requires retailers to keep records that reflect the total gross receipts from sales and the total purchases of taxable items. 34 Tex. Admin. Code § 3.28l(b).

5. When records are inadequate to reflect the taxpayer's business operations, Staff is authorized to estimate a taxpayer's liability based on the best information available. Tex. Tax Code Ann. § 111.0042(d).

6. Factual assertions that are made in pleadings are not evidence. *See, e.g.,* Comptroller's Decision No. 104,430 (2011).

7. Based on the evidence in the record, the ALJ finds that Staff demonstrated, *prima facie,* that the use of estimation methodologies was authorized by statute.

8. Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Texas Tax Code §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. HB 11, 80th Leg., R. S., 2007.

9.  Staff s evidence demonstrates, *prima facie,* that the audit was based on the best information available. It is therefore Petitioner's burden to show audit error. *See* 34 Tex. Admin. Code § l.40(2)(B).

10. Petitioner failed to demonstrate audit error. *See* 34 Tex. Admin. Code § l.40(2)(B).

11. The *Sanadco* decision is not final. *See Oscar Renda Contracting, Inc. v. Hands Supply Co., Inc.,* 195 S.W.3d 772 (Tex. App.-Waco 2006, pet. denied) (Suit became final when the appellate court's judgment had "disposed of all issues and parties in the case and the court's power to alter the judgment ha[d] ended.").

12. The Third Court of Appeals will lose plenary power over *Sanadco* "30 days after the court overrules all timely filed motions for rehearing or *en bane* reconsideration, and all timely filed motions to extend time to file such a motion." Tex. Rule App. P. 19.l(b).

13. Because the *Sanadco* decision is not final, it carries no precedential value.

14. The Comptroller has previously held that the AU does not have jurisdiction to determine whether a state agency statement constitutes a rule as defined by the Administrative Procedures Act. *See* Comptroller's Decision No. 105,002 (2011). *See also* Tex. Gov't Code Ann. § 2001.003(6).

15. A taxpayer is entitled to submit a declaratory-judgment action to seek such a ruling, but the action must be filed in Travis County district court. *See* Tex. Gov't Code Ann. § 2001.038; *Combs v. Entertainment Publications, Inc.* 292 S.W.3d 712, 720-21 (Tex. App.-Austin 2009, no. pet.).

16. The Comptroller is authorized to impose an additional 50% penalty if the failure to pay tax or file a report when due was a result of fraud or an intent to evade the tax. Tex. Tax Code Ann. § 1l1.061(b).

17. Staff is required to provide clear and convincing evidence of fraud or intent to evade tax. *See* Tex. Tax Code Ann. § 111.061(b) and 34 Tex. Admin. Code § l.40(1)(B).

18. The underreporting documented within the audit constitutes gross error. *See* Tex. Tax Code Ann. § 1l1.205(b).

19. The Comptroller has held on many occasions that gross underreporting of taxable sales, along with other factors or no plausible explanation, is sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty. *See, e.g.,* Comptroller's Decision No. 105,232 (2012).

20. Staff s evidence clearly and convincingly demonstrates that the underreporting identified by the audit was the result of fraud or an intent to evade tax.

10

21. The Comptroller has held that the actions of a corporate officer who was involved in day-to-day corporate business affairs and routinely prepared or signed sales tax returns had knowledge of gross underreporting of tax and that knowledge could be legally imputed to the corporation in establishing the requisite intent to evade tax. *See, e.g.,* Comptroller's Decision No. 45,735 (2006).

22. Staff demonstrated that the fraud identified in the audit should be attributed to the corporation.

23. Late penalties are automatically imposed on delinquent sales taxes. Tex. Tax Code Ann. § 111.061.

24. Staff has the discretionary authority to waive penalties if a taxpayer has exercised reasonable diligence to comply with tax laws. Tex. Tax Code Ann. § 111.103.

25. A taxpayer has the burden to establish reasonable diligence by a preponderance of the evidence. *See, e.g.,* Comptroller's Decision No. 102,695 (2010).

26. Petitioner did not establish that it acted with reasonable diligence to comply with tax laws.

27. Petitioner failed to demonstrate that waiver of the 10% penalty is warranted.

28. Delinquent taxes draw interest beginning 60 days after the date due. *See* Tex. Tax Code Ann. § 111.060(c).

29. Staff has discretionary authority to waive interest assessments and will exercise its discretion if interest was imposed as a result of undue delay caused by Comptroller personnel, reliance on advice provided by the Comptroller's office, or natural disaster. *See* Tex. Tax Code Ann. § 111.103; *see also* 34 Tex. Admin. Code § 3.5(d).

30. Petitioner must demonstrate, by a preponderance of the evidence, that interest waiver is warranted. *See* 34 Tex. Admin. Code § 1.40(2)(B).

31. Petitioner failed to demonstrate that interest waiver is warranted.

32. The assessment should be affirmed in all respects.

**Hearing** No. **109,293**

## ORDER OF THE COMPTROLLER

On August 8, 2014, the State Office of Administrative Hearings' (SOAH) Administrative Law Judge (ALT), Trevor Moore, issued a Proposal for Decision in the above referenced matter. The parties were given fifteen days from the date of the Decision to file exceptions with SOAH. No exceptions were filed, and the Comptroller has determined that the AL.T's Proposal for Decision, except for minor changes to correct typographical or clerical errors, should be adopted as written.

The above Decision resulting in Petitioner's liability as set out in Attachment A, which is incorporated by reference, is approved and adopted in all respects. The Decision becomes final twenty days after the date Petitioner receives notice of this decision, and the total sum of the tax, penalty, and interest amounts is due and payable within twenty days thereafter. If such sum is not paid within such time, an additional penalty of ten percent of the taxes due will accrue, and interest will continue to accrue. If either party desires a rehearing, that party must file a motion for rehearing, which must state the grounds for rehearing, no later than twenty days after the date Petitioner receives notice of this Decision. Notice of this Decision is presumed to occur on the third day after the date of this Decision.

Signed on this        day of October 2014.

SUSAN COMBS
Texas Comptroller of Public Accounts

by:
Martin A. Hubert
Deputy Comptroller

Re[3] 9619>

TEXAS NOTIFICATION OF HEARING RESULTS  Attachment A

STATEMENT DATE.
October 22, 2014

| Taxpayer Number | Audit Period | Hearing Number |
|---|---|---|
| XXXXXXXXXX | 0501 2008 THRU 12 31 2011 | 109293 |

X sANansE TAX

FIGURES WERE UPHELD

|  | STATE | LOCAL | TOTAL |
|---|---|---|---|
| TAX | $ 38,782 | $ 11,634.7g | $ 50,41.09 |
| kT ( o fA¥lNT DATE | 2 :g :b4 | 6,980.8 | 3g.2so.2g |
|  |  | 2,302.71 | ,9 78.3 |
| TOTAL DUE /JS OF STATEMENT DATE | $ 69,727.41 | $ 20,918.31 | $ 90,645.72 |

(Interest of $ 5.87 oer day will continue to accrue after 10 22 2014 through the date of payment.)

A 10t penalty will be assessed on tax still due 43 days after the date on the Order of the Comptroller (TEX. TAX CODE ANN.SEC.111.0081(c)).

For Payment information call 1 800-531-5441, extension 3-3900 toll free nationwide, or call 512/it63900.

Make your check payable to STATE COMPTROLLER and mail to Comptroller of Public Accounts 111 E. 17th Street, ·Austin, Texas 78774-0100.

10/07/2014

*Per annum interest rates are subject to change on January 1st of each year  For more interest rate information, refer to Publication 98304, call 1 877447-2834.or refer to http://www.state.tax.us.

(Cut and Return Bottom Portion with Payment)

00739
(Rev 9 96/9)

TEXAS NOTIFICATION OF HEARING RESULTS
Attachment A

Hearing Number
1 09293

STATEMENT DATE
October 22. 2014
T,me of Tax

SALES AND USE TAX

Taxoayer Name & Mailing Address
BROADWAY GROCERY, INC.
XXXXXXXXXXXX
SAN ANTONIO, TX XXXXXXXXX

Amount of Your Payment

| *Tcode | *Taxpayer Number | *Period | *Audit | *State Amount | *Local Amount |
|--------|------------------|---------|--------|---------------|---------------|
| 26040 | xxxxxxxxxxx | 1112 | 001 | 69727.41 | 20918.31 |

| *Tcode | *Taxpayer Number | *Period | *Audit | *State Amount | *Local Amount |
|--------|------------------|---------|--------|---------------|---------------|
| 26040 | xxxxxxxxxxx | 1112 | 001 | 69727.41 | 20918.31 |

EXHIBIT E

BROADWAY DENYING MOTION FOR REHEARING

HEARING NO. 109,293

RE: BROADWAY GROCERY, INC.     §   BEFORE THE COMPTROLLER
                 §   OF PUBLIC ACCOUNTS
                 §   OF THE STATE OF TEXAS
                 §
                 §   SUSAN COMBS
                 §   Texas Comptroller of Public Accounts

TAXPAYER NO: xxxxxxxxxx      §
AUDIT OFFICE: Audit - San Antonio 2160   §   ISREAL MILLER
AUDIT PERIOD: May 1, 2008      §   Representing Tax Division
   THROUGH December 31, 2011    §
                 §   SAMUEL T. JACKSON
Sales And Use Tax/RDT       §   Representing Petitioner

## ORDER DENYING MOTION FOR REHEARING

On November 24, 2014, Petitioner timely filed a Motion for Rehearing concerning the October 31, 2014 Comptroller's Decision issued in the above-referenced matter. On December 1, 2014, the Tax Division filed its Reply opposing Petitioner's Motion.

Having considered Petitioner's Motion and the Tax Division's Reply, it is concluded that the Motion for Rehearing does not raise any legal or factual grounds that would affect the decision of the Comptroller. It is accordingly ORDERED that the Motion for Rehearing be, and is hereby, DENIED.

The Comptroller's Decision becomes final on the date of this Order Denying Motion for Rehearing, and the total sum of the tax, penalty, and interest is due and payable within twenty (20) days thereafter. If such sum is not paid timely, an additional penalty of ten percent of the taxes due will accrue and interest will continue to accrue until the taxes owed are paid.

All parties of record are being notified by copy of this Order.

Signed on this :2.rv:{ day of December 2014.

          SUSAN COMBS
          Comptroller of Public Accounts

by: _____
    Martin A. Hubert
    Deputy Comptroller

            EXHIBIT E

EXHIBIT F

SHARIZ MOTION TO DISMISS

| | | |
|---|---|---|
| RE: SHARIZ INC. | § | BEFORE THE COMPTROLLER |
| | § | |
| TAXPAYER NO:  xxxxxxxxxxx | § | |
| AUDIT OFFICE:  Audit - Houston N 2130 | § | OF PUBLIC ACCOUNTS |
| AUDIT PERIOD:  September 1, 2006 | § | |
|  through September 30, 2010 | § | |
| Sales And Use Tax/ROT | § | OF THE STATE OF TEXAS |

## MOTION TO DISMISS FOR WANT OF PROSECUTION

To Special Counsel for Tax Hearings:

The Comptroller is authorized under 34 TEX. ADMIN. CODE §1.39 to dismiss a hearing upon the taxpayer's failure to prosecute its case.

The facts in support of this motion are as follows. Petitioner filed its Statement of Grounds on October 1, 2011 and to date has provided no documentation in support of its contentions. The Tax Division's Position Letter requested that Petitioner provide documentation in support of its contentions with its Reply to Position Letter. Petitioner's Reply to Position Letter was nothing more than the Position Letter Option Form 2 stated Petitioner's general disagreement with the Reply to Position Letter. In order to prosecute its case, Petitioner must show error in the audit as required by Rule 1.40. Because Petitioner has failed to provide any documentation in support of its case, the Tax Division recommends that case be dismissed for want of prosecution.

No agreements were made that require adjustments. Therefore, the Tax Division moves for dismissal of this hearing with no change to the assessment.

Respectfully submitted,

Isreal Miller
Assistant G eral Counsel
Administrative Hearings
**Texas Comptroller of Public Accounts**
P.O. Box 13528
Austin, Texas 78711-3528
Texas State Bar No. 24041485
telephone:  (512) 463-4612
facsimile:  (512) 463-4617
isreal.miller@cpa.state. tx.us

EXHIBIT F

## CERTIFICATE OF SERVICE

I certify that a copy of this **Motion to Dismiss for Want of Prosecution** was mailed to Mr. Samuel T. Jackson, The Law Office of Samuel T. Jackson, P.O. Box 170633, Arlington, TX 76033-0633, on this the 3rd day of March, 2014.

Isreai Miller

EXHIBIT G

SHARIZ COMPTROLLER DECISION



September 5, 2014


Mr. Samuel T. Jackson
P.O. Box 170633
Arlington, TX 76033-0633

Re:     Shariz, Inc.
        Hearing No. 108,636
        Taxpayer No. xxxxxxxxxxx

The Comptroller's Decision (Decision) on your Petition for Redetermination is enclosed. Attachment A to the Decision reflects your total liability for the period covered by the Decision. As noted in Attachment A, additional daily interest will continue to accrue through the date of your payment.

Unless a motion for rehearing is timely filed, the Decision will become final on September 29, 2014, and your total liability plus the additional daily interest will be due and payable twenty days thereafter. If you fail to timely file a motion for rehearing or pay the total liability, as well as any additional accrued interest, within twenty days after the date the Decision becomes final, an additional 10% penalty will be assessed on the tax due and interest will continue to accrue.

A motion for rehearing can only be filed with the Special Counsel for Tax Hearings at P.O. Box 13528, Austin, Texas 78711.3528 or by facsimile at 512.936.6190. However, a copy must be filed with the Assistant General Counsel in the Administrative Hearings Section. If you have any questions about the procedures for filing a motion for rehearing, you may contact the Assistant General Counsel, Isreal Miller, by calling toll-free 800.531.5441, extension 3.4612. The regular number is 512.463.4612.

Chris Kadas
Special Counsel for Tax Hearings


cc:     Isreal Miller, Representing Tax Division
        Shariz, Inc.


                                        EXHIBIT G

**HEARING NO. 108,636**

| | | |
|---|---|---|
| RE: SHARIZ, INC. | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| TAXPAYER NO: xxxxxxxxxx | § | |
| AUDIT OFFICE: Audit - Houston N 2130 | § | ISREAL MILLER |
| AUDIT PERIOD: September 1, 2006 | § | Representing Tax Division |
| THROUGH September 30, 2010 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

**COMPTROLLER'S DECISION**

On March 3, 2014, the Tax Division moved to dismiss this case for want of prosecution. Petitioner's liability has been calculated in accordance with the motion, and the resulting liability is set forth in Attachment A, which is incorporated herein by reference and approved and adopted in all respects. It is therefore ORDERED that the petition be dismissed and the audit be made final in accordance with the motion and Attachment A.

This Decision becomes final twenty days after the date Petitioner receives notice of this Decision, and the total sum of the tax, penalty, and interest amounts is due and payable within twenty days thereafter. If such sum is not paid within such time, an additional penalty of ten percent of the taxes due will accrue, and interest will continue to accrue. If either party desires a rehearing, that party must file a motion for rehearing, which must state the grounds for rehearing, no later than twenty days after the date Petitioner receives notice of this Decision. Notice of this Decision is presumed to occur on the third day after the date of this Decision.

Signed on this 5 day of September 2014.

SUSAN COMBS
Comptroller of Public Accounts

by: Martin A. Hubert
Deputy Comptroller

00-739

(Rev 9 -96/9)                                                                                          -1897

TEXAS NOTIFICATION OF HEARINGS RESULTS - Attachment A                    STATEMENT DATE

                                                                          September 12, 2014

Taxpayer Number                          Audit Period                     Hearing Number
xxxxxxxxxxx                              9/1/06 THRU  9/30/10              108636

Type of Tax
SALES AND USE TAX

<u>FIGURES WERE   UPHELD</u>

|                                   | STATE       | LOCAL       | TOTAL        |
|-----------------------------------|-------------|-------------|--------------|
| TAX                               | $41,156.30  | $13,170.18  | $54,326.48   |
| PENAL.TY                          | 24,747.06   | 7,919.16    | 32,666.22    |
| INTEREST THRU STATEMENT DATE      | 12,205.14   | 3,905.70    | 16.110.84    |
| TOTAL DUE AS OF STATEMENT DATE    | $78,108.50  | $24,995.04  | $103, 103.54 |

        (Interest will continue to accrue at $ 6.32 per day after 9/12/14 through the date of payment. * )

A 10% penalty will be assessed on tax still due 43 days after the Order of the Comptroller (TEX. TAX  CODE ANN.
SEC. 111.0081 (c).

For payment information call 1-800-531-5441 , ext. 3-3900 toll free nationwide, or call 512/463-3900.

Make your check payable to STATE COMPTROLLER and mail to Comptroller of Public Accounts, 111 E. 1h
Street, Austin, Texas 78774-0100.

* Per annum interest rates are subject to change on January 1st of each year.  For more interest rate
information, refer to Publication 98-304, call 1-877-447-2834, or refer to
http://www.window.state.tx.us/taxinfo/int____rate.html

                              (Cut And Return Bottom Portion With Payment)

00-240

TEXAS NOTIFICATION OF HEARING RESULTS                                Hearing Number
- Attachment A                                                       108636
                              STATEMENT DATE
                              September 12, 2014

                              Type of Tax
                               SALES AND USE TAX

Taxpayer Name & Mailing Address
 SHARIZ INC                                              Amount of Your Payment
 xxxxxxxxxxxxxxxxx
 SUGAR LAND TX  xxxxxxxxxx                               _____

                                                        *PMD_____

| *Tcode | *Taxpayer Number | *Period | *Audit | *Type | *State Amount | *Type | *Local Amount |
|--------|------------------|---------|--------|-------|---------------|-------|---------------|
| 26040  | xxxxxxxxxxx      | 1009    | 001    | 02    | 78108 .50     | 04    | 24995.04      |

EXHIBIT H

SHARIZ ORDER DENYING MOTION FOR REHEARING

**HEARING NO. 108,636**

| | | |
|---|---|---|
| RE: SHARIZ, INC. | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| TAXPAYER NO: xxxxxxxxxxx | § | |
| AUDIT OFFICE: Audit - Houston N 2130 | § | ISREAL MILLER |
| AUDIT PERIOD: September 1, 2006 | § | Representing Tax Division |
| THROUGH September 30, 2010 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

**ORDER DENYING MOTION FOR REHEARING**

On September 25, 2014, Petitioner timely filed a Motion for Rehearing concerning the Sept 5, 2014 Comptroller's Decision issued in the above-referenced matter. On September 26, 2014, the Tax Division filed its Reply opposing Petitioner's Motion.

Having considered Petitioner's Motion and the Tax Division's Reply, it is concluded that the Motion for Rehearing does not raise any legal or factual grounds that would affect the decision of the Comptroller. It is accordingly ORDERED that the Motion for Rehearing be, and is hereby, DENIED.

The Comptroller's Decision becomes final on the date of this Order Denying Motion for Rehearing, and the total sum of the tax, penalty, and interest is due and payable within twenty (20) days thereafter. If such sum is not paid timely, an additional penalty of ten percent of the taxes due will accrue and interest will continue to accrue until the taxes owed are paid.

All parties of record are being notified by copy of this Order.

Signed on this _q-tY\_ day of October 2014.

SUSAN COMBS
Comptroller of Public Accounts

by: _____
Martin A. Hubert
Deputy Comptroller

EXHIBIT I

EXHIBIT I

RUBI & SONS REQUEST FOR REDETERMINATION



**Law Office**
**Of**
**Samuel T. Jackson**

Mail: P.O. Box 170633; Arlington, TX 76003-0633
(817) 404-5042 ~ (214) 628-0977 ~ (512) 692-6260
Toll Free: (800) 969-5023 ~ Fax: (866) 722-9685

FEBRUARY 2, 2015

Comptroller of Public Accounts
Audit Processing Section
111 East 17th
Austin, TX 78774-0100

   Re:  Petition for Redetermination Hearing
       RUBINA NOORANI, President
       RUBI & SONS STORE, INC.
       Taxpayer No. xxxxxxxxxxx
       Audit Period: December 1, 2010 to April 30, 2014

**REQUEST FOR REDETERMINATION HEARING**
**FOR PERSONAL LIABILITY OF RUBINA NOORANI**

Dear Comptroller Hegar:

   This letter is intended as a Request for a Redetermination Hearing for the above-referenced individual's Personal Audit Liability for Fraudulent Tax Evasion. Petitioner requests that a hearing be set before the State Office of Administrative Hearings with proper notification pursuant to Tex. Tax Code Ann. §§ 111.009, 151.510, 154.309, and 155.186. Please see the attached Limited Power of Attorney authorizing my representation in this matter.

**SUMMARY**

   Petitioner incorporates herein by reference, the Statement of Grounds contained in the Request for Redetermination of Rubi & Sons Store, Inc. In addition, Petitioner disputes the assessment of fraud and penalties in the absence of allegations or proof of willful intent to evade taxes or distort the records. Petitioner asserts that he offered records substantially in compliance with statutory requirements, and his alleged underpayment in excess of 25% is insufficient to sustain a claim of intentional fraud.

   Petitioner further alleges that the auditor has demonstrated no basis for the imposition of a Jeopardy Determination and that such imposition is arbitrary, capricious and without foundation because the Comptroller has failed to establish any standards for making such determination.

   Petitioner asserts that the issues raised in this Statement of Grounds only require statutory or legal interpretations, and are not reliant on proof of any factual issues related to the audit. As Petitioner does not challenge the accuracy of the audit itself, it is not necessary and she therefore does not intend to respond to requests which may be made in a subsequent Position Letter for proof or documentation in support of these purely legal issues. Any proof of factual allegations asserted will be addressed by reference to the auditor's records. Petitioner's failure or refusal to respond to such requests is not intended as a relinquishment of this request for hearing or of a failure to prosecute this claim.

EXHIBIT I

## STATEMENT OF GROUNDS

**1.      THE IMPOSITION OF ADDITIONAL FRAUD PENALTIES SHOULD BE DELETED BECAUSE THE UNDERPAYMENT WAS NOT THE RESULT OF FRAUD OR A KNOWING OR WILLFUL INTENT TO EVADE TAXES.**

Petitioner disputes the application of the Fraud Penalty Assessment in the absence of any evidence or findings that the audit disclosed willful evasion of the tax or fraud. Specifically, there is no evidence, nor have any allegations been made or substantiated that Petitioner altered, destroyed, or concealed any record, document, or thing, or presented to the comptroller any altered or fraudulent record, document or thing, or otherwise engaged in fraudulent conduct, for the apparent purpose of affecting the course or outcome of the audit, investigation, redetermination, or other proceeding before the comptroller as required by TEX.TAX CODE ANN. § 111.061.

A penalty assessment under Section 111.061(b) (1) will not be upheld unless there is clear and convincing evidence of a taxpayer's willful or fraudulent failure to pay the tax. See Rule 1.40(1) (B). See also Webb v. Commissioner of Internal Revenue, 394 F. 2d 366 (1968) [Fraud with the intent to evade tax requires actual, intentional wrongdoing with a specific purpose to evade]. Petitioner requests the Comptroller to more specifically allege and prove the conduct which constitutes fraud or willful evasion of the tax.

**2.      THE IMPOSITION OF PERSONAL LIABILITY AND ADDITIONAL FRAUD PENALTIES SHOULD BE DELETED BECAUSE THERE IS NO PROOF THAT PETITIONER HAS TAKEN ANY ACTION OR PARTICIPATED IN ANY FRAUDULENT SCHEME OR FRAUDULENT PLAN TO EVADE THE PAYMENT OF TAXES DUE UNDER TITLE 2 OR 3, AND THE AUDITOR HAS MADE NO SUCH ALLEGATIONS OR SUBMITTED ANY PROOF IN SUPPORT OF SUCH ALLEGATIONS.**

TAX CODE § 111.0611, the Personal Liability statute, permits the imposition of the liability on a responsible party who "took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes due under Title 2 or 3." The statute sets forth the following criteria which may give rise to this enforcement procedure:

(1) filing, or causing to be filed, a fraudulent tax return or report with the comptroller on behalf of the business entity;

(2) intentionally failing to file a tax return, report, or other required document with the comptroller when the business entity is under a legal obligation to file;

(3) filing, or causing to be filed, a tax return or report with the comptroller on behalf of the business entity that contains an intentionally false statement that results in the amount of the tax due exceeding the amount of tax reported by 25 percent or more; and

(4) altering, destroying, or concealing any record, document, or thing, presenting to the comptroller any altered or fraudulent record, document, or thing, or otherwise engaging in fraudulent conduct with the intent to affect the course or outcome of a comptroller audit or investigation, a redetermination hearing, or another proceeding involving the comptroller.

The Comptroller has not advised the Petitioner which of these activities he is being accused of committing. Please do so, and we will provide an appropriate response.

*Request for Redetermination Hearing, Personal Liability of Rubina Noorani*

**3.** **THE JEOPARDY DETERMINATION SHOULD BE DELETED BECAUSE ITS UNCONSTITUTIONALLY VAGUE AND A DENIAL OF DUE PROCESS BECAUSE ITS IMPOSITION CONSTITUTES AN ABUSE OF DISCRETION BY THE STATE AS IT IS ARBITRARY, CAPRICIOUS, UNREASONABLE, AND WITHOUT FOUNDATION AND WAS ISSUED WITHOUT ANY GUIDING PRINCIPLES FOR SUCH DETERMINATION.**

Pursuant to TAX CODE § 111.022, the comptroller may issue a Jeopardy Determination merely on her subjective *belief* that the collection of a tax required to be paid to the state or the amount due for a tax period is jeopardized by delay. Neither the statute nor the regulations provide any objective criteria upon which this belief must be made, thereby authorizing the comptroller to make this determination without any guiding principles to do so.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* Thus, for a statute not to be unconstitutionally vague, it must be sufficiently clear in at least three respects: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) if First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. Id. at 108-09; Long v. State, 931 S.W.2d 285, 287 (Tex.Crim.App. 1996).

Accordingly TAX CODE § 111.022 is by its nature a denial of substantive and procedural due process and constitutionally vague when it permits the Jeopardy Determination to be made merely on undefined subjective criteria, and consequently the determination should be deleted.

**4.** **THE INTEREST SHOULD BE DELETED BECAUSE UNPAID TAXES DRAW INTEREST BEGINNING 60 DAYS AFTER THE DATE ON WHICH THE TAX OR THE AMOUNT OF THE TAX REQUIRED TO BE COLLECTED BECAME DUE AND PAYABLE TO THE STATE.** TAX CODE § 151.512.

Interest does not accrue on delinquent taxes for the first 60 days following the due date. Tex. Tax Code Ann. § 111.060(c). The amount of a determination made under this code is not due and payable until 20 days after a comptroller's decision in a redetermination hearing becomes final. Tex. Tax Code Ann. § 111.0081. Accordingly, no interest is due, and should not begin to accrue, until 60 days after the Comptroller's decision becomes final. *See, In re AL Copeland Enterprises, Inc.*, (Bankr.W.D.Tex. 1991).

Respectfully submitted,

*Law Office of Samuel T. Jackson*

By: *Samuel T. Jackson*
Samuel T. Jackson
State Bar No. 10495700
jacksonlaw@hotmail.com

EXHIBIT J

ISBA REQUEST FOR REDETERMINATION

# JUSAIR GROUP ,INC.
## ACCOUNTING AND TAX SERVICES

Office xxxxxxxxxxx
, xxxxxxxxxxx
May 13, 2013

## REQUEST FOR REDETERMINATION HEARING

<u>Via Certified Mail Return Receipt</u>
and first class mail'

Comptroller of Public Accounts
-Audit Processing
111 E. 17[1] Stieet'
Austill ,Texas 78774-0100

. Received

MA\' 1 6 2013

Audit F-ocesslng
mptroller of Public Accounts

RE: Taxpayer No. xxxxxxxxxxx
Mahmoud Ahmad lsba
Xxxxxxxxxxxxxxxxxx
Fort Worth , *TX* xxxxx

Dear Sir or Madam:

This letter services as a request for r,.determination hearing'following the notification of the audit result on the above-reference taxpayer. The audit period was 03/0 J /2009 through 09/30/2012

My client, Mahmoud Ahmad Isba d/b/a Nevine Fqod Store, does not agree with the determination of the tax due on the audit because of the use of estimated sales.

Nevine Food Store is an economically depressed neighborhood of Fort Worth and is located far from highways. The markup rates for beer and tobacco used in this audit is higher than the actual markup rates for this business due to the sampling method sed ..Recalculation of record would significantly reduce any tax liability and eliminate penalties.

For the foregoing reason , my client requests redetermination of the tax dtermination made on April 11,2013.

Please contact me regarding this request for redetermination. ·

Sincerely,

Naser Abdulrazeq
president

· Received

MAY 16 2013

Audit Division
Comptroller of Public Accounts

RED.REQ DUE: Q5•t?> .℃3 PM: OS•\3·l55
I POA Attached:_____
' POA needed:.© POA rec'd:._____
; SOG OK: Y\1., SOG lnsuff:_____
i Suff. SOG rec'd: ____ SOGOK:_____

EXHIBIT J

JUSAIR GROUP, INC.
xxxxxxxxxxxxxxxxxxXxxxxxxxxx
Arlington, *TX* xxxxx

**Received**
MAY 19 2013
Audit Oivis101:
comptroller of Public Accoun



COMPTROLLER OF PUBLIC ACCOUNTS
1 1 I E. 17th Street
Austin, Texas 78774-0100

78774            ,,,,,,,,,,,,,,,,,,1,,,,,,,,,.11.111.t·l11• 111Jll111• 111l l11il•l'1"

EXHIBIT K

ISBA COMPTROLLER'S DECISION

August 8, 2014

Samuel Jackson
The Law Office of Samuel T. Jackson
P.O. Box 170633
Arlington. TX 76033-0633

Re:      Mahmoud Ahmed lsba
         Hearing No. 110,485
         Taxpayer No. xxxxxxxxxx

The Comptroller•s Decision (Decision) on your Petition for Redetermination is enclosed. Attachment A to the Decision reflects your total liability for the period covered by the Decision. As noted in Attachment, additional daily interest will continue to accrue through the date of your payment.

Unless a motion for rehearing is timely filed, the Decision will become final on September 2, 2014, and your total liability plus the additional daily interest will be due and payable twenty days thereafter. If you fail to timely file a motion for rehearing or pay the total liability, as well as any additional accrued interest, within twenty days after the date the Decision becomes final, an additional 10% penalty will be assessed on the tax due and interest will continue to accrue.

A motion for rehearing can only be filed with the Special Counsel for Tax Hearings at P.O. Bo.x 13528, Austin. Texas 78711-3528 or by facsimile at 512-936-6190. However, a copy must be filed with the Assistant General Counsel in the Administrative Hearings Section. If you have any questions about the procedures for filing a motion for rehearing or a waiver of the right to file a motion for rehearing, you may contact the Assistant General Counsel, Isreal Miller, by calling toll-free 800531-5441, extension 3-4612. The regular number is 512-463-4612.

Chris .Kadas
Special Coume1 for Tax Hearings

cc:      Isreal Miller, Representing Tax Division
         Mahmoud Ahmed Isba

## HEARING NO. 10,485

RE: MAHMOUD AHMED ISBA

§ BEFORE THE COMPTROLLER
§ OF PUBLIC ACCOUNTS
§ OF THE STATE OF TEXAS
§
§ SUSAN COMBS
§ Texas Comptroller of Public Accounts
§

TAXPAYER NO: xxxxxxxxxxx
AUDIT omCB: Fort Worth 2140
AUDIT PERIOD: March 1, 2009
 THROUGH September 30, 2012

§ ISREAL MILLER
§ Representing Tax Division
§
§ SAMUEL T. JACKSON
§ Representing Petitioner

Sales and Use Tax/RDT

### COMPTROLLER'S
### DECISION

On June 10, 2014, the Tax Division moved to dismiss this case for want of prosecution. Petitioner's liability has been calculated in accordance with the motion, and the resulting liability is set forth in Attachment A, which is incorporated herein by reference and approved and adopted in all respects. It is therefore ORDERED that the petition be dismissed and the audit be made final in accordance with the motion and Attachment A

This Decision becomes final twenty days after the date Petitioner receives notice of this Decision, and the total amount of the tax, penalty, and interest amounts is due and payable within twenty days thereafter. If such sum is not paid within such time, an additional penalty of ten percent of the taxes due will accrue, and interest will continue to accrue. If either party desires a rehearing, that party must file a motion for rehearing, which must state the grounds for rehearing no later than twenty days after the date Petitioner receives notice of this Decision. Notice of this Decision is presumed to occur on the third day after the date of this Decision.

Signed on *this* day of August 2014.

SUSAN COMBS
 Comptroller of Public Accowit1

by: _____
 Martin A. Hubert
 Deputy Comptroller

EXHIBIT K

EXHIBIT L

ISBA DENIAL OF MTN FOR REHEARING

# HEARING NO. 110,485

RE: MAHMOUD AHMED ISBA

§ BEFORE THE COMPTROLLER
§ OF PUBLIC ACCOUNTS
§ OF THE STATE OF TEXAS
§
§ SUSAN COMBS
§ Texas Comptroller of Public Accounts

TAXPAYER NO: xxxxxxxxxx
AUDIT OFFICE: Audit Ft. Worth 2I40
AUDIT PERIOD: March 1, 2009
   THROUGH September 30, 2012

§
§ ISREAL MILLER
§ Representing Tax Division
§

Sales And Use Tax/RDT

§ SAMUEL T. JACKSON
§ Representing Petitioner

## ORDER DENYING MOTION FOR REHEARING

On September 1, 2014, Petitioner timely filed a Motion for Rehearing concerning the August 8, 2014 Comptroller's Decision issued in the above-referenced matter. On September 2, 2014, the Tax Division filed its Reply opposing Petitioner's Motion.

Having considered Petitioner's Motion and the Tax Division's Reply, it is concluded that the Motion for Rehearing does not raise any legal or factual grounds that would affect the decision of the Comptroller. It is accordingly ORDERED that the Motion for Rehearing be, and is hereby, DENIED.

The Comptroller's Decision becomes final on the date of this Order Denying Motion for Rehearing, and the total sum of the tax, penalty, and interest is due and payable within twenty (20) days thereafter. If such sum is not paid timely, an additional penalty of ten percent of the taxes due will accrue and interest will continue to accrue until the taxes owed are paid.

All parties of record are being notified by copy of this Order.

Signed on this \ to% day of September 2014.

SUSAN COMBS
Comptroller of Public Accounts

by: _____
Martin A. Hubert
Deputy Comptroller

EXHIBIT L

EXHIBIT M

ISBA BOND

# TEXAS COMPTROLLER *of* PUBLIC ACCOUNTS

P.O. Box 13528 · Austin, TX 78711-3528



06/17/2014

MAHMOUD AHMED ISBA
XXXXXXXXXX BLVD
FORT WORTH TX 76104-3853

## NOTICE: TEXAS BOND OR SECURITY IS REQUIRED FOR
### LIMITED SALES, EXCISE, AND USE TAX

Taxpayer number: **XXXXXXXXX**

An analysis of your LIMITED SALES, EXCISE, AND USE TAX
account shows that at this time you need to furnish a bond or security in the
amount of $    9,000.00 to the Comptroller for the following reason:

Failure to post bond for your LIMITED SALES, EXCISE, AND USE TAX PERMIT.

If you do not comply with this notice by June 27, 2014        this office will
take all appropriate steps to assure compliance. These include, but are not
limited to the following: revocation or suspension of any permit, license, or
certificate issued by the Comptroller; withholding of state issued warrants;
freezing of assets; seizure and sale of properties. (TEX. TAX CODE ANN. SECS.
111.0047, 111.021, 111.017 and 111.018)

Please contact the following field office to furnish the bond or security:

Comptroller's Enforcement Office
2108 E RANDOL MILL RD STE 100
ARLINGTON            TX 76011-8228
Telephone: (817)459-1155

After two (2) consecutive years of continuous compliance with the conditions
of the bond or security provisions your bond or security will be released.

Form 00-227 (Rev.4-12/4)

EXHIBIT N

ISBA PETITION FOR JUDICIAL REVIEW

CAUSE NO.  D-1-GN-13-4352

| | | |
|---|---|---|
| **SANADCO INC, A TEXAS CORPORATION,** | § | **IN THE DISTRICT COURT** |
| **MAHMOUD AHMED ISBA, BROADWAY** | § | |
| **GROCERY, INC., SHARIZ, INC., AND RUBY &** | § | |
| **SONS STORE, INC., AND RUBINA NOORANI,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **VS** | § | |
| | § | |
| **SUSAN COMBS, IN HER INDIVIDUAL** | § | **TRAVIS COUNTY, TEXAS** |
| **AND OFFICIAL CAPACITY** | § | |
| **AS COMPTROLLER OF PUBLIC ACCOUNTS,** | § | |
| | § | |
| **OFFICE OF COMPTROLLER OF PUBLIC** | § | |
| **ACCOUNTS FOR THE STATE OF TEXAS,** | § | |
| | § | |
| **AND GREGG ABBOTT IN HIS OFFICIAL** | § | |
| **CAPACITY AS ATTORNEY GENERAL OF** | § | |
| **THE STATE OF TEXAS** | § | |
| *Defendants* | § | **200TH JUDICIAL DISTRICT** |

**_____**

**PLAINTIFFS' THIRD AMENDED PETITION FOR JUDICIAL REVIEW,
DECLARATORY JUDGMENT, TEMPORARY INJUNCTION
AND REQUEST FOR DISCLOSURE**
**_____**

COME NOW **SANADCO INC**. and **MAHMOUD AHMED ISBA**, et al, Plaintiffs, who file this Second Amended Petition for Judicial Review, Declaratory Judgment and Temporary Injunction from a pending Comptroller's Decision in a contested case proceeding before the State Office of Administrative Hearings, and joining Plaintiffs **RUBI & SONS STORE, INC**. and **RUBINA NOORANI**, and **Mahmoud A. Isba**, complaining of SUSAN COMBS, in her individual and official capacity as Texas Comptroller of Public Accounts, and GREG ABBOTT, in his official capacity as Texas Attorney General ("Defendants"), and for cause would respectfully show the following:

EXHIBIT N

## I.
## DISCOVERY CONTROL PLAN

1. Plaintiffs designate this case as a Level 2 case requiring a discovery control plan tailored to the circumstances of this particular suit pursuant to Texas Rule of Civil Procedure 190.4.

## II.
## REQUEST FOR DISCLOSURE

2. Pursuant to Texas Rules of Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of service of this request, all of the information or material described in Rule 194.2.

## III.
## PARTIES

3.        Sanadco Inc., Plaintiff, is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at xxxxxxxxxxxxxxx, Fort Worth, Texas 76105-1732, and whose Taxpayer No. is xxxxxxxxxxx.

4.        Mahmoud A. Isba, Plaintiff, is an individual who resides in Arlington, Tarrant County TX and operates the convenience store owned by Sanadco Inc., located at xxxxxxxxxxxxxxxxxxxx., Fort Worth, Texas xxxxxxxxxxx, and whose Taxpayer No. is xxxxxxxxxxx.

5.        Broadway Grocery Inc., Plaintiff, is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at xxxxxxxxxxxxxxxx, San Antonio, Texas xxxxxxxxxx, and whose Taxpayer No. is xxxxxxxxxxx

6.        Shariz, Inc., Plaintiff, is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at xxxxxxxxxxx, xxxxxxxxxxx, Sugarland, TX xxxxx, and whose Taxpayer No. is xxxxxxxxxxx.

7.        Plaintiffs Rubi & Sons Store, Inc. and Rubina Noorani join this petition on all claims as Petitioners in a suit currently on file with the State Office of

Administrative Hearings who have not yet exhausted their administrative remedies, but an audit has been initiated by the Comptroller of Public Accounts.

8.       Mahmoud A. Isba, Plaintiff, as owner and operator of Nevine Food Store #2, located at xxxxxxxxxxxxxxxxxxxxxxxx., Ft. Worth, TX,  joins this Petition on all claims as the Petitioner in Case No. 110,485 with the State Office of Administratrative Hearings for audit periods March 1, 2009 thru September 30, 2012.

9.       Defendant, Susan Combs (hereinafter referred to as ("Comptroller"), joined herein as a necessary party in her and official capacity as Texas Comptroller of Public Accounts, and in her individual capacity for purposes of certain of Plaintiffs' claims that certain described actions as set forth below are ultra vires and she was acting beyond the scope of her lawful authority. Susan Combs is a public official who is charged with the collection of Limited Sales, Excise and Use Taxes pursuant to the Texas Tax Code and may be served by personal service at 111 East 17th Street, Austin, Texas 78774.

10.      Defendant, Gregg Abbott in his official capacity as the Attorney General of Texas, joined herein as a necessary party in his official capacity, is a state agency as defined by TEX. GOV'T. CODE ANN. § 2001.003 (7), having statewide jurisdiction which makes rules and determines contested cases and may be served by personal service at 209 West 14th Street, 8th Floor, Austin, Texas 78701.

## IV.
## JURISDICTION AND VENUE

11.      This is an action seeking declaratory and injunctive relief from contested case proceedings pending issuance of the Comptroller's Decision before the State Office of Administrative Hearings (SOAH) against Plaintiffs.

12.      This court has subject matter jurisdiction to determine the validity of AP 92 and AP 122, and enter declaratory relief pursuant to TEX. GOV'T. CODE ANN. § 2001.038, wherein sovereign immunity has been waived when it is alleged that a rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

13.      This Court has subject matter jurisdiction pursuant to the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE ANN. § 37.001  et seq., by which sovereign immunity has been waived and authorizes Plaintiffs to obtain a declaration of rights, status, or other legal relations affected by a statute; and

against a state official who engages in ultra vires acts without legal or statutory authority, or refuses to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009).

14.     This Court has subject matter jurisdiction pursuant to TEX. GOV'T CODE ANN. §§ 2001.171, 2001.173 and 2001.174, seeking judicial review from a pending final decision in a contested case before the State Office of Administrative Hearings. *See, Lindig v. Johnson City*, 03-08-00574-CV (Tex. App.-Austin 10-21-2009). (a premature petition for judicial review may be cured if there is a claim over which the court obtained jurisdiction under its general jurisdictional authority.)

15.     This Court has subject matter jurisdiction pursuant to TEX. CONST. ART. I, § 19.

## V.
## SUMMARY OF FACTS

16.     On August 17, 2004, after the Comptroller became aware of lack of uniformity in convenience store audits, she issued a policy memorandum implementing new procedures for convenience store audits entitled Audit Policy 92 (AP 92), directing all auditors, *inter alia*, to conduct a shelf test during convenience store audits if the taxpayer is still in business, and use the percentages designated in AP 92 as the mark-up for beer and tobacco products if the records of a convenience store are "unavailable, inadequate, or unreliable" and if the actual mark-up percentage could not be ascertained by other means.

17.     Effective September 1, 2007, the Texas Legislature enacted legislation directing each wholesaler or distributor of beer, wine, malt liquor or tobacco products to file a report with the Comptroller detailing the monthly net sales made to the retailer by the wholesaler or distributor, including the quantity and units of beer, wine, malt liquor and tobacco products sold to the retailer. (Tex. Tax Code § Tex. Tax Code § 151.462 (a) and Tex. Tax Code § 155.105[1]. The data provided as a

---

[1] § 155.105 Reports by Wholesalers and Distributors of Cigars and Tobacco Products

(a) The comptroller may, when considered necessary by the comptroller for the administration of a tax under this chapter, require each wholesaler or distributor of cigars and tobacco products to file with the comptroller a report each month of sales to retailers in this state.

(b) The wholesaler or distributor shall file the report on or before the 25th day of each month. The report must contain the following information for the preceding calendar month's sales in relation to each retailer

* * *

result of the legislation is commonly referred to as HB 11 data, but no directives regarding its use accompanied the legislation. The first reports became available on January 1, 2008.

18. After HB 11 became effective, the Comptroller revised AP 92with AP 122 effective July 22, 2009, by revising the audit procedures and determination of mark-up percentages and incorporating HB11, instructing that this data must be the starting point for all convenience store audits whether used as internal control verification or as data used to estimate the audit.

19. The Comptroller is statutorily authorized to conduct a detailed audit of selected convenience stores throughout the state, and upon a determination that the store records are inadequate or insufficient, to conduct a sample and projection audit and, in the absence of any records, may utilize the best information available. Tex. Tax Code Ann. § 111.0042.

20. The Comptroller subsequently notifies Plaintiffs that they have been assessed a deficiency determination, including interest, and, if proven by clear and convincing evidence, an additional 50% fraud penalty and/or an additional 10% jeopardy determination penalty which becomes due if the deficiency is not paid on or before the assessment becomes final, but tax liens may be immediately attached to the subject property.

21. Plaintiffs must file a Request for Redetermination with the Comptroller within 20 days of the date of the notice or the assessment becomes final and immediately due.

22. If the Comptroller denies the redetermination, Plaintiffs may request a hearing before the State Office of Administrative Hearings, and, if aggrieved by that determination, may request a rehearing followed by suit in District Court in Travis County, Texas.  If no rehearing is requested, the tax assessment becomes a final judgment.

23. Sanadco Inc. and Mahmoud A. Isba timely filed a request for redetermination in SOAH Docket No. 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.26, TCPA Hearing No. 106,815,

_____

(4) the monthly net sales made to the retailer by the wholesaler or distributor, including:
(A) the quantity and units of cigars and tobacco products sold to the retailer; and
(B) for each unit of tobacco products other than cigars, the net weight as listed by the manufacturer.

and SOAH Docket No. 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.26, TCPA Hearing No. 107,006, respectively, and joined for the sake of efficiency. A hearing was held before the SOAH on September 9, 2013, but the ALJ requested post-hearing briefs from both parties. Plaintiffs filed their brief on October 6, 2013, the Comptroller filed her response on November 4, 2013 and the Proposal for Decision was issued on December 12, 2013. The Comptroller issued her Decision on June 16, 2014 and Petitioners timely filed their Motion for Rehearing which was denied by the Comptroller on July 15, 2014, thereby exhausting Plaintiffs' administrative remedies.

24. Mahmoud A. Isba, as owner and operator of Nevine Food Store, filed a request for redetermination on May 13, 2013, and his request for hearing was dismissed by the Comptroller for lack of prosecution in Hearing No. 110,485. Plaintiff filed a timely motion for rehearing which was denied by the Comptroller on September 16, 2014. Mr. Isba, having exhausted his administrative remedies, files this Petition for Judicial Review, by joining as a Plaintiff in this cause.

25. Plaintiff, Broadway Grocery Inc., is engaged in a contested case proceeding in the State Office of Administrative Hearings regarding an alleged sales and use tax deficiency in Docket Number 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.26, TCPA HRG No. 109,293 and timely filed a Request for Redetermination on July 30, 2012, and a hearing was held before SOAH on August 1, 2014, but no Comptroller's Decision has been rendered.

26. Plaintiff, Shariz, Inc., is engaged in a contested case proceeding in the State Office of Administrative Hearings regarding an alleged sales and use tax deficiency in TCPA HRG No. 108,636 but has not yet been transferred to SOAH.

27. Plaintiffs, Rubi & Sons Store, Inc. is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at 622 W. Garland St, Grand Saline, TX, 75140, and whose taxpayer number is 3-20-1712639-5. The Comptroller has initiated, but not completed, an audit at Plaintiff's convenience store.

## V.
## RELIEF SOUGHT

28. Plaintiffs are engaged in contested case proceedings before the State Office of Administrative Hearings regarding alleged sales and use tax deficiency, but no final decision has been entered by the Comptroller.

29.	Plaintiffs seek to void the underlying audit, alleging that the auditor acted fraudulently by his unauthorized use of AP 92 and AP 122 as well as HB 11 despite the recent Third Court of Appeals opinion that these documents were "invalid rules" and therefore void and unenforceable because they were not formally adopted pursuant to the mandatory provisions of the Administrative Procedures Act. *See*, *Sanadco, Inc. v. Comptroller of Public Accounts*, 03-11-00462 (Tex. App. – Austin 2013); LEXIS 12013 at *13 (Tex. App.—Austin Sept 26, 2013).

30.	Plaintiffs also seek to void the underlying audit, alleging that the Comptroller engaged in ultra vires conduct by failing to perform the purely ministerial act of promulgating AP 92 and AP 122 as administrative rules, and subsequently acting without legal authority by implementing the illegal and unauthorized memos as agency policy and procedure.

31.	Plaintiffs further seek to void all instances in which the Comptroller imposed the additional 50% fraud penalty upon the mere finding of "underreporting" instead of the statutorily required finding of fraud or willful intent to evade the tax. In doing so, the Comptroller has engaged in conduct in excess of her statutory authority by substantially reducing her burden of proof and shifting that burden to the taxpayer by requiring him to prove that his conduct was not willful or intentional. Plaintiffs allege that this is ultra vires conduct and is outside the Comptroller's statutory authority.

32.	SOAH has acknowledged that the foregoing issues are beyond the jurisdictional authority of the Administrative Law Judge and have therefore refused to address them within the parameters of a contested case proceeding. *See,* Comptroller's Decision No. 106,516 (2013) (The ALJ does not have jurisdiction to consider whether Audit Policy Memorandums 92 and 122 constitute rules as defined by the Administrative Procedure Act.); Comptroller's Decision No. 106,516 (2013) (Petitioner also contends the 50% additional penalty should be deleted because the statute authorizing the additional penalties is unconstitutional and because there was no intent to evade the tax.  However, it is well settled that neither the Comptroller nor the ALJ has jurisdiction to consider the validity or constitutionality of a statute.); See also, Comptroller's Decision Nos. 103,683, 103,961(2011), 104,445, 105,726 (2012).

33. In the absence of jurisdiction for SOAH to address these issues—which may be determinative of the validity of the audits—Petitioners seek to have these issues addressed by this Court under the authority of Tex. Gov't Code § 2001.038 together with the authorities previously recited wherein this Court is granted jurisdiction to determine the validity or applicability of a rule *before* it is applied to the detriment of this taxpayer, *Montemayor v. City of San Antonio Fire Dept.,* 985 S.W.2d 549, 551 (Tex.App.-San Antonio 1998, pet. denied), and *before* he has exhausted his administrative remedies. *R Commc'ns, Inc. v. Sharp*, 875 S.W.2d 314, 317-18 (Tex. 1994); *PUC of Texas v. City of Austin*, 728 S.W.2d 907 (Tex.App.-Austin 1987); *Combs v. Texas Entertainment Ass.,* 287 S.W.3d 852 (Tex.App.-Austin 2009).

## COMPLAINT I

**The Comptroller engaged in ultra vires conduct because she failed or refused to perform the purely ministerial act of adopting the memoranda designated as AP 92 and AP 122 as agency rules pursuant to procedures required by the APA, thereby rendering the audits utilizing these procedures invalid and unenforceable.**

34. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

35. The Comptroller's memos implementing Audit Policy Memoranda 92 and 122 (AP 92 and AP 122) effective August 17, 2004, and July 22, 2009 respectively, are agency rules as defined by Tex. Gov't Code § 2001.003 (6). The use of these rules or their threatened application interfere with or impair, or threaten to interfere with or impair, a legal right or privilege of the Plaintiff in that they subject Plaintiff to potential loss of his business, his license, illegal tax assessments and subjecting his property to liens and potentially to forcible sale.

36. The Audit Policy Memoranda regarding AP 92, AP 122 and HB 11 constitute agency rules as defined by the Administrative Procedures Act (APA) because they are statements of general applicability relating to all convenience store audits; that implemented agency policy to add uniformity to the audits; and described the procedure or practice requirements of the agency by implementing the use of HB 11 and the percentages for mark-ups and product mixes incorporated in AP 92 and AP 122.

37. The Comptroller is charged with establishing methods for administering and adopting necessary rules for the collection of taxes and other revenues. Tex.

Tax Code Ann. § 111.002(a). Specifically, the Comptroller has statutory authority to "adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title." *Id.*

38. A presumption favors adopting rules of general applicability through the formal rule-making procedures the APA sets out. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex. 1999). These procedures include providing notice, publication, and public comment on the proposed rule. *Id.* (citing Tex. Gov't Code Ann. §§ 2001.023-.030). The process assures notice to the public and affected persons and an opportunity to be heard on matters that affect them. *Id.*

39. Unless a rule is promulgated and adopted in accordance with the requirements of the APA, it is invalid and unenforceable. Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005. Neither AP 92 nor AP 122 as it relates to HB 11, were ever adopted as mandated by the APA and are therefore invalid and unenforceable when applied to convenience store audits.

40. Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.*, which waive sovereign immunity, declaring that the Comptroller's memoranda, designated as AP 92, AP 122 (incorporating HB 11), are invalid administrative rules because they were not adopted in accordance with the requirements of the APA found at Tex. Gov't Code Ann. §§ 2001.035 and 2001.004. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n,* 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT II

**The comptroller acted ultra vires because she acted without legal authority by implementing and enforcing AP 92, AP 122 and HB 11 before performing the purely ministerial act of adopting them as Rules in compliance with the nondiscretionary, purely ministerial rule-making procedures mandated by the APA.**

41. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

42. The Comptroller is charged with establishing methods for administering

and adopting necessary rules for the collection of taxes and other revenues. Tex. Tax Code Ann. § 111.002(a). Specifically, the Comptroller has statutory authority to "adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title." Id.

43.        Suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity. *Heinrich*, 284 S.W.3d at 372. To fall within the *ultra vires* exception to sovereign immunity, a suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (citations omitted). "Thus, *ultra vires* suits do not attempt to exert control over the state — they attempt to reassert the control of the state. Stated another way, these suits do not seek to alter government policy but rather to enforce existing policy." *Id.*

44.        Unless a rule is promulgated and adopted in accordance with the requirements of the APA, it is invalid and unenforceable. Tex. Gov't. Code Ann. §§ Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005. The Comptroller has no legal authority to enforce agency rules before they are adopted in accordance with the APA. Such adoption is mandatory and nondiscretionary. The Comptroller's failure to comply with this ministerial, nondiscretionary act was therefore an ultra vires act. This Court is respectfully requested to enjoin the use of AP 92 and AP 122 until they are properly adopted as rules pursuant to the requirements of the APA.

45.        Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq*., declaring that the Comptroller is not authorized to estimate convenience store audits using the methods prescribed by AP 92 or AP 122 until their proper adoption, and/or that the authorization of their use is a non-discretionary ultra vires act committed without legal authority which conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n,* 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc*., 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

**COMPLAINT IV**

**The Comptroller acted ultra vires and in excess of her statutory authority when she unilaterally established "gross underreporting" as an irrebuttable presumption of proof to impose the additional 50% penalty instead of proof of fraud or intent to avoid the tax as required by Tex. Tax Code Ann. § 111.061(b).**

46.    Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

47.    Tex. Tax Code § 111.061(b) authorizes the Comptroller to impose a penalty of 50% for fraud, or intent to evade the tax, in addition to the deficiency determination. When the Comptroller seeks to impose a 50 percent additional penalty it must show clear and convincing evidence of fraud or intent to evade tax. TEX. TAX CODE Section 111.061(b) and 34 TEX. ADMIN. CODE Section 1.40 (1) (B)

48.    Fraud implies "bad faith, intentional wrong, and a sinister motive, and the intent required to be showed is that there was specific intent to evade tax believed to be owing."   Comptroller's Decision No. 34,499 (1997). The Comptroller, however, has held on many occasions that "gross underreporting of taxable sales, along with other factors or no plausible explanation, is sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty. Comptroller's Decision No. 101,911; See Rule 1.40(1) (B).

49.    The burden proof is on the Comptroller to prove by clear and convincing evidence that the failure to pay the tax was willful or fraudulent. 34 Tex. Admin. Code Section 1.40(1) (B). Although she claims to bear this burden, the Comptroller has authorized a finding of fraud upon the irrebuttable presumption that a 25% underreporting constitutes fraud, thereby unlawfully shifting the burden to the taxpayer to provide some plausible reason for the underreporting.

50.    An agency's interpretation of a statute it is charged with enforcing is entitled to serious consideration, so long as the construction is reasonable and does not conflict with the statute's language. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). An agency's opinion, however, cannot change plain language, nor contradict statutory text. *Combs v. Health Care Services Corp*., 401 S.W.3d 623 (Tex. 2013); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006).

51. The Comptroller has exceeded her statutory authority by reducing the burden of proof required to establish fraud by eliminating the requirement of intent or

willfulness, and establishing an entirely new irrebuttable presumption standard of "gross underreporting", thereby clearly shifting the burden of proof in direct conflict with legislative and statutory authority.

52.    Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, construing Tex. Tax Code § 111.061(b) and declaring that the Comptroller has acted ultra vires, and in excess of her statutory authority by unlawfully creating a new irrebuttable standard of proof and shifting the burden of proof and authorizing the imposition of the 50% fraud penalty upon an irrebuttable finding of gross underreporting without a finding of fraud or intent to avoid the tax as required by the statute, and/or that such procedure conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations.


## COMPLAINT V

**The comptroller acted ultra vires because she acted without legal authority by implementing a completely new irrebuttable presumption of "gross underreporting" as proof of fraud or intent to avoid the tax as required by Tex. Tax Code § 111.061(b), before performing the purely ministerial act of adopting it as a rule in compliance with the nondiscretionary, purely ministerial rule-making procedures mandated by the APA.**

53. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

54.    Tex. Tax Code § 111.061(b) authorizes the Comptroller to impose a penalty of 50% for fraud, or intent to evade the tax, in addition to the deficiency determination. When the Comptroller seeks to impose a 50 percent additional penalty it must show clear and convincing evidence of fraud or intent to evade tax. TEX. TAX CODE Section 111.061(b) and 34 TEX. ADMIN. CODE Section 1.40 (1) (B)

55.    The Comptroller has, without statutory authority, created an entirely new irrebuttable presumption that the tax payer's underreporting of 25% or more is "sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty."

56.     There is no statutory provision or administrative regulation authorizing the Comptroller to determine fraud or the intent to invade the tax by giving conclusive effect to underreporting of taxable sales, without first ascertaining whether that determination includes willful, fraudulent intent.

57.     The Comptroller's creation of this new standard of proof is a rule as defined by Tex. Gov't Code § 2001.003 (6). The use of this rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Defendant by threatening loss of revenue or loss of property.

58.     The cases implementing the use of this irrebuttable presumption constitute rules as defined by the APA because they are of general application to convenience store audits, and they implement and prescribe policy and describe the procedure or practice requirements for imposing the additional 50% penalty.

59.     Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq*., declaring that the Comptroller is not authorized to impose the additional 50% penalty by implementing the irrebuttable presumption of underpayment as a substitute for a finding of fraud or intent to evade the tax until its proper adoption, and/or that the authorization of its use is a non-discretionary ultra vires act committed without legal authority which conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co*., 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc*., 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT VI

**Tex. Tax Code Ann. § 111.0042 authorizing sample and projection audits is unconstitutionally vague as written and as applied to plaintiffs.**

60.     Plaintiffs incorporates the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

61.     The Comptroller has the authority to examine the type of records she deems necessary for conducting a thorough audit of a taxpayer's records. See Tex.

Tax Code Ann. §§ 111.004, 111.008, and 151.023.

62.         Section 151.025 requires sellers to maintain (a) records of gross receipts, including documentation in the form of receipts, shipping manifests, invoices, and "other pertinent papers", (b) similar documentation relating to their purchases, and (c) records in the form of receipts, shipping manifests, invoices, "and other pertinent papers" that substantiate each claimed deduction or exclusion authorized by law.  See also, Rule 3.281(a) (2).

63.         The Comptroller is only authorized to conduct a sample and projection audit "when the taxpayer's records are inadequate or insufficient, so that a competent audit for the period in question is not otherwise possible." Tex. Tax Code Ann. § 111.0042 (b) (2).

64.         When records are inadequate to reflect the taxpayer's business operations, the Comptroller is authorized to estimate a taxpayer's liability based on the best information available. Tex. Tax Code § 111.0042(d). The Comptroller has held that the use of vendor records and the procedures set out in AP 92 satisfies the best information available requirement when no records or unreliable records are made available. *See* Comptroller's Decision No. 44,893 (2006).

65.         The types of records the taxpayer is required to maintain is extremely nebulous because of the inclusion of the statement "and other pertinent papers" accompanying each category of records required to be maintained. This leaves open the requirement to maintain records not included or described in the statute, providing little notice to the taxpayer of what is essential to meet the ill-defined requirements of the statute.

66.         The determination of whether the records are "inadequate" or "insufficient" is therefore discretionary with the auditor and thus whether a detailed audit based on a thorough review of the taxpayer's records or an estimated "desk audit", based on HB 11 data and AP 92 or AP 122 estimates will be required.

67.         There is no statutory guidance by which an auditor or the taxpayer may determine whether records are adequate or insufficient, and the records the auditor may require are boundless as a result of the vast array of records not specifically identified, but ostensibly permitted by the statute, such as sales summary records, general ledgers, purchase invoices, federal income tax returns, purchase journals, cash register tapes, fixed asset/depreciation schedules, daily

sales journals or Z-tapes. See SOAH Docket No. 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.26; Hearing No. 104,037.

68.        A court will find a rule unconstitutionally vague, in violation of due process, if it does not give fair notice of what conduct may be punished, and invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. U.S.C.A. Const. Amend. 14. *Vista Healthcare V. Texas*, 03-09-00178-CV (Tex.App.-Austin 8-26-2010). This statute fails to establish guidelines for its application and does not give fair notice to the taxpayer of the prohibited conduct, lending itself to discriminatory enforcement. It is therefore unconstitutionally vague and must be stricken.

69.        Plaintiffs seek a declaratory judgment against the Office of the Comptroller of Public Accounts, Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as the Attorney General for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code ANN. § 37.004 *et seq*., construing Tex. Tax Code § 111.0042, declaring that this statute is unconstitutional on its face and as applied to Plaintiffs because it is, by its nature, a denial of substantive and procedural due process and is constitutionally vague because it permits the audit to be made merely on undefined subjective criteria, and without providing any guidelines for the administration thereof.

## COMPLAINT VII

**Tex. Tax Code §111.022, authorizing a Jeopardy Determination without guidelines, is Unconstitutional on its face and as applied.**

70.        Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

71.        Tex. Tax Code § 111.022 authorizes the Comptroller to impose an additional 10% jeopardy determination penalty against a deficiency determination, which comes due immediately, if she "believes" that the collection of a tax required to be paid to the state or the amount due for a tax period is jeopardized by delay.

72.        The statute is purely discretionary because it establishes no parameters by which the Comptroller is to make this determination except for her undefined

"belief", and there is no statutory definition for the terms "jeopardized by delay".

73.    "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* Thus, for a statute not to be unconstitutionally vague, it must be sufficiently clear in at least three respects: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) if First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. Id. at 108-09; Long v. State, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996).

74.    A court will find a rule unconstitutionally vague, in violation of due process, if it does not give fair notice of what conduct may be punished, and invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. U.S.C.A. Const. Amend. 14. *Vista Healthcare V. Texas*, 03-09-00178-CV (Tex.App.-Austin 8-26-2010). This statute fails to establish guidelines for its application and does not give fair notice to the taxpayer of the prohibited conduct, lending itself to discriminatory enforcement. It is therefore unconstitutionally vague and must be stricken.

75.    Plaintiffs seek a declaratory judgment against the Office of the Comptroller of Public Accounts, Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as the Attorney General for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq*., construing Tex. Tax Code § 111.022 and declaring that the statute is unconstitutional on its face and as applied to Plaintiffs because it is, by its nature, a denial of substantive and procedural due process and unconstitutionally vague because it permits the Jeopardy Determination to be made merely on undefined subjective criteria, and without providing any guidelines for the administration thereof.

## VIII. Attorney's Fees

Pursuant to Tex Gov't Code Ann § 2006.013[2] and Tex. Civ. Prac. & Rem. Code Ann. § 37.009, request is made for all costs and reasonable and necessary attorney's fees

---

[2] § 2006.013 GOV'T. Requirements for Recovery

incurred by Plaintiffs herein, including all attorney's fees and costs necessary in the event of an appeal or original proceeding to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

_____

**COUNTER-PLAINTIFFS' APPLICATION FOR TEMPORARY**
**AND PERMANENT INJUNCTIONS**
_____

1.      Defendants, Counter-Plaintiffs ("Plaintiffs") incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

2.      Plaintiffs, Counter-Defendants ("Defendants") are Susan Combs, Comptroller; Greg Abbott, Texas Attorney General; and the Office of the Comptroller, as previously described in this petition.

3.      Defendants' activities and omissions as described above and below are in violation of the mandated provisions of the Administrative Procedure Act (APA) and/or constitute ultra vires conduct in excess of the Comptroller's official capacity and subject to the Uniform Declaratory Judgments Act (UDJA), *Tex. Civ. Prac. & Rem. Code Ann. § 37.001 et seq,* and as described in *City of El Paso v. Heinrich*, 284 S.W.3d at 372 (Tex. 2009); *Combs v. Entertainment Publ'ns, Inc..*, 292 S.W.3d at, 720 (Tex.App.-Austin 2009, no pet.); *Texas Dep't. Of Protective & Regulatory Services v. Mega Child Care, Inc.*, 145 S.W.3d at 173 (Tex.  2004), including the following:

   i.  The Comptroller's failure or refusal to perform the purely ministerial act of adopting AP 92 and AP 122 as agency rules, as mandated by Tex. Gov't Code § 2001 *et seq.*
   ii.  The Comptroller's authorization and enforcement of policies and procedures that had not been promulgated as agency rules, as mandated by Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005, including the use of AP 92, AP 122 and HB 11 data.

_____

 (a) In an administrative adjudicatory proceeding or a civil action resulting from a complaint issued by a state agency against a small business under the agency's administrative or regulatory functions, the small business may be awarded reasonable attorney fees and court costs if:
 (1) it is a small business at the time it becomes a party to the proceeding or action;
 (2) it prevails in the proceeding or action; and
 (3) the proceeding or action was groundless and brought:
  (A) in bad faith; or
  (B) for purposes of harassment.

iii. The Comptroller's authorization to conduct "desk" audits and giving conclusive effect to HB11 data without determining the adequacy of plaintiffs' records in contravention of Tex. Tax Code Ann. § 111.0042 and 34 Tex. Admin. Code Section 3.281(c).

iv. The Comptroller's authorization, in excess of her statutory authority, to conduct estimated audits in contravention of Tex. Tax Code Ann. § 111.0042 which specifically restricts the Comptroller to either detailed or sample and projection audits when sales tax reports have been filed. The only time the Comptroller is statutorily authorized to *estimate* an audit is where the taxpayer *fails to file a sales tax report*. Tex. Tax Code Ann. § 151.503.

v. The Comptroller's unauthorized, ultra vires reduction of the burden of proof required to impose an additional 50% penalty from "fraud, or intent to avoid the tax" as required by Tex. Tax Code Ann. § 111.061(b), to "gross underreporting" of 25% of the tax due as developed by agency decisions absent its promulgation as a rule under the APA.

4. Plaintiffs have plead a cause of action against the Comptroller. As previously outlined in this petition, Plaintiff seeks a declaration under Tex. Gov't. Code Ann. § 2001.038 that AP 92 and AP 122 are invalid. Plaintiff seeks a declaration also under Tex. Civ. Prac. & Rem. Code § 37.004 that the Comptroller exceeded her statutory authority under Sections 111.0042 and 111.061 of the Texas Tax Code in authorizing estimated audits and the additional 50% penalty.

5. The Comptroller's ultra vires conduct in excess of her statutory authority continues to create invalid, unenforceable, fraudulent and illegal audits resulting in excessive and distorted deficiencies upon convenience store owners and operators subjecting them to the following pre-hearing enforcement remedies:

i. Imposition of a jeopardy determination from which taxes can be immediately and forcibly collected without filing a collection suit. Tex. Tax Code Ann. § 111.022.

ii. Perfection of a lien on all non-exempt property, real and personal, merely by filing a tax lien notice with the appropriate county clerk. Tex. Tax Code Ann. §§ 113.001-.002, attaching to all after-acquired property until the taxes are paid, Tex. Tax Code Ann. § 113.105, rendering the taxpayer's property virtually unsalable.

iii. Garnishment of the taxpayer's bank accounts and freezing of property held by third parties without the requirement of a hearing. *See* Tex. Tax Code Ann. §§ 111.021, 113.103.

iv. Seizure and auctioning of the taxpayer's property, or, after affording a hearing, revoking the taxpayer's sales tax permit. *See* Tex. Tax Code Ann. §§ 111.0047, 111.017-.019.

v. Enjoining further sales of goods or services after revoking the sales tax permit, effectively closing a business. Tex. Tax Code Ann. § 151.262(a).

vi. Unilateral imposition of a bond to secure payment of the deficiency under the threat of revocation of the sales tax permit and effectively closure of the business without a hearing. Tex. Tax Code Ann. § 111.012.

vii. Refusal to renew sales tax permit due to delinquency or refusal to pay the tax. Tex. Tax Code Ann. § 111.0046.

viii. Continued accumulation of daily interest until a final judgment is reached.

ix. These remedies are cumulative, and may therefore be imposed simultaneously upon the taxpayer.

6. It is probable that Plaintiffs will prevail against Defendants on the merits and obtain permanent injunctive and declaratory relief prohibiting the use of the policies and procedure incorporated in AP 92 and AP 122 because it is indisputable that they are administrative rules as defined by the APA as statements of statewide application; that prescribe law or policy; and describes the procedure or practice requirements of the agency. Further, the Third Court of Appeals has already rendered a decision from the accelerated appeal declaring that AP 92 and AP 122 were invalid administrative rules subject to the provisions of the APA, because they had not been properly adopted under the mandatory requirements of the APA. *Jackson v. Office of the Comptroller of Public Accounts,* No. 03-11-00462 (Austin App.) (Sept. 28, 2013).

7. If the Plaintiffs' Application for Temporary Injunction is not granted, irreparable harm is imminent because denying the request for the injunctive relief will immediately subject defendants to the enforcement procedures outlined in paragraph 44 above without benefit of a hearing, based solely on the auditors' unconfirmed deficiency determinations.

8. The Plaintiffs will therefore potentially face the immediate imposition of property liens; seizure and sale of property and property rights; immediate garnishment and freezing of banking accounts; suspension or revocation of sales and use tax permits; imposition of onerous bond or security requirements; accrual of interest, and potential loss and destruction of their businesses without access to judicial intervention for which Defendants have no adequate remedy at law. (See ¶¶ 4 – 11, incorporated herein by reference).

9. Plaintiffs have no adequate remedy at law because the Comptroller is not subject to damages claims and these enforcement procedures are not subject to pre-deprivation hearings because any judicial remedy available is by appeal to the District Court after the enforcement procedures have already been applied. Tex. Tax Code Ann. §§ 111.0049, 162.007. By the time these remedies are accessed, the taxpayers will have already lost their permits, their right to engage in business, and the probable loss or sale of their business and assets.

10. Plaintiffs move the Court to set this request for a temporary injunction hearing, and after the hearing, enter a temporary injunction granting the relief requested herein and further enjoining Defendants from conducting any audits incorporating the procedure and practice requirements established in AP 92 and AP 122, or attempting to enforce deficiencies established as a result of the use of such procedures and practices.

11. To preserve the Plaintiffs rights during the pendency of this action, Defendants should be cited to appear and show cause why they should not be enjoined during the pendency of this cause from further engaging in any of the conduct or activities described herein.

12. Plaintiffs would therefore respectfully request the Court to grant the following relief:
    i. After notice and hearing, enter a temporary injunction, enjoining Plaintiffs, their agents and their employees from continuing to engage in the conduct or activities herein described, including, but not limited to, the use of the procedures described in AP 92 and AP 122 as herein described, in the conduct of convenience store audits.
    ii. After notice and hearing, abate the accumulation of interest where appropriate, pending a final determination on the merits.
    iii. After a final hearing on the merits of this cause, permanently enjoin Plaintiffs and all others acting in concert with them from engaging in

the activities and conduct described herein pending compliance with the relevant statutes, including the APA.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Defendants, Cross-Plaintiffs (Plaintiffs) pray that this Court, after notice and hearing:

1. Deny Plaintiff, Cross-Defendant's (Defendants) claims and enter a take nothing judgment.

2. Allow Plaintiffs to proceed with their claims in protest of the taxes, penalties and interest assessed in the decisions complained of without regard to the requirements of Tex. Tax Code §§ 112.108, 112.051, or 112.101 for the reason that Plaintiffs are unable to meet these financial requirements, and that such prohibition is in violation of the Open Courts provision of Article I, Sec. 13 of the Texas Constitution.

3. Enter judgments pursuant to the foregoing allegations making the following declarations as to Plaintiffs' rights:
   a.      that the Comptroller's memos AP 92 and AP 122 on August 17, 2004, and July 22, 2009 respectively, establishing and implementing procedures for the conduct of convenience store audits, are invalid administrative rules, and that the Comptroller's authorization of their use without complying with the APA requirements was ultra vires and exceeded the scope of her statutory authority, and that her failure to comply with the requirements of the APA was a failure to perform a purely ministerial, non-discretionary act, thereby entitling Plaintiffs to declaratory and injunctive relief from  the collection of these illegal, invalid and unenforceable taxes, penalties and interest;
   b.      that the Comptroller's memo of July 22, 2009, implementing and establishing procedures for the use of HB11 data, is an invalid administrative rule, and that the Comptroller's authorization of its use without complying with the APA requirements was a non-discretionary, ultra vires act which exceeded the scope of her statutory authority, and that her failure to comply with the requirements of the APA was a failure to perform a purely ministerial, non-discretionary act, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from  the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

c.        that Tex. Tax Code § 151.462 and 155.105 do not authorize the Comptroller to conduct desk audits giving conclusive effect to the HB11 data in determining Plaintiffs' tax deficiency without examination of Plaintiffs' business records, and that doing so is ultra vires and in excess of the Comptroller's statutory authority, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest ;

d.        that the Comptroller is not authorized to estimate the markup of alcohol and tobacco products or to conduct audits of convenience stores under the requirements of AP 92 or AP 122 without first adopting them as Rules pursuant to the requirements of the APA, and that doing so is a non-discretionary and ultra vires act in excess of her statutory authority, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

e.        that Tex. Tax Code § 111.0042 is unconstitutional on its face and as applied to Plaintiffs because it permits the auditor to determine whether records are adequate based solely on undefined subjective criteria, and without providing any guidelines for its administration lending itself to discriminatory application, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

f.        that Tex. Tax Code § 111.022 is unconstitutional on its face and as applied to Plaintiffs because it permits the Jeopardy Determination to be made merely on the Comptroller's undefined subjective criteria, and without providing any guidelines for its administration lending itself to discriminatory application thereby entitling Plaintiffs and Class to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest.

g.        that the Comptroller is not authorized to unilaterally reduce the burden of proof, or to shift the burden of proof in establishing fraud as required by Tex. Tax Code Ann. § 111.061, and that such conduct is non-discretionary and ultra vires and in excess of her statutory authority, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest.

h.        that the Comptroller has engaged in intentional conduct resulting in the taking of Plaintiffs' property for public use without adequate compensation in violation of Const. art. I, sec. 17 of the Texas Constitution

and that Plaintiffs are entitled to declaratory, injunctive and compensatory relief.

4.    After setting a reasonable bond, enter judgment temporarily, and after hearing on the merits, permanently restraining and enjoining Susan Combs, in her individual and official capacities, and the Office of the Comptroller of Public Accounts, its employees and agents, and all other persons in active concert or participation with these Counter-Defendants from engaging in the acts and practices made the subject of the temporary injunction.

5.    Enter judgment, jointly and severally, against the Comptroller of Public Accounts, Susan Combs individually and in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as Attorney General of the State of Texas for compensatory damages, including pre and post-judgment interest, to all Plaintiffs from whom the Comptroller has collected these illegal, invalid and unenforceable taxes, penalties and interest, in whatever manner, in violation of Tex. Const. art I, sec. 17 resulting from her adherence to the invalid procedures and unconstitutional statutes alleged herein.

6.    Enter judgment directing Defendants to account to Plaintiffs and the Class for all damages caused to them as a result of their unlawful actions, and appointing a Special Master to oversee implementation of this Court's orders with periodic reports submitted to the Court on progress with the fees and all reasonable costs charged and incurred by the Special Master to be paid by Defendants as such charges may be apportioned by the Court.

7.    Enter judgment awarding to Plaintiffs the costs and disbursements of this action including reasonable attorneys' fees and costs for experts pursuant to the provisions of the Texas Government Code, Texas Civil Practices and Remedies Code and the Administrative Procedures Act.

8.    Plaintiffs pray for all other relief, equitable and legal to which they may prove themselves justly entitled.

Respectfully submitted,

By: /s/ **Samuel T. Jackson**
Samuel T. Jackson
Texas Bar No. 10495700
PO Box 170633
Arlington, TX  76003-0633
Tel. (214) 751-7155; (512) 692-6260
Fax. 866-374-0164

FOR DEFENDANTS, COUNTER-PLAINTIFFS
Email: jacksonlaw@hotmail.com

## CERTIFICATE OF SERVICE

   I hereby certify by my signature above that a true and correct copy of the above and foregoing instrument was served on the parties or their attorneys **via facsimile**, certified mail, return receipt requested, and/or hand delivery on October 17, 2014, in accordance with Rule 21a, Texas Rules of Civil Procedure, to the following:

**JACK HOHENGARTEN**
Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-3503
Fax: (512) 477-2348
jack.hohengarten@texasattorneygeneral.gov
**Attorneys for Counter-Defendants**

## VERIFICATION

STATE OF TEXAS                                              §
                                                           §
COUNTY OF TARRANT                                          §


BEFORE ME, the undersigned authority, personally appeared Samuel T. Jackson, who, being by me duly sworn, on his oath deposed and stated the following:

I, Samuel T. Jackson, am over 18, of sound mind and otherwise capable of making this affidavit. I am the attorney representing Sanadco Inc., Mahmaud Isba, and the remaining plaintiffs in this putative class action suit. I have prepared *Plaintiffs' Second Amended Petition for Judicial Review, Declaratory Judgment, Temporary Injunction and Request for Disclosure.* I hereby certify upon personal knowledge and information and belief, that the factual allegations in the foregoing Application for Temporary Injunction are true and correct.


_____

SAMUEL T. JACKSON
ATTORNEY FOR PLAINTIFFS


Subscribed and Sworn to Before Me on October 17, 2014 to certify which witness my hand and official seal.


_____

Notary Public in and for the State of Texas
My commission expires _____

EXHIBIT O

ISBA PETITION FOR JUDICIAL REVIEW



**S U S A N**

**C O M B S**

TEXAS COMPTROLL.ER *of* PUBLIC ACCOUNTS

WWW.WINDOW.STATE:rx.us



May 9, 2014

MAHMOUD AHMED ISBA
xxxxxxxxxx xxxxxxxxxx
FORT WORTH TX xxxxxxxxxx.

· - -· rax Number. - xxxxxxxxx

# STATEMENT OF ACCOUNT

LIMITED SALES, EXCISE, AND USE TAX account balance for the pericxf:

September 1.2005 through February 28, 2009

0509-0902

| | ASSESSED | PAYMENTS | BALANCE DUE |
|---|---|---|---|
| Tax | $28,816.92 | ($32,965.16) | {$4,148.24) |
| Penalty | $945.45 | ($945.45) | 0.00 |
| Interest | $7,065.39 | ($7,065.39) | 0.00 |
| TOTAL | $36,827.76 | ($40,976.00) | ($4,148.24) |

EXHIBIT O

JPYL453
512-483-4472

EXHIBIT P

ISBA CANCELLATION OF PERMIT



| S U S A N | TEXAS COMPTROLLER *of* PUBLIC ACCOUNTS |
|---|---|
| C O M B S | WWW .WINDOW .STATE .TX.US |



September 10, 2014

Mr. Samuel T. Jackson
Jackson Law Firm
PO Box 170633
Arlington, TX 76003-0633

Re:     Decision after Hearing on Cancellation of Permit for Failure to Post Bond
        Mahmoud Ahmed lsba, tp# xxxxxxxxxxx.

Dear Mr. Jackson:

I have enclosed an original signed letter regarding the decision after hearing on cancellation of permit for failure to post bond.

Please contact Ms. Julia K. Swisher at xxxxxxxxxxxxor at xxxxxxxxxxxx xxxxxxxxxxx, if you have any questions regarding the enclosed document.

Sincerely,

Marlene Eilerman
Legal Assistant
General Counsel Division, Agency Affairs Section

Enclosure

# EXHIBIT P

Decision after Hearing

on

Cancellation of Permit for Failure to Post Bond

Mahmoud Ahmed Isba tp # xxxxxxxxxxx

On June 17, 2014, the Comptroller of Public Accounts ("Comptroller") issued a request to Mahmoud Ahmed Isba, the sole proprietor of a business known as Navine Convenience Store #2 (Taxpayer), that he provide a $9,000 bond to secure his sales tax obligations. Taxpayer failed to provide a bond. Accordingly, the Comptroller sent Taxpayer a notice advising him that the Comptroller intended to revoke his sales permit in accordance with Section 111.0047.[1] A telephonic hearing was conducted on or about September 3, 2014 for Taxpayer to show cause why his permit should not be revoked for his failure to provide a $9,000 bond. Present at the hearing was Samuel Jackson, Esq., attorney for Taxpayer, and Maria Lawrence and Rene Cruz from the Comptroller's Enforcement Division.

Final Determinations on Assessments

Taxpayer contends that none of the Taxpayer's liabilities were final and, accordingly, it was premature to demand security. However, at the time of the June 17, 2014 bond request, Taxpayer was liable to the Comptroller for approximately $67,675 of tax, penalty and interest, approximately $55,000 of which was final. The $55,000 liability was for sales tax deficiencies from Sanadco, Inc., an entity owned by Taxpayer until May 2008, for which Taxpayer was personally assessed as an officer. A SOAH hearing was conducted in connection with the Sanadco assessment and the personal assessment against Taxpayer. At the hearing neither Sanadco nor Taxpayer put forth any evidence challenging the assessment. A final Comptroller's Decision was issued in that matter on June 16, 2014. The bond demand was issued on June 17, 2014, after the assessment had become final.

Authority to Demand Bond and Revoke Permit if Bond not Posted.

Taxpayer also challenges whether the Comptroller has authority to suspend a license or otherwise take action against the taxpayer. Section 111.0047 provides that when a person fails to comply with any provision of Title 2 of the Tax Code, the Comptroller may, after a hearing, revoke or suspend any permits or licenses issued to them. Section 111.012 provides that if the Comptroller determines that a tax is

---

[1] All statutory references are to the TEXAS TAX CODE.

111.012(c) provides that the amount of the bond may not be more than double the amount of taxes the Comptroller estimates will be due during the next twelve months.

Section 151.251(b) provides that, if the Comptroller determines that a permitted taxpayer is delinquent in the payment of sales taxes, it may require the taxpayer to file adequate security for the payment of the taxes. Section 151.251{c) provides that a taxpayer will be delinquent if the sales tax has not been paid before the day the liability could be paid without additional penalty. Section 151.251(d) provides that the Comptroller may require security as a condition to retaining a permit. Section 151.253 provides that the maximum amount of security is the greater of $100,000 or four times the person's average monthly tax liability. Additionally, Section 151.203 provides that that failure to comply with a provision in Chapter 151 (relating to sales and use tax, a permit may be suspended.

It is clear that both under Chapter 111 applying to all taxes and under Chapter 151 related to sales tax, the Comptroller has authority to ask for a bond, the Comptroller could require significantly more than the $9,000 that has been demanded and failure to supply a bond may result in loss of permits

**Decision**

For the reasons set forth above, it is the decision upon hearing that Taxpayer provide a bond or other security in the amount of $9,000 within twenty days from the date of this decision and that, if Taxpayer fails to provide such security, his sales permit be cancelled.

Dated: September 10, 2014

Julia Swisher, Hearing Officer

EXHIBIT Q

ISBA ENFORCEMENT ACTIVITY

# TEXAS COMPTROLLER *of* PUBLIC ACCOUNTS

WWW.WINDOW.STATE.TX.US



December 8, 2014

MAHMOUD AHMED ISBA
1631 E VICKERY BLVD
FORT WORTH TX 76104-3853

RE: Taxpayer number **XXXXXXXX**

Dear Taxpayer,

Thank you for your recent application for a Texas Sales and Use Tax Permit.

Unfortunately, while attempting to process your application, we discovered an existing tax liability which must be cleared before a Texas Sales and Use Tax Permit can be issued.  Texas Tax Code 111.0046 prohibits the Comptroller from issuing a license or permit to a person who is delinquent in the payment of any tax collected by the Comptroller.

Please call our office at 1-800-252-8880 or 512-463-4660 for further assistance. We also have field offices located across the state.  Find locations and hours online at www.window.state.tx.us/taxinfo/fieldoff.html.

Sincerely,

Account Maintenance Division



December 3, 2014

MAHMOUD AHMED ISBA
XXXXXXXXXXXX
FORT WORTH TX 76104-3853

## PERMIT CANCELLATION

Dear Taxpayer:

On 08/08/2014 you were notified to appear at a hearing to show cause why your LIMITED SALES, EXCISE, AND USE TAX Permit should not be cancelled.

This is your notice that as a result of the show cause hearing, YOUR PERMIT HAS BEEN CANCELLED EFFECTIVE 12/03/2014.

Each day you engage in business as a retailer in this state without a valid permit is considered a misdemeanor offense for which you may be fined up to $500 upon conviction.

If you have any questions regarding this notice, you may contact the Comptroller's field office in your area or call 1-800-252-8880. The Austin number is 512-463-4660.

Taxpayer number: XXXXXXXXXXX

2H40

Form 00-226-A (Rev.4-12/9)

 
# STATE OF TEXAS
## COMPTROLLER OF PUBLIC ACCOUNTS

## REPORT OF PROPERTY SEIZED
## RECEIPT FOR THE RETURN OF PROPERTY SEIZED

**SECTION 1: REPORT OF PROPERTY SEIZED**

| | |
|---|---|
| Date of seizure | 12-5-14 |
| Time of seizure | ☒ AM ☐ PM |

Name of owner or organization: Mahmoud Ahmed Isba

Address: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

City or town: Fort Worth    County: Tarrent    State: TX

Location of seizure - If different than address above *(Street and number or meaningful directions)*

Property itemized below was seized under the provisions of TEX. TAX CODE ANN. sec. 154.403, 153.011 and/or 111.017

| UNITS SEIZED | DESCRIPTION | PRICE PER UNIT | VALUE |
|---|---|---|---|
| 1 | Verifone Credit card machine | | ∅ |
| | ▉▉▉▉▉▉▉▉▉ | | |
| | | | |
| | | | |
| | | | |

*(Attach separate sheet if additional space is necessary)*   TOTAL VALUE   ∅

Storage location of property described above

**sign here ▶** Authorized Enforcement Officer: *Kaylend Anthony*   Witness: *(signature)*

I certify that the property described above is a true listing of items seized by agents of the Comptroller.

**sign here ▶** Owner/Organization Representative: *(signature)*   Owner's agent by: Mahmoud Isba   Title: Owner

**SECTION 2: RECEIPT FOR THE RETURN OF SEIZED PROPERTY**

| Location of return *(City or town and county)* | Date of return | Time of return |
|---|---|---|
| | | ☐ AM ☐ PM |

Comptroller's agent making return

I acknowledge receipt of the items previously seized by the Comptroller listed in Section 1. These items have been returned to me at the place and time and by the agent shown above.

**sign here ▶** Owner/Organization Representative:    Owner's agent by:    Title:

Type of Tax _____

Tax collected $ _____

Penalty _____

Total collected $ _____

**WHITE** - Taxpayer Seizure     **CANARY** - Taxpayer Receipt     **PINK** - Field Office

 
# STATE OF TEXAS
## COMPTROLLER OF PUBLIC ACCOUNTS

# REPORT OF PROPERTY SEIZED
# RECEIPT FOR THE RETURN OF PROPERTY SEIZED

**SECTION 1: REPORT OF PROPERTY SEIZED**

| Date of seizure | Time of seizure |
|---|---|
| 12/5/14 | ☑AM ☐PM |

Name of owner or organization
Mahmoud Ahmed Isba

Vehicle license no.

| City or town | County | State |
|---|---|---|
| Fort Worth | Tarrant | TX |

Location of seizure - If different than address above *(Street and number or meaningful directions)*

Property itemized below was seized under the provisions of TEX. TAX CODE ANN. sec. 154.403, 153.011 and/or 111.017

| UNITS SEIZED | DESCRIPTION | PRICE PER UNIT | VALUE |
|---|---|---|---|
| 1 | Ten Dollar Bill | 10 | 10.00 |
| 7 | Five Dollar Bill | 5 | 35.00 |
| 4 | Two Dollar Bill | 2 | 8.00 |
| 3 | One Dollar Bill | 1 | 3.00 |
| | | | |
| *(Attach separate sheet if additional space is necessary)* | | TOTAL VALUE | 56.00 |

Storage location of property described above

sign here ▶ _Karbul Amthey_ (Authorized Enforcement Officer)  Witness _____

I certify that the property described above is a true listing of items seized by agents of the Comptroller.

sign here ◀ _____ (Owner/Organization Representative)

| Owner's agent by Mahmoud Isba | Title Owner |
|---|---|

**SECTION 2: RECEIPT FOR THE RETURN OF SEIZED PROPERTY**

| Location of return *(City or town and county)* | Date of return | Time of return |
|---|---|---|
| | | ☐AM ☐PM |

Comptroller's agent making return

I acknowledge receipt of the items previously seized by the Comptroller listed in Section 1. These items have been returned to me at the place and time and by the agent shown above.

sign here ▶ _____ (Owner/Organization Representative)

| Owner's agent by | Title |
|---|---|

Type of Tax _Sales & Use_

Tax collected $ 56.00

Penalty _____

Total collected $ 56.00

00-336
(Rev.1-07/9)

# NOTICE OF SEIZURE

By the COMPTROLLER OF PUBLIC ACCOUNTS
STATE OF TEXAS

*THIS NOTICE IS EFFECTIVE UPON RECEIPT*

Taxpayer name and address

Mahmoud Ahmed Isba
1631 E Vickery Blvd
Fort Worth TX 76104-3853

| Taxpayer number | |
|---|---|
| X2XXX6XX | |
| Type of tax | |
| | Sales and Use Tax |
| Date of service | 12/5/2014 |

d.b.a.    Nevine Food Store #2

You now owe the following delinquent amount for the tax specified.

| | |
|---|---|
| TAX DUE | $37,117.46 |
| PENALTY | $21,201.20 |
| INTEREST (Calculated through 12/5/2014 ) - | $10,706.70 |
| BOND | $9,000.00 |
| **TOTAL DUE AS OF DATE OF NOTICE** | **$78,025.36** |

Additional charges assessed after the date of notice may include accrued interest and costs of seizure.

This is to notify you that the Comptroller of Public Accounts is seizing your property, either real or personal, which is not exempt from civil execution. This seizure is in accordance with the provisions of the law.

The seized property will be returned to you only if the total amount due, including costs of the seizure, is paid before this property is sold according to the law.

**SUSAN COMBS**
COMPTROLLER OF PUBLIC ACCOUNTS

*This notice has been issued by and all correspondence should be directed to:*

| Enforcement Officer | Kaylene Armstrong | |
|---|---|---|
| Phone | (817) 459-1155 | Date 12/5/2014 |

APPROVED BY

sign here ▶ *Jennifer Cortes*    Field Manager

(Legal citation: TEX.TAX CODE ANN. secs. 111.017 and 111.019)



# COMPTROLLER OF PUBLIC ACCOUNTS
## STATE OF TEXAS
## AUSTIN, 78774

*12/18/2014*

ARLINGTON ENFORCEMENT OFFICE
2108 EAST RANDOL MILL ROAD STE 100
ARLINGTON, TEXAS 76011-8228

December 8, 2014

Mahmoud Ahmed Isba
1631 E Vickery Blvd
Fort Worth, TX 76104

RE: TP#XXXXXXXX

Dear Mr. Isba:

On 12/8/2014 you contacted our office requesting the opportunity to make monthly payments to satisfy a delinquent tax liability for the period May 2007 through June 2009.

The following requirements are prerequisites for consideration of an agreement:

*−7579.96−*
*−5000−*

- A letter from you proposing the agreement.
- A minimum payment of twenty five percent of the total liability due must be paid upon initiation of the agreement.
- You must provide a current financial statement dated within the last three months.
- All other state taxes for which you are responsible must be current, both upon negotiation and during any agreement.
- Certified copies of loan applications from two lending institutions attempting to satisfy the liability. If denied, a letter from each stating the reason for the denial.
- A sales tax bond must be posted. This requirement could be replaced by the personal guarantee of an officer or a third party co-guarantor. (for a corporation)
- Copies of your last three Federal Income Tax Returns.
- Three credit and banking references. (Name of institution, address, telephone number, type of account, account number)
- The duration of the agreement will be determined after review of financial data.

In order to prevent enforced collections this information must be provided for review on or before 12/18/2014. Ongoing negotiations for a payment agreement have no impact on the filing or future filing of state tax liens.

If you have any questions or concerns, please feel free to contact me at 817/459-1155.

Sincerely,

Justin Griggs
Enforcement Officer

Enf Template FA07 (Rev 11-10/2)

EXHIBIT R

BROADWAY COLLECTION LETTER



# COMPTROLLER OF PUBLIC ACCOUNTS
## STATE OF TEXAS
## AUSTIN, 78774

SAN ANTONIO NW ENFORCEMENT OFFICE
9514 CONSOLE, STE. 102
SAN ANTONIO, TEXAS 78229-2042

February 18, 2015

Broadway Grocery, Inc.
8342 Broadway St
San Antonio, TX. 78209-2007

RE: TP# ~~XXXXXXXX~~

Dear Mr. Khimani:

According to our records, a balance of $96,444.72 remains in your Sales tax account for the period 05/01/2008 through 12/31/2011. The balance due reflects the total of:

| | |
|---|---|
| Tax due: | $50,417.09 |
| Penalty: | $35,291.96 |
| Interest: | $10,688.67 |
| Late filer fee: | $0.00 |
| Lien Fee | $47.00 |
| Return Check Fee | $0.00 |
| Total: | $96,444.72 |

If you are required to pay your taxes electronically, please remit your payment accordingly to avoid additional penalties. Otherwise, please send your payment to the address at the top of this letter. In either case, your payment is due no later than **02/20/2015**.

Failure to comply with this notice in a timely manner may result in additional collection actions to protect the interests of the State. These actions include, but are not limited to, filing tax liens, suspending permits, freezing and seizing assets, requiring bonds, and withholding State-issued warrants.

I hope that further collection efforts will not be necessary. If you have questions or if there is any way I can help, please call me at 210/616-0067 ext. 44933.

Sincerely,

Benjamin Garza
Enforcement Officer V

EXHIBIT T

Erl Template L43-LIABILITY_GT100_LIST (Rev 11-10.2)

EXHIBIT S

BROADWAY NOTICE OF FREEZE

# 9g1ac BANKe



**We Do More**

## Notice of Freeze

March 2, 2015
BROADWAY GROCERY INC-SK EXPRESS
Xxxxxxxxxxx
SAN ANTONIO, TX xxxxxxxxxx

Dear Customer:

This is to inform you that International Bank of Commerce/Commerce Bank has received a Notice of Freeze, issued to you and/or your business from the State Comptroller of Texas in the amount of $96,661.32 we must freeze account(s) # xxxxxxxxxxx for the amount owed for the next 60 days unless the Freeze is released sooner. Please be aware that at any time within the 60 days, a Notice of Levy may be issued demanding the monies being held. In this event, an IBC cashier's check will be forwarded to the State Comptroller of Texas. *Also keep in mind that any checks that come in will be returned and any deposits made will go toward satisfying the Freeze.*

*A Litigation fee of $ 100.00 will be charge to your account for processing Levies and/or Freezes.*

Please contact the State Comptroller of Texas (956)722-2859 to make arrangements.

Thank you,

EXHIBIT S

Leticia Ramirez
Litigation Clerk
Phone: (956) 726-6638
Ext. 26239
Fax: (956) 726-6661

P.O. DRAWER 1359  LAREDO, TEXAS 78042-1359  (956) 722-7611  r=LEX 763-435  MEMBER INTERNATIONAL BANCSHARES CORPORATIOt JFOIC

IBC-0227-01

EXHIBIT T

BROADWAY BANK OF AMERICA ALERT

 

## Classic Interest Checking - XXXX Account Activity

Balance Summary:-$88,947.63 (available as of today 03/06/2015)
View:today 03/06/2015

### All Transactions

| Date | Description | Status | $Amount | $Available Balance |
|------|-------------|--------|---------|--------------------|
| **Amount included in Available Balance** | | | | |
| Processing | ACH HOLD FT. BEND MUD# DES:CHECKPY ON 03/06 | P | -2,436.70 | -88,947.63 |
| Hold | PENDING DEBIT/HOLD ON 03/04 | H | -86,621.14 | -86,510.93 |
| Processing | PENDING CREDIT ON 03/06 | P | 1,629.93 | 110.21 |
| 03/05/2015 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 03-05 ELECTRONIC TRANSACTION POSTING... | C | -35.00 | -1,519.72 |
| 03/05/2015 | PLATINUM HOME MO DES:ACH PMT ID:XXXXX20100 INDN:Khimani CO ID:XXXXX23586 PPD | I | -1,629.93 | -1,484.72 |
| 03/05/2015 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 03-04) ELECTRONIC TRANSACTION | C | 79.05 | 145.21 |
| 03/05/2015 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 03-04) ELECTRONIC TRANSACTION | C | 85.58 | 66.16 |
| 03/05/2015 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 03-04) ELECTRONIC TRANSACTION | C | 85.58 | -19.42 |
| 03/04/2015 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 03-04 ELECTRONIC TRANSACTION POSTING... | C | -35.00 | -105.00 |
| 03/04/2015 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 03-04 ELECTRONIC TRANSACTION POSTING... | C | -35.00 | -70.00 |
| 03/04/2015 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 03-04 ELECTRONIC TRANSACTION POSTING... | C | -35.00 | -35.00 |
| 03/04/2015 | Legal Order Fee,LTS D030415000405 | C | -100.00 | 0.00 |
| 03/04/2015 | CPENERGY ENTEX DES:ENT ACH DR ID:XXXXX4771585 INDN:SHAFEEQ KHIMANI... | I | -79.05 | 100.00 |
| 03/04/2015 | Reliant Energy DES:0121D ID:XXXXX0690483 INDN:RIZ STAR INC CO ID:XXXXX55567 PPD | I | -85.58 | 179.05 |
| 03/04/2015 | Reliant Energy DES:0121D ID:XXXXX0690483 INDN:RIZ STAR INC CO ID:XXXXX55567 TEL | I | -85.58 | 264.63 |
| 03/04/2015 | Legal Order, LTS D030415000405 | C | -10,011.40 | 350.21 |
| 03/03/2015 | AMERICAN GENERAL DES:PREMIUM ID:YMD0150951 INDN:SHAFEEQ R KHIMANI... | C | -103.69 | 10,361.61 |

EXHIBIT U

EXHIBIT U

SHARIZ NOTICE OF VISIT

# NOTICE OF OFFICIAL VISIT

Dear:     *SHAFEEQ KHIMANI*

Taxpayer  Number          XXXXXXXXXXXX

An attempt was made to contact you at your place of business concerning an Important tax matter. You are hereby notified of your responsibility to contact the State Comptroller's office no later than **01/30/15** at **713-783-6665     x 43543**

*(Date)*

Your cooperation in this matter will assist the Comptroller in completing our evaluation of your tax responsibilities with fairness to you and the State of Texas. Thank you ,

98-157(03/09)

SUSAN COMBS
COMPTROLLER OF PUBLIC ACCOUNTS

---

# NOTICE OF OFFICIAL VISIT

Dear: *Shariz Inc 2 Cement Resident*

An attempt was made *XXXXXXXXXX* your place of business concerning an important tax matter. You are hereby notified of your responsibility to contact the State Comptroller's office no later than *t 04m    1/ 30 ( IS* at *-=2) ?:>·')E;'3» Ibh$°    J-fS42>*

*(Date)*

Your cooperation in this matter will assist the Comptroller in completing our evaluation of your tax responsibilities with fairness to you and the State of Texas.

Thank you ,

Enforcement Officer *(Please Print)*

98-157(03/09)

SUSAN COMBS
COMPTROLLER OF PUBLIC ACCOUNTS